IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA  :
                                  :
       v.                    :    1:11 CR 161-1
                                  :
JOHNNY REID EDWARDS  :

## INDICTMENT

The Grand Jury charges:

Unless otherwise indicated, at all times relevant to this Indictment:

### GENERAL ALLEGATIONS

#### Relevant Persons and Entities

1. From in or about 1999 until in or about 2005, JOHNNY REID "JOHN" EDWARDS ("EDWARDS") was a United States Senator from the State of North Carolina. From in or about 2007 until in or about 2008, EDWARDS was a candidate for the office of President of the United States. A centerpiece of EDWARDS' candidacy was his public image as a devoted family man. The communication strategy developed by EDWARDS' campaign stressed the importance of publicizing, among other things, "that [EDWARDS'] family comes first."

2. Person A, a long-time assistant to EDWARDS, worked for EDWARDS on his presidential campaign. Person A's duties as a campaign employee included, among other things, handling personal tasks on behalf of EDWARDS.

3. From in or about February 2006 through at least in or about August 2008, EDWARDS had an extramarital affair with Person B, which resulted in a pregnancy and the birth of a child.

4. Person C was a political supporter of EDWARDS beginning in or about 2004.

5. Person D was involved in raising campaign funds for EDWARDS, and served as his campaign's Finance Chair during the 2008 presidential campaign cycle.

6. In or about January 2007, EDWARDS formed the "John Edwards for President" Committee to receive contributions to EDWARDS in support of his candidacy for President of the United States.

### Federal Campaign Contribution Limit and Disclosure Requirements

7. The Federal Election Campaign Act of 1971, as amended, Title 2, United States Code, Sections 431 through 455 (the "Election Act"), was a federal statute that regulated the influence of money on politics in order to prevent corruption and the appearance of corruption in federal elections.

8. In order to restrict the influence that any one person could have on the outcome of the 2008 primary election for President of the United States, the Election Act established that the most an individual could contribute to any candidate for that

primary election was $2,300. The Election Act also prohibited presidential candidates from accepting contributions from individuals in excess of this limit. EDWARDS and the John Edwards for President Committee were subject to the Election Act and its contribution limit.

9. The Election Act's contribution limit applied to anything of value provided for the purpose of influencing the presidential election, including (a) contributions to a candidate and his/her campaign; (b) expenditures made in cooperation, consultation, or concert, with, or at the request or suggestion of, a candidate or his/her campaign; and (c) payments for personal expenses of a candidate unless they would have been made irrespective of the candidacy.

10. The Federal Election Commission ("FEC") was an agency of the Executive Branch of the United States Government responsible for the administration and civil enforcement of federal election and campaign finance laws.

11. The Election Act required each presidential campaign committee to file periodic campaign finance reports with the FEC. In these reports, the committees were required to identify each person who, during the relevant reporting period, contributed more than $200 to the committee, together with the date and the amount of any such contribution. The committees

were also required to disclose expenditures by the campaign. EDWARDS, through the John Edwards for President Committee, was required to and did, in fact, file these periodic reports with the FEC.

12. The periodic reports that campaign committees filed with the FEC were made available to the public. These reports were intended to provide citizens with a transparent record of the amounts and sources of campaign contributions, and were intended to assist voters in making informed decisions at the polls.

COUNT ONE
18 U.S.C. § 371
(Conspiracy)

13. The allegations contained in paragraphs 1 through 12 of this Indictment are incorporated here.

14. From in or about 2007 until in or about 2009, in the Middle District of North Carolina and elsewhere, the defendant, JOHNNY REID EDWARDS, did knowingly and willfully combine, conspire, confederate and agree with others, known and unknown, to:

(A) accept and receive, while a candidate for federal office, contributions from Person C and Person D in excess of the limits of the Election Act, which aggregated $25,000 and more from each contributor during a calendar year, in violation of Title 2, United States Code, Sections 441a(a)(1)(A), 441a(f) and 437g(d)(1)(A)(i); and

(B) falsify, conceal, and cover up by trick, scheme, and device a material fact, in a matter within the jurisdiction of the executive branch of the United States Government, by, among other things, causing the John Edwards for President Committee to create and file false and misleading campaign finance reports with the FEC, in violation of Title 18, United States Code, Section 1001(a)(1).

## Purpose of the Conspiracy

15. The purpose of the conspiracy was to protect and advance EDWARDS' candidacy for President of the United States by secretly obtaining and using hundreds of thousands of dollars in contributions from Person C and Person D, well in excess of the Election Act's limit, to conceal EDWARDS' extramarital affair with Person B and Person B's pregnancy with his child. EDWARDS knew that public revelation of the affair and pregnancy would destroy his candidacy by, among other things, undermining EDWARDS' presentation of himself as a family man and by forcing his campaign to divert personnel and resources away from other campaign activities to respond to criticism and media scrutiny regarding the affair and pregnancy.

## Manner and Means of the Conspiracy

The conspiracy was accomplished through the following manner and means, among others. EDWARDS and his co-conspirators, working individually and together, directly and indirectly:

16. In order to protect and advance EDWARDS' candidacy for President of the United States, solicited and accepted approximately $725,000 from Person C, well in excess of the Election Act's limit on individual contributions.

17. In order to protect and advance EDWARDS' candidacy for President of the United States, solicited and accepted over

-6-

Case 1:11-cr-00161-UA   Document 1   Filed 06/03/11   Page 6 of 19

$200,000 from Person D, well in excess of the Election Act's limit on individual contributions.

   18.  In order to facilitate EDWARDS' extramarital affair with Person B and conceal it, and the resulting pregnancy, from the public, used the unlawful contributions from Person C and Person D to pay for Person B's living and medical expenses and to pay for the travel and accommodations necessary to hide Person B from the news media and the public.

   19.  Concealed from the FEC and the public the receipt of Person C's and Person D's unlawful contributions, by causing the John Edwards for President Committee to file with the FEC false and misleading campaign finance reports which failed to disclose these illegal contributions.

### Overt Acts

   In furtherance of the conspiracy and to effect its objects, EDWARDS and others committed and caused to be committed the following overt acts, among others, in the Middle District of North Carolina and elsewhere:

   20.  In or around May 2007, EDWARDS and Person A discussed identifying individuals who could provide money to support Person B.  During this same time period, Person B informed EDWARDS that she was pregnant with his child.

-7-

21. In or around May 2007, Person A read EDWARDS a note that Person C had sent to Person A, in or around April 2007, which read in part:

> The timing of your telephone call on Friday was "witchy." I was sitting alone in a grim mood - <u>furious</u> that the press attacked Senator Edwards on the price of a haircut. But it inspired me - from now on, all haircuts, etc., that are necessary and important for his campaign - please send the bills to me.... It is a way to help our friend without government restrictions.

In or around May 2007, EDWARDS and Person A solicited money from Person C.

22. In or around May 2007, after already contributing to EDWARDS the maximum amount allowable under the law, Person C agreed to provide additional money to EDWARDS to help him become President of the United States.

23. Between June 2007 and January 2008, Person C wrote personal checks in the amounts shown below, on or about the dates indicated. Person C made these checks payable to a friend. On several of these checks, in an effort to hide the fact that Person C was giving money to EDWARDS, Person C falsely listed items of furniture on the memo lines of the checks (for example, "chairs," "antique Charleston table," "book case").

| Overt Act | Date of Check | Amount |
|---|---|---|
| 23a | June 7, 2007 | $10,000 |
| 23b | June 11, 2007 | $25,000 |
| 23c | July 17, 2007 | $65,000 |
| 23d | August 22, 2007 | $100,000 |
| 23e | September 26, 2007 | $150,000 |
| 23f | December 12, 2007 | $175,000 |
| 23g | January 23, 2008 | $200,000 |

24. At Person C's direction, Person C's friend, to whom Person C had made out the checks, forwarded the checks to Person A. Person A's spouse endorsed these checks in her maiden name and deposited them into bank accounts controlled by her and Person A. As EDWARDS and Person A had planned, Person A used the funds provided by Person C to pay for, among other things, Person B's rent, furniture, car, living expenses, medical visits and prenatal care.

25. On or about October 10, 2007, a nationally circulated periodical published an article reporting that EDWARDS was allegedly involved in an extramarital affair. Shortly thereafter, in response to inquiries from the media, EDWARDS falsely denied having an affair with Person B.

26. In or around early December 2007, EDWARDS asked Person A to falsely claim paternity of Person B's child. EDWARDS

-9-

Case 1:11-cr-00161-UA Document 1 Filed 06/03/11 Page 9 of 19

told Person A that his efforts to win the presidency – and everything they had fought for – depended on it.

  27. On or about December 15, 2007, Person A issued a statement in which Person A falsely claimed paternity of Person B's child.

  28. In or around December 2007, EDWARDS and Person A arranged for Person D to pay for the travel and accommodations necessary for Person A, his family, and Person B to escape the attention of the media in order to avoid damage to EDWARDS' campaign.

  29. Between December 2007 and January 2008, after already contributing to EDWARDS the maximum amount allowable under the law, Person D paid for the following travel and living expenses, among others, for Person A, Person A's family, and Person B, all for the benefit of EDWARDS' campaign, in the amounts shown below, on or about the dates indicated:

| Overt Act | Date | Description | Amount |
|---|---|---|---|
| 29a | Dec. 18, 2007 | Chartered airfare from Raleigh, North Carolina, to Fort Lauderdale, Florida | $9,708.23 |
| 29b | Dec. 24, 2007 | Westin Diplomat Resort in Hollywood, Florida | $8,186.49 |
| 29c | Dec. 24, 2007 | Chartered airfare from Fort Lauderdale, Florida, to Aspen, Colorado | $29,259.85 |

| 29d | Dec. 27, 2007 | Chartered airfare from Aspen, Colorado, to San Diego, California | $14,787.85 |
| 29e | Jan. 2, 2008 | Loews Coronado Bay Hotel in San Diego, California | $10,111.28 |
| 29f | Jan. 2, 2008 | Chartered airfare from San Diego, California, to Aspen, Colorado | $11,717.65 |
| 29g | Jan. 10, 2008 | Chartered airfare from Aspen, Colorado, to Santa Barbara, California | $15,361.90 |
| 29h | Jan. 10, 2008 | Four Seasons Hotel in Santa Barbara, California | $25,283.50 |
| 29i | Jan. 14, 2008 | Rental payments for house in Santa Barbara, California | $58,667.00 |

30. After already contributing to EDWARDS the maximum amount allowable under the law, in or about December 2007 and January 2008, for the benefit of EDWARDS' campaign, Person D provided money to Person A, including (a) approximately $1,000 cash delivered to Person A in or about December 2007 in an envelope that also contained a note from Person D to Person A that read, "Old Chinese saying: use cash, not credit cards!" and (b) an electronic transfer of funds on or about January 24, 2008, in the amount of $10,000, to a bank account controlled by Person A.

31. On or about January 30, 2008, EDWARDS suspended his campaign for President of the United States. However, the John Edwards for President Committee remained in existence. On

-11-

or about the dates listed below, EDWARDS caused the John Edwards for President Committee to file false and deceptive campaign finance reports with the FEC, which failed to disclose any contributions by Person C or Person D.  The John Edwards for President Committee continued to provide information to the FEC through at least February 2009.

| Overt Act | Date of Report |
|---|---|
| 31a | July 15, 2007 |
| 31b | September 21, 2007 |
| 31c | October 15, 2007 |
| 31d | January 28, 2008 |
| 31e | January 31, 2008 |
| 31f | March 25, 2008 |

32. On or about August 8, 2008, EDWARDS appeared on national television and made the following false statements:

a. When asked whether he was the father of Person B's child, EDWARDS stated: "That is absolutely not true.";

b. When asked whether Person A was the father of Person B's child, EDWARDS stated: "I don't know.";

c. When asked whether there was money paid to try to cover up his affair with Person B, EDWARDS stated: "I've never paid a dime of money to any of the people that are involved.  I've never asked anybody to pay a dime of money, never been told that any money has been paid.  Nothing has been done at

-12-

my request. So if the allegation is that somehow I participated in the payment of money - that is a lie."; and

        d.    When asked whether Person D paid money for Person B's living expenses, EDWARDS stated: "I don't know. I told you just a moment ago, I know absolutely nothing about this. I had nothing to do with any money being paid, and had no knowledge of any money being paid, and it wasn't being, if something was being paid, it wasn't being paid on my behalf. ... I don't know what he did or why he did it. And what his reasons for, were, for doing it."

        33.    In or about July and August 2009, EDWARDS worked with a former employee of his campaign to prepare a statement to the media in which EDWARDS would admit that he was the father of Person B's child. In the course of preparing this statement, EDWARDS told the employee that, during his presidential campaign, he was aware that Person D had provided money and made expenditures to support and hide Person B from the media. EDWARDS further told the employee that this was a huge issue and that for "legal and practical reasons" it should not be mentioned in the statement they were preparing. EDWARDS ultimately did not issue the statement he and the employee prepared.

        All in violation of Title 18, United States
        Code, Section 371.

## COUNT TWO
## 2 U.S.C. § 441a
(Illegal Campaign Contributions)

34. The allegations contained in paragraphs 1 through 12 and paragraphs 15 through 33 of this Indictment are incorporated here.

35. During the calendar year 2007, in the Middle District of North Carolina and elsewhere, the defendant, JOHNNY REID EDWARDS, while a candidate for federal office, knowingly and willfully accepted and received contributions from Person C in excess of the limits of the Election Act, which aggregated $25,000 and more, and did aid and abet said offense.

> In violation of Title 2, United States Code, Sections 441a(a)(1)(A), 441a(f), and 437g(d)(1)(A)(i) and Title 18, United States Code, Section 2.

## COUNT THREE
## 2 U.S.C. § 441a
### (Illegal Campaign Contributions)

36. The allegations contained in paragraphs 1 through 12 and paragraphs 15 through 33 of this Indictment are incorporated here.

37. During the calendar year 2008, in the Middle District of North Carolina and elsewhere, the defendant, JOHNNY REID EDWARDS, while a candidate for federal office, knowingly and willfully accepted and received contributions from Person C in excess of the limits of the Election Act, which aggregated $25,000 and more, and did aid and abet said offense.

> In violation of Title 2, United States Code, Sections 441a(a)(1)(A), 441a(f), and 437g(d)(1)(A)(i) and Title 18, United States Code, Section 2.

## COUNT FOUR
## 2 U.S.C. § 441a
## (Illegal Campaign Contributions)

38. The allegations contained in paragraphs 1 through 12 and paragraphs 15 through 33 of this Indictment are incorporated here.

39. During the calendar year 2007, in the Middle District of North Carolina and elsewhere, the defendant, JOHNNY REID EDWARDS, while a candidate for federal office, knowingly and willfully accepted and received contributions from Person D in excess of the limits of the Election Act, which aggregated $25,000 and more, and did aid and abet said offense.

> In violation of Title 2, United States Code, Sections 441a(a)(1)(A), 441a(f), and 437g(d)(1)(A)(i) and Title 18, United States Code, Section 2.

## COUNT FIVE
## 2 U.S.C. § 441a
### (Illegal Campaign Contributions)

40. The allegations contained in paragraphs 1 through 12 and paragraphs 15 through 33 of this Indictment are incorporated here.

41. During the calendar year 2008, in the Middle District of North Carolina and elsewhere, the defendant, JOHNNY REID EDWARDS, while a candidate for federal office, knowingly and willfully accepted and received contributions from Person D in excess of the limits of the Election Act, which aggregated $25,000 and more, and did aid and abet said offense.

> In violation of Title 2, United States Code, Sections 441a(a)(1)(A), 441a(f), and 437g(d)(1)(A)(i) and Title 18, United States Code, Section 2.

## COUNT SIX
## 18 U.S.C. § 1001
## (False Statements)

42. The allegations contained in paragraphs 1 through 12 and paragraphs 15 through 33 of this Indictment are incorporated here.

43. From in or about 2007 through in or about 2009, in the Middle District of North Carolina and elsewhere, in a matter within the jurisdiction of an agency of the executive branch of the United States Government, to wit, the FEC, the defendant, JOHNNY REID EDWARDS, knowingly and willfully falsified, concealed, and covered up by trick, scheme, and device a material fact, in that EDWARDS concealed from the John Edwards for President Committee hundreds of thousands of dollars in contributions from Person C and Person D to EDWARDS for the 2008 primary election for President of the United States, and caused the John Edwards for President Committee to create and submit periodic campaign finance reports to the FEC which purported to disclose all contributions of more than $200 in an election cycle, when, in truth and in fact, as EDWARDS well knew, those reports failed to disclose hundreds of thousands of dollars in

-18-

Case 1:11-cr-00161-UA   Document 1   Filed 06/03/11   Page 18 of 19

contributions from Person C and Person D, and did aid and abet said offense.

In violation of Title 18, United States Code, Sections 1001(a)(1) and 2.

A TRUE BILL

GEORGE E.B. HOLDING
United States Attorney
Acting under authority
conferred by 28 U.S.C. § 515

By: _____
Robert J. Higdon, Jr.
Special Attorney

Brian S. Meyers
Special Attorney

JACK SMITH
Chief, Public Integrity Section
United States Department
of Justice

By: _____
David V. Harbach, II
Trial Attorney

Justin V. Shur
Deputy Chief

Jeffrey E. Tsai
Trial Attorney