# ATTACHMENT 2



FEDERAL ELECTION COMMISSION
WASHINGTON, D.C. 20463

## MEMORANDUM

TO: The Commissioners
Staff Director
Deputy Staff Director
General Counsel

FROM: Office of the Commission Secretary

DATE: April 17, 2002

SUBJECT: Statement Of Reasons for MUR 5141

Attached is a copy of the Statement Of Reasons for MUR 5141 signed by Chairman David M. Mason, Vice Chairman Karl J. Sandstrom, Commissioner Danny L. McDonald, Commissioner Bradley A. Smith, Commissioner Scott E. Thomas, and Commissioner Darryl R. Wold.

This was received in the Commission Secretary's Office on Tuesday, April 16, 2002 at 4:11 p.m.

cc: Vincent J. Convery, Jr.
OGC Docket (5)
Information Division
Press Office
Public Disclosure

Attachment



FEDERAL ELECTION COMMISSION
WASHINGTON, D.C. 20463

## BEFORE THE FEDERAL ELECTION COMMISSION

In the Matter of

| | |
|---|---|
| The Honorable James P. Moran, Jr. | ) |
| Moran for Congress and H. Robert Morrison, as treasurer | ) |
| Terry L. Lierman | )   MUR 5141 |
| Schering-Plough Corporation | ) |
| Schering-Plough Corporation Better Government Fund and | ) |
|    E. Kevin Moore, as treasurer | ) |

## STATEMENT OF REASONS

### Background

This matter was generated by a complaint filed on November 8, 2000 by Kenneth Boehm, Chairman of the National Legal and Policy Center, alleging that on June 25, 1999, Terry Lierman made an excessive contribution to Moran for Congress in the form of a $25,000 loan, which the committee allegedly failed to report. On July 17, 2001, the Commission rejected the Office of the General Counsel's recommendation that this matter be dismissed simply because of its lower significance relative to other pending matters. Instead, by a vote of 6-0, the Commission determined to find no reason to believe that the Honorable James P. Moran, Jr., Moran for Congress and H. Robert Morrison, as treasurer (the "Committee"), Terry L. Lierman, Schering-Plough Corporation, and the Schering-Plough Corporation Better Government Fund and E. Kevin Moore, as treasurer, violated any provision of the Federal Election Campaign Act of 1971, as amended ("the Act"), in this matter, and closed the file with respect to all respondents. This Statement of Reasons explains the basis for the Commission's determination.[1]

### Standard for Summary Dismissal

Any person who believes a violation of the Act has occurred may file a complaint with the Commission. 2 U.S.C. § 437g(a)(1). The Act anticipates that the Commission may

---

[1] This Statement does not address allegations raised by the complainant to the extent that they raise issues that are outside of the Commission's jurisdiction such as House ethics or financial disclosure matters. See 2 U.S.C. §§ 437c(b); 437g(a)(1). Furthermore, as there were no indications that Mr. Lierman was reimbursed by his employer or its PAC, Schering-Plough Corporation and Schering-Plough Corporation Better Government Fund and E. Kevin Moore, as treasurer, need not have been named as respondents. 2 U.S.C. § 437g(a)(1) (providing for notification of complaints to any person alleged to have committed a violation of the Act or of Chapter 95 or Chapter 96 of Title 26 of the United States Code).

summarily dismiss a complaint. *Id.* The Commission has the power to investigate alleged violations of the Act only where there is reason to believe that a violation has been, or is about to be, committed. 2 U.S.C. § 437g(a)(2). This Commission finding requires an affirmative vote of four of its members and is proper only if a complaint sets forth sufficient specific facts, which, if proven true, would constitute a violation of the Act. *See* 11 C.F.R. § 111.4(d)(3) (complaint should recite "facts which describe a violation of a statute or regulation over which the Commission has jurisdiction"). A complainant's unwarranted legal conclusions from asserted facts, will not be accepted as true. *See* Commissioners Wold, McDonald, Mason, Sandstrom, Thomas Statement of Reasons in MUR 4869 (American Postal Workers Union). Unless based on a complainant's personal knowledge, a source of information reasonably giving rise to a belief in the truth of the allegations must be identified. *See* 11 C.F.R. § 111.4(d)(2); General Counsel's Report dated April 11, 2000 at 17 in MUR 4545 (Clinton/Gore '96 Primary Committee/Amtrak), Commissioners Thomas, Elliott, Potter, McDonald, Aikens, and McGarry Statement of Reasons dated Oct. 7, 1993 in MUR 3534 (Bibleway Church of Atlas Road).

## Complaint and Responses

The complainant in this matter alleges that in June 1999 Terry Lierman made a "large, unsecured personal loan" to Rep. James Moran, then a candidate for the U.S. House of Representatives. The complainant further alleges the loan constituted an excessive contribution to Rep. Moran's campaign under the Act. The complainant reasons that Rep. Moran was a candidate at the time of the loan and candidates are prohibited from taking personal loans in excess of the Act's limitations on contributions because such loans are treated as contributions under the Act. The complainant also alleges that the Committee should have reported the receipt of this loan to the Commission.

The responses received by the Commission confirm the complainant's assertion that "none of the essential facts supporting this complaint are in dispute," but take issue with the legal conclusions drawn by the complainant. As to the factual background regarding the transaction, the responses explain that Terry Lierman has known Rep. Moran for over twenty-five years. In March 1999, Rep. Moran filed his Statement of Candidacy as an incumbent for the U.S. House for Virginia's Eighth Congressional District. On or about June 25, 1999, Mr. Lierman provided a check to Rep. Moran as a loan to help pay legal expenses. The check immediately was endorsed as payable to the order of Rep. Moran's counsel as payment for legal services in a domestic relations matter. The loan was apparently the subject of a promissory note carrying an 8% annual interest rate and an option for a loan of additional funds on the same terms. According to news reports, in November 2000 the balance of the loan was repaid plus 12.8% interest.[2]

Terry Lierman's response to the complaint argues that the loan was not a contribution under the Act, citing section 431(8)(A)(i)'s definition of "contribution." This definition provides

---

[2] *Moran's Loan Yields Filing*, Richmond Times Dispatch, Nov. 2, 2000 at B4.

that a contribution includes loans "made for the purpose of influencing an election." Mr. Lierman's response asserts that this loan was made for no such purpose, as evidenced by the fact that upon receipt, the check for the loan was endorsed to Rep. Moran's divorce counsel's law firm as payment for legal services, the loan was made well before the election, the campaign was not in need of funds, and the campaign was not funded by the candidate's personal funds. In addition, citing 11 C.F.R. § 113.1(g)(6), the response argues that payment by a third party for the personal expenses of a candidate is not a contribution to that candidate if the payment would have been made irrespective of the candidacy. The response asserts that the loan was made irrespective of Rep. Moran's candidacy and there was no evidence cited by the complainant that the loan was used to benefit the campaign. Because there was no connection between the loan and the campaign, the response concludes that there was no violation of the Act or Commission regulations.

### Analysis

The Act and Commission regulations contain certain provisions specifying how candidates and their authorized committees should treat loans received in connection with the campaign. Section 432(e)(2) provides that

> [a]ny candidate ... who receives a contribution, or any loan for use in connection with the campaign of such candidate for election, or makes a disbursement in connection with such campaign, shall be considered, for the purposes of this Act, as having received the contribution or loan, or as having made the disbursement, as the case may be, as an agent of the authorized committee or committees of such candidate.

*See also* 11 C.F.R. §§ 101.2 and 102.7(d). The Commission's threshold determination under section 432(e)(2), then, is whether this loan was for use in connection with the campaign. The Commission finds that it was not.

The facts establish that although this loan was made directly to a candidate, it was not made for use in connection with the candidate's campaign and is therefore not a contribution under the Act. The basis for this determination is the context of the transaction's surrounding factual circumstances. Not only does the complainant fail to allege any facts that the loan was for use in connection with the campaign,[3] but also the source of the personal loan, the candidate's friend for more than 25 years, asserts that it was made for no such purpose. Additionally, the evidence before the Commission demonstrates that the loan was made well before the next

---

[3] The complainant cites a newspaper article quoting Rep. Moran's response when questioned by a reporter about how the loan came about. Jo Becker, *Moran Got Loan from Drug Lobbyist*, Wash. Post, Oct. 31, 2000 at A1 ("Moran said he couldn't recall if he had 'directly called Terry. It may have been through ... my campaign manager.'"). This involvement of a campaign staff member in this manner would not transform the candidate's personal activity into campaign activity.

election, the instrument was endorsed upon receipt directly to a law firm representing the candidate in a personal matter, the Committee received no candidate funds in the 2000 election cycle, and by any standards the Committee was well-funded at all times before and after the transaction at issue. Thus, this loan was not made for use in connection with Rep. Moran's campaign, and therefore was not in violation of the Act.

This determination is consistent with prior Commission treatment of third party payments for a candidate's personal expenses. *See* Advisory Opinions 1982-64; 1978-40; 1976-70; Response to Advisory Opinion Request 1976-84. The Commission has considered several factors in supporting its conclusions when addressing the status of third party payments: whether receipt of funds for living expenses would free-up other funds of the candidate for campaign purposes; whether the candidate would have more time to spend on the campaign instead of pursuing his or her usual employment, and whether the funds would not have been donated but for the candidacy.[4] There was no indication here that the loan freed-up other funds for campaign purposes. As noted above, the Committee did not receive candidate funds in the 2000 election cycle. In addition, the loan had no bearing on the time the candidate had available to campaign and the analysis of whether the loan would have been made but for the candidacy parallels the basis for the determination above that the loan was not for use in connection with the campaign.

Further, although Section 113.1(g)(6) of the Commission's regulations treats some third party payments as contributions, it provides that payments made irrespective of the candidacy are not to be so treated. The responses and information publicly available to the Commission establish that Mr. Lierman would have made this loan irrespective of Rep. Moran's candidacy.

It follows that because the loan was not made for use in connection with Rep. Moran's campaign, the Committee had no reporting obligation under the Act with respect to this loan. While the Act requires that a candidate's authorized committee report loans governed by section 432(e)(2), 2 U.S.C. § 434(b)(2) and (3)(E), these reporting requirements are triggered by a candidate acting as an agent of his authorized committee and receiving a loan for use in connection with his campaign. Because the Commission above concludes that this was not a loan for use in connection with the campaign, the reporting obligations under sections 434(b)(2) and (3)(E) do not apply and there is no reason to believe the Committee violated these sections of the law with respect to the loan.

---

[4] The complainant cites Advisory Opinion 1978-40 for the proposition that the Commission treats all loans to candidates to cover personal expenses during a campaign as contributions under the Act, but this is too broad a reading. In that advisory opinion and in others holding that third party payments for a candidate's personal living expenses were contributions, *see* Advisory Opinions 1982-64, 1976-70 and the Commission's Response to Advisory Opinion Request 1976-84, the loans or payments were either prompted by the candidacy or benefitted the candidacy.

## Conclusion

Under the Act, Terry Lierman's $25,000 loan to Rep. Jim Moran does not constitute a contribution and the Committee therefore had no reporting obligation under the relevant sections of the Act or Commission regulations. Thus, the Commission voted to find no reason to believe that the Honorable James P. Moran, Jr., Moran for Congress and H. Robert Morrison, as treasurer, Terry L. Lierman, Schering-Plough Corporation, and the Schering-Plough Corporation Better Government Fund and E. Kevin Moore, as treasurer, violated any provision of the Act in this matter, and closed the file as it pertains to all respondents.

March 11, 2002

_____
David M. Mason
Chairman

_____
Karl J. Sandstrom
Vice Chairman

_____
Danny L. McDonald
Commissioner

_____
Bradley A. Smith
Commissioner

_____
Scott E. Thomas
Commissioner

_____
Darryl R. Wold
Commissioner