# ATTACHMENT 5

FEDERAL ELECTION COMMISSION
Washington, DC 20463

December 22, 2008

<u>CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

ADVISORY OPINION 2008-17

Kathryn Biber Chen, Esq.
Patton Boggs LLP
2550 M Street, NW
Washington, DC 20037

Dear Ms. Biber Chen:

We are responding to the advisory opinion request on behalf of Missourians for Kit Bond and KITPAC concerning the application of the Federal Election Campaign Act of 1971, as amended (the "Act"), and Commission regulations, to the committees' proposed payment of expenses incurred by Senator Kit Bond's co-author on a book the two are writing. The Commission concludes that only KITPAC may pay expenses incurred by Senator Bond's co-author.

*Background*

The facts presented in this advisory opinion are based on a letter received on October 24, 2008 and telephone conversations with Commission attorneys.

Missourians for Kit Bond is the principal campaign committee of Senator Christopher "Kit" Bond. KITPAC is a non-connected multicandidate committee associated with Senator Bond. Both committees are registered with the Commission.

For three years, Senator Bond has worked with a journalist to produce a book on the terrorist threat in the Far East. On December 20, 2005, Senator Bond and his co-author signed a collaboration agreement as to liability, delivery of the manuscript, responsibilities regarding confidentiality, how the advance and royalties would be split, and other matters. Also on December 20, 2005, Senator Bond and his co-author signed a contract with a major publishing company to publish the book, for which they received an advance of $60,000. Of this amount, $43,333 was paid to the co-author, and $16,667

was paid to Senator Bond. Senator Bond paid $15,000 of his $16,667 to the publishing agent who secured the original contract, and paid the remaining amount to his co-author.

The agreement with the publisher contained a clause that required repayment of the advance only if the publisher declined to publish and Senator Bond and his co-author could secure another publisher. The publisher did decline to publish the book and Senator Bond and his co-author sought and secured a second publisher, who will also pay them an advance. This advance will be used to reimburse the first publisher's advance, pursuant to the clause in the first publishing agreement.

As a result, no funds from that second advance will remain to fully compensate Senator Bond's co-author for expenses, time, and effort spent in preparing the manuscript for the second publisher's approval. You assert that the fair market value of such services is $25,000. Proceeds from the sale of the book will first be used to reimburse the second publisher for its advance, and next to reimburse the first publisher for any amounts still owed it. Any additional proceeds remaining after these two obligations are met will be paid to Senator Bond's co-author. Senator Bond will not receive any profits from the book.

Senator Bond wishes to pay his co-author $25,000 from either Missourians for Kit Bond or KITPAC to compensate the co-author for his expenses, time, and effort spent on the book.

*Question Presented*

*May either Missourians for Kit Bond or KITPAC compensate Senator Bond's co-author $25,000 for his work on the manuscript?*

*Legal Analysis and Conclusions*

The Commission concludes that Missourians for Kit Bond may not compensate Senator Bond's co-author $25,000 for his work on the manuscript, but that KITPAC may.

*Missourians for Kit Bond*

Under the Act and Commission regulations, a candidate and his or her authorized committee have wide discretion in making expenditures to influence the candidate's election. 2 U.S.C. 439a(a); 11 CFR 113.2. However, neither the candidate nor the candidate's authorized committee may convert contributions accepted by the candidate to the personal use of the candidate or any other person. 2 U.S.C. 439a(b); 11 CFR 113.1(g) and 113.2(e)(5). The Act specifies that conversion to personal use occurs when a "contribution or amount is used to fulfill *any commitment, obligation, or expense of a person* that would exist irrespective of the candidate's election campaign or individual's duties as a holder of Federal office." 2 U.S.C. 439a(b)(2) (emphasis added).

AO 2008-17
Page 3

The Act and Commission regulations provide a non-exhaustive list of items that would constitute personal use *per se*, none of which applies here. *See* 2 U.S.C. 439a(b)(2)(A)-(I); 11 CFR 113.1(g)(1)(i)(A)-(J). For items not on this list, the Commission makes a determination on a case-by-case basis whether an expense would fall within the definition of "personal use." 11 CFR 113.1(g)(1)(ii).

Under the circumstances presented, the Commission concludes that the campaign committee's proposed payment to the co-author would constitute personal use. Notwithstanding that Senator Bond personally will not retain any financial profit or royalties whatsoever, the fact remains that he received a $16,667 advance on royalties from the first publisher, from which he paid approximately $15,000 to the publishing agent and the remainder to the co-author. The Senator also will receive an advance from the second publisher, some portion of which presumably will be used to repay the advance from the first publisher pursuant to the first publishing agreement.[1]

As the Commission concluded in Advisory Opinion 2006-07 (Hayworth), "expenses associated with marketing a book that a commercial publisher has published and for which it pays royalties to the author are expenses that exist irrespective of the candidate's election campaign or duties as a holder of Federal office."[2] In this case, although Senator Bond's book has yet to be published, the book has been written and two publishers already have decided to publish it (although the first one reversed its decision), the first publisher has paid (and the second publisher has agreed to pay) an advance on royalties to the Senator, and the proposed payment from the campaign committee is a cost of publication or pre-publication marketing expense. Thus, applying the principle in Advisory Opinion 2006-07, whether Senator Bond personally retains the advance on royalties or uses them to pay expenses associated with preparing the book for publication (*i.e.*, the payments to the publishing agent and co-author), these transactions indicate the costs of promoting and publishing the book are not campaign expenditures[3] and likely would arise irrespective of Senator Bond's reelection campaign or his duties as a Federal officeholder. Accordingly, these expenses would constitute personal use if the campaign committee were to pay for them, notwithstanding that the book may, as the request asserts, "advance the ideas and philosophies important to [Senator Bond's] campaign and leadership PAC."

---

[1] The request does not specify the amount of the second publisher's advance.

[2] On the facts presented in Advisory Opinion 2006-07 (Hayworth), the Commission concluded that Representative J.D. Hayworth's campaign committee's website nonetheless could promote the book because the proposed use of the website was limited to the addition of a *de minimis* amount of material to an otherwise substantial website. In contrast, the use of the Committee's assets here, *i.e.*, the $25,000 that would be paid to Senator Bond's co-author, would not be *de minimis*.

[3] The Commission notes that, generally, campaign committees may pay commercial vendors for producing and disseminating any campaign communications, including books, so long as such expenditures are part of transactions in the ordinary course of business and do not convert committee resources to personal use by enriching the candidate personally.

*KITPAC*

Third parties are limited in what they may pay for on behalf of Federal candidates. Generally, "notwithstanding that use of funds for a particular expense would be a personal use . . . payment of that expense by any person other than the candidate or the campaign committee shall be a contribution under subpart B of part 100 to the candidate unless the payment would have been made irrespective of the candidacy." 11 CFR 113.1(g)(6). Such contributions are subject to the per election limits in 2 U.S.C. 441a(a)(1)(A) and (2)(A).[4]

The Commission's regulations contain three examples of payments considered to be made irrespective of a candidacy, none of which applies here. *See* 11 CFR 113.1(g)(6)(i)-(iii). Accordingly, the Commission must consider the individual circumstances of this case.

The "irrespective" test contained in the third-party payment provision at 11 CFR 113.1(g)(6) differs slightly from the "irrespective" test contained in the general personal-use prohibition at 11 CFR 113.1(g) discussed above in the analysis with respect to Missourians for Kit Bond. The third-party payment provision asks whether the payment would have been made by the third party irrespective of the Federal candidate's candidacy for office. In other words, would the third party pay the expense if the candidate was not running for Federal office? If the answer is yes, then the payment does not constitute a contribution. As the Commission explained in its Explanation and Justification for 11 CFR 113.1(g)(6), "If a third party pays for the candidate's personal expenses, but would not ordinarily have done so if that candidate were not running for office, the third party is effectively making the payment for the purpose of assisting that candidacy." *Explanation and Justification, Contribution and Expenditure Limitations and Prohibitions: Personal Use of Campaign Funds*; 60 Fed. Reg. 7862, 7871 (Feb. 9, 1995).

The request asserts that Senator Bond "seeks to publish the book purely to advance the ideas and philosophies important to his campaign and leadership PAC, and not to benefit himself personally." In subsequent comments, KITPAC has further stated that its "interest would exist even in the absence of Senator Bond's candidacy for reelection or his campaign, and even if the campaign did not share KITPAC's interest in the book." Because the book would advance the leadership PAC's goals and the leadership PAC would pay for the book and the co-author's expenses irrespective of the campaign, the $25,000 payment to the co-author would not constitute a contribution under 11 CFR 113.1(g)(6). This conclusion is based, in part, on the Commission's understanding that there is no personal obligation on the part of Senator Bond to compensate his co-author. The existence of a personal obligation may change the resulting answer because, where a third party pays an expense that is a personal

---

[4] As noted in the request, KITPAC is a leadership PAC associated with Senator Bond. Pursuant to 11 CFR 100.5(g)(5), a leadership PAC cannot be affiliated with an authorized committee. KITPAC is a "third party" for purposes of 11 CFR 113.1(g)(6).

obligation of a Federal candidate, it could raise questions as to whether that third party would do so irrespective of the candidacy.

The Commission expresses no opinion regarding the application of Federal tax law, other law, or the rules of the U.S. Senate to the proposed activities, because those questions are not within the Commission's jurisdiction.

This response constitutes an advisory opinion concerning the application of the Act and Commission regulations to the specific transaction or activity set forth in your request. *See* 2 U.S.C. 437f. The Commission emphasizes that, if there is a change in any of the facts or assumptions presented, and such facts or assumptions are material to a conclusion presented in this advisory opinion, then the requestor may not rely on that conclusion as support for its proposed activity. Any person involved in any specific transaction or activity which is indistinguishable in all its material aspects from the transaction or activity with respect to which this advisory opinion is rendered may rely on this advisory opinion. *See* 2 U.S.C. 437f(c)(l)(B). Please note that the analysis or conclusions in this advisory opinion may be affected by subsequent developments in the law including, but not limited to, statutes, regulations, advisory opinions, and case law. All cited advisory opinions are available on the Commission's website at http://saos.nictusa.com/saos/searchao.

                              On behalf of the Commission,

                              (signed)
                              Donald F. McGahn II
                              Chairman