UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) CRIMINAL CASE NO. 1:11-CR-161-1 |
| JOHNNY REID EDWARDS | ) |
| | ) |
| | ) |

JOHN EDWARDS' MEMORANDUM IN SUPPORT OF HIS MOTION TO
DISMISS COUNT 1 -- CONSPIRACY
(Motion to Dismiss No. 4)

## NATURE OF MATTER BEFORE THE COURT

Count 1, the conspiracy charge, is defective as a matter of law because it charges what courts have held to be an improper theory of a "rimless wheel" conspiracy, where a single defendant is alleged to have engaged in separate and distinct conspiracies with others who are not part of the same agreement. Mr. Edwards is alleged to have been the hub of the conspiracy and, with two different spokes from that hub, he is alleged to have conspired to receive unlawful campaign contributions from Person C (Rachel Mellon) and Person D (Fred Baron). Because there is no agreement alleged between Ms. Mellon and Mr. Baron (because there was none) to further the alleged contributions made by the other, the Indictment fails to charge a single conspiracy between all of the alleged co-conspirators (i.e., there is no rim on this wheel connecting the two spokes). The Indictment, therefore, is a classic example of a defective conspiracy charge the Supreme Court describes as a "rimless wheel" conspiracy.

In addition, the government's conspiracy count also is defective because it fails to allege that the conspirators shared the same object. The government charges Mr. Edwards with the crime of (and a conspiracy to) <u>receive</u> an illegal campaign contribution, but his alleged co-conspirators -- Ms. Mellon and Mr. Baron -- are alleged to have conspired to commit the crime of <u>making</u> an illegal campaign donation. While in the same arena, these are two separate offenses under the federal election laws and occur at different points in time. <u>See</u> 2 U.S.C. § 441a(a)(1)(A) (making an illegal contribution); 2 U.S.C. § 441a(f) (receiving an illegal contribution); <u>United States v. Hankin</u>, 607 F.2d 611, 613-14 (3d Cir. 1979) (receiving an illegal contribution is complete upon deposit of check; making illegal contribution is complete upon giving of check). As such, the Indictment reveals that the alleged conspirators did not share the same object to commit the same crime, rendering Count 1 fatally defective.

## **STATEMENT OF FACTS**[1]

In a single conspiracy count, Mr. Edwards is alleged to have conspired to receive contributions from two distinct donors, Ms. Mellon and Mr. Baron. The Indictment alleges that this was done by Andrew Young who solicited, facilitated and/or received these contributions. There is no allegation that Mr. Edwards personally received, deposited or spent any of these funds. Neither Ms. Mellon nor Mr. Baron is alleged to have worked in concert to further the other's alleged contributions, so the Indictment does

---

[1] A more full statement of facts is presented in MTD No. 1.

not allege that all co-conspirators joined in the same conspiracy. Instead, Count 1 reflects a charging defect known as a "rimless wheel" conspiracy.

In addition, the conspiracy count fails to allege that Mr. Edwards had the same criminal objective as his unindicted alleged co-conspirators, Ms. Mellon and Mr. Baron. The Indictment alleges that Mr. Edwards conspired to commit the crime of accepting illegal campaign contributions, but that Ms. Mellon and Mr. Baron conspired to commit the distinct crime of making illegal campaign contributions. Because the alleged co-conspirators did not share the same object of the conspiracy to commit the same crime, the conspiracy count is defective as a matter of law.

## QUESTIONS PRESENTED

1.      Does the absence of an agreement between all alleged co-conspirators to commit the same crime render the conspiracy alleged in Count 1 defective?

2.      Does the fact that the alleged co-conspirators are not alleged to have conspired to commit the same substantive crime render the conspiracy in Count 1 defective?

## ARGUMENT

I. **COUNT 1 IMPROPERLY CHARGES A "RIMLESS WHEEL" CONSPIRACY IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS**

   A.    **"Rimless Wheel" Conspiracies Cannot Be Charged**

A classic criminal conspiracy has been likened to a "hub-and-spoke" agreement, where "a central core of conspirators recruits separate groups of co-conspirators to carry out the various functions of the illegal enterprise." United States v. Huff, 609 F.3d 1240, 1243-44 (11th Cir. 2010) (internal quotation omitted). In such conspiracies, "[t]he core conspirators move from spoke to spoke, directing the functions of the conspiracy." United States v. Chandler, 376 F.3d 1303, 1316 (11th Cir. 2004); see Dickson v. Microsoft Corp., 309 F.3d 193, 203-04 (4th Cir. 2002). By contrast, "[w]here only one conspirator moves from spoke to spoke . . . , the conspiracy is analogous to a 'rimless wheel,' with nothing connecting the separate spokes into a single conspiracy." Huff, 609 F.3d at 1244. As noted by the Fourth Circuit, "a rimless wheel conspiracy is not a single, general conspiracy but instead amounts to multiple conspiracies between the common defendant and each of the other defendants." Dickson, 309 F.3d at 203. In such circumstances, "[w]hile the hub may view its dealings with the spokes as part of a single agreement, a spoke may be concerned with his or her own actions." Id. (quoting Joseph F. McSorley, A Portable Guide to Federal Conspiracy Law 145 (1996)). Such "rimless wheel" conspiracies are defective as a matter of law. See Kotteakos v. United States, 328 U.S. 750, 755 (1946); Dickson, 309 F.3d at 203-204 (rejecting "rimless wheel" conspiracy charge because "the Supreme Court [in Kotteakos] was clear: a wheel without a rim is not a single conspiracy.").

4

A "rimless wheel" conspiracy is illustrated by the facts of Kotteakos itself, where 32 individuals were charged in a single conspiracy to obtain Fair Housing Act loans through fraudulent applications, all through the assistance of Simon Brown at the center of the alleged conspiracy. As the Supreme Court later summarized Kotteakos:

> Except for Brown, the common figure, no conspirator was interested in whether any loan except his own went through. And none aided in any way, by agreement or otherwise, in procuring another's loan. The conspiracies therefore were distinct and disconnected, not parts of a larger general scheme, both in the phase of agreement with Brown and also in the absence of any aid given to others as well as in specific object and result. There was no drawing of all together in a single, over-all, comprehensive plan.

Blumenthal v. United States, 332 U.S. 539, 558 (1947). As a consequence, the Court emphasized that, when drafting indictments, the government should take "precaution[s] to keep separate conspiracies separate." Kotteakos, 328 U.S. at 772; see also id. at 776 (advising courts to "scrupulously safeguard each defendant individually, as far as possible, from loss of identity in the mass"). "Guilt with us remains individual and personal, even as respects conspiracies." Id. at 772. Accordingly, it is not appropriate to "string together" multiple "separate and distinct crimes, conspiracies related in kind though they might be, when the only nexus among them lies in the fact that one man participated in all." Id. at 773. To permit such a practice would present "dangers for transference of guilt from one to another across the line separating conspiracies, subconsciously or otherwise, [that] are so great that no one really can say prejudice to substantial rights has not taken place." Id. at 774. Our legal system does not tolerate

5

such mass trials for conspiracy because "[t]hat way lies the drift toward totalitarian institutions." Id. at 773.

In addition to violating a defendant's Fifth and Sixth Amendment rights to due process and a fair trial, proceeding to trial on a "rimless wheel" conspiracy charge also produces an unconstitutional variance in violation of the Grand Jury Clause of the Fifth Amendment. See United States v. Kemp, 500 F.3d 257, 287 (3d Cir. 2007) ("There is a variance if the indictment charges a single conspiracy while the evidence presented at trial proves only the existence of multiple conspiracies").

### B. Count 1 Charges a "Rimless Wheel" Conspiracy

Count 1 alleges Mr. Edwards conspired with Ms. Mellon and Mr. Baron to commit campaign finance law violations with respect to alleged campaign contributions he received from them. But the dealings Mr. Edwards is alleged to have had with Ms. Mellon are completely separate from the dealings he had with Mr. Baron, and vice versa. Neither Ms. Mellon nor Mr. Baron is alleged to have agreed to do anything to facilitate or cover-up the receipt of campaign contributions made by the other. Whatever the relationships Ms. Mellon and Mr. Baron had with Mr. Edwards (which Mr. Edwards maintains were perfectly legal), Ms. Mellon and Mr. Baron plainly did not conspire with one another. The mere fact that they both knew, dealt with, and, if the disputed allegations of the Indictment are taken as true, committed an illegal act with Mr. Edwards does not link them to each other -- only to Mr. Edwards. The factual allegations

6

contained within the Indictment chronicle distinct, disconnected actions that do not constitute a "single, over-all, comprehensive plan" or conspiracy.  See Blumenthal, 332 U.S. at 558.  The flaw here is the same as if the prosecutors charged a candidate and every person who made an unlawful conduit or an excessive contribution in one conspiracy without any allegation that the various donors had any common connection other than that their individual violations of FECA were made to the same candidate. Indeed, the Indictment makes no pretense otherwise, for it contains not a single allegation that there was any link whatsoever between Ms. Mellon and Mr. Baron.

The situation here is no different than in common drug cases.  A Colombian cartel may manufacture a large quantity of cocaine and look to sell it to distinct distributors in the United States, and those distributors may have no relationship to or even knowledge of one another.  The Colombian cartel may conspire with Person A to unlawfully smuggle cocaine into Los Angeles, separately conspire with Person B to smuggle cocaine into Miami, and separately conspire with Person C to smuggle cocaine into New York. While the Columbian cartel may have conspired separately with each of its customers -- Persons A, B and C -- those distinct customers have not conspired with one another, even if all three had great admiration for the Columbian cartel and hoped to see it succeed in business.  Likewise, even if Ms. Mellon and Mr. Baron separately made illegal campaign contributions to Mr. Edwards because both wanted to help him, Ms. Mellon and Mr. Baron did not conspire with one another to commit the same crime because the payments

7

by each are separate offenses. They are no more part of the same conspiracy than Persons A, B and C in the drug analogy.

## II.   THE GOVERNMENT'S CONSPIRACY CHARGES IN COUNT 1 MUST BE DISMISSED BECAUSE THE GOVERNMENT HAS FAILED TO ALLEGE AN AGREEMENT TO COMMIT THE SAME CRIME

There are two separate offenses involving illegal campaign contributions: one punishes those who "make contributions," 2 U.S.C. § 441a(a)(1)(A), and the other punishes those who "knowingly accept" such contributions, 2 U.S.C. § 441a(f). The crime of making a contribution is complete when the payment is sent, but the crime of accepting a contribution occurs later when the payment is deposited. See, e.g., United States v. Hankin, 607 F.2d 611, 613-14 (3d Cir. 1979). A candidate cannot accept an illegal contribution unless someone else has first offered the illegal contribution.

The flaw in Count 1 is that it charges both those who made the alleged contributions, Ms. Mellon and Mr. Baron, as part of the alleged conspiracy with Mr. Edwards to commit the offense of accepting unlawful contributions. (Indict. ¶ 14(a).) This ignores the fact that the crime Ms. Mellon and Mr. Baron are alleged to have committed -- making a contribution -- is legally distinct from the crime Mr. Edwards is alleged to have committed -- accepting a contribution. In other words, the conspiracy count may allege that all of the conspirators agreed to commit crimes, but it does not properly allege that they all agreed to commit the <u>same</u> crime. When one person offers an illegal contribution and the other accepts, one has committed the crime of making an

8

illegal contribution and the other has committed the crime of accepting an illegal contribution, but neither has conspired with anyone to commit the same offense. Just as a person who accepts a contribution that has been offered has not conspired with the offeror to make the contribution, a person who offers a contribution does not conspire with the recipient to accept it.

To use the drug analogy again, persons who agree to unlawfully import drugs commit one conspiracy among themselves while the people who pool their money to buy the drugs would conspire to commit a distinct offense. The two actions relate in some fashion, but the two groups are not agreeing to commit the same crimes as part of the same conspiracy.

A conspiracy requires that all participants agree to commit the same crime. See 18 U.S.C. §371; Braverman v. United States, 317 U.S. 49, 53 (1942). See United States v. Stavroulakis, 952 F.2d 686, 690-91 (2d Cir. 1992) ("Where, as here, the indictment charges a conspiracy under the 'offense' clause of the conspiracy statute, the conspirators must have agreed to commit the same offense to satisfy the rule that they have agreed on the essential nature of the plan.") (emphasis added); United States v. Krasovich, 819 F.2d 253, 255 (9th Cir. 1987) (no conspiracy where co-conspirators "had not agreed on the same offense"). Because not all of the conspirators are alleged to have conspired to "accept" illegal campaign contributions -- the only crime with which Senator Edwards has been charged -- the conspiracy count must be dismissed.

9

## CONCLUSION

The government's charge of conspiracy in Count 1 is fatally defective in two respects: it charges a "rimless wheel" conspiracy and reveals in its allegations that not all of the conspirators conspired to commit the same crime, thus lacking a common object. As such, Count 1 must be dismissed.

Dated: September 6, 2011

/s/ James P. Cooney III
James P. Cooney III, N.C. Bar No. 12140
jcooney@wcsr.com
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
One Wells Fargo Center
Suite 3500, 301 South College Street
Charlotte, NC 28202-6037
(704) 331-4980 (phone)
(704) 338-7838 (fax)

/s/ Abbe David Lowell
Abbe David Lowell, *pro hac vice*
ADLowell@Chadbourne.com
Christopher D. Man, *pro hac vice*
CMan@Chadbourne.com
CHADBOURNE & PARKE LLP
1200 New Hampshire Ave., NW
Washington, DC 20036
(202) 2974-5600 (phone)
(202) 974-5602 (fax)

/s/ Wade M. Smith
Wade M. Smith, N.C. Bar No. 4075
THARRINGTON SMITH LLP
209 Fayetteville Street Mall
Raleigh, NC 27602
Email: WSmith@tharringtonsmith.com
(919) 821-4711 (phone)
(919) 829-1583 (fax)

# CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2011, I electronically filed the foregoing **MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS COUNT 1 -- CONSPIRACY (Motion to Dismiss No. 4)** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Brian Scott Meyers
U.S. Attorney's Office – EDNC
Terry Sanford Federal Building
310 New Bern Avneue, Suite 800
Raleigh, NC 27601-1461
Telephone: (919) 856-4530
Fax: (919) 856-4487
Email: brian.s.meyers@usdoj.gov

David V. Harbach
U.S. Department of Justice
Public Integrity Section
1400 New York Avenue, NW, Suite 1800
Washington, DC 20005
Telephone: (202) 262-7597
Fax: (202) 514-3003
Email: david.harbach@usdoj.gov

Jeffrey E. Tsai
U.S. Department of Justice
Public Integrity Section
1400 New York Avenue, N.W., Suite 1800
Washington, DC 20005
Telephone: (202) 307-0933
Fax: (202) 514-3003
Email: jeffrey.tsai@usdoj.gov

Robert J. Higdon
U.S. Attorney's Office – EDNC
Terry Sanford Federal Building
310 New Bern Avenue, Suite 800
Raleigh, NC 27601-1461
Telephone: (919) 856-4530
Fax: (919) 856-4487
Email: bobby.higdon@usdoj.gov

/s/ James P. Cooney III
James P. Cooney III (NCSB # 12140)
Womble Carlyle Sandridge & Rice, PLLC
One Wells Fargo Center
Suite 3500, 301 South College Street
Charlotte, NC 28202
Telephone: (704) 331-4980
Email: jcooney@wcsr.com

*Attorney for Defendant*

Date: September 6, 2011

12

Case 1:11-cr-00161-CCE   Document 37   Filed 09/06/11   Page 12 of 12