

FEDERAL ELECTION COMMISSION
WASHINGTON, D.C. 20463

**SENSITIVE**

### BEFORE THE FEDERAL ELECTION COMMISSION

In the Matter of            )
   Senator John McCain   )    MURs 5712 and 5799
                         )

### STATEMENT OF REASONS
### Chairman MATTHEW S. PETERSEN and
### Commissioners CAROLINE C. HUNTER AND DONALD F. McGAHN

These Matters Under Review ("MURs") concern allegations of the supposed solicitation of so-called soft money by Senator and then-presidential candidate John McCain, in violation of the Bipartisan Campaign Reform Act of 2002 ("BCRA" or "McCain-Feingold").

State candidates solicited non-Federal funds ("soft money") on invitations to fundraisers that listed McCain as an "honored guest" and "speaker," which the complainants alleged constituted an impermissible solicitation of soft money by McCain. However, McCain-Feingold itself distinguishes between impermissible solicitations and other political activity. Specifically, McCain-Feingold prohibits Federal candidates from soliciting soft money, but it does not prohibit Federal candidates from speaking at events where soft money is being raised. Nor does it cause the mere listing of a Federal candidate on an invitation to a fundraiser at which soft money is raised to be an impermissible solicitation. Despite the Commission's confusing guidance to Federal candidates who wish to participate in grassroots politics by, among other things, speaking at a State party event or State candidate fundraiser, we agreed with the arguments offered by Senator McCain that his activity did not violate McCain-Feingold because he did not improperly solicit soft money.

### I. FACTUAL BACKGROUND

The current matters arose from complaints filed by the California Democratic Party and The Senate Majority Project. The complaints allege that Senator McCain's attendance as a "special guest" at two non-Federal fundraising events, and being designated as such on the pre-event invitations sent by the respective non-Federal committees, constituted a solicitation of funds prohibited by McCain-Feingold.

   In the first matter (MUR 5712), McCain appeared as an "honored guest" and "speaker" at a political fundraising event co-sponsored by Schwarzenegger 2006 and the California Republican Party. The invitation materials (which were mailed by the event sponsors and had been approved by McCain's leadership PAC counsel) listed Senator McCain as a "Special

Guest" on the invitation. The materials also included a separate reply card with suggested categories of giving.[1] In addition, the following disclaimer appeared on both the invitation and the reply card:

> We are honored to have Senator John McCain as our Speaker for this event. However, the solicitation for funds is being made only by Californians for Schwarzenegger and the California Republican Party. In accordance with Federal law, Senator McCain is not soliciting individual funds beyond the limit, and is not soliciting funds from corporations or labor unions.[2]

In the second matter (MUR 5799), Senator McCain attended and spoke at a reception for a statewide candidate in South Carolina. The invitation materials were produced and sent by the event sponsor, Stan Spears for Adjutant General, but were reviewed by McCain's counsel. The invitation for this event listed Senator McCain as a "Special Guest" and noted at the bottom that the minimum donation requested was $100.[3] The invitation also included a separate reply card which had a box to check if you were attending followed by "My contribution...in the amount of $ ____ is enclosed ($100 minimum per couple)." The reply card had an "I will be unable to attend" box with suggested amounts from left to right respectively of "$1,000, $500, $250, Other $ ____." The reply card sent by the State candidate's committee contained the following disclaimer:

> Contributions to Spears for Adjutant General are not tax deductible for federal income tax purposes. The solicitation of funds is being made only by Spears for Adjutant General. We are honored to have Senator McCain as our Special Guest for this event. In accordance with federal law, Senator McCain is not soliciting individual contributions in excess of $2,100 per person, nor is he soliciting corporate, labor union, or foreign national contributions. South Carolina state law allows campaign contributions of up to $3,500 per election cycle.[4] Registered

---

[1] MUR 5712, Complaint, Exhibit A. California law allows unlimited contributions from personal funds. The categories ranged from an individual ticket at $1,000 each to platinum sponsors of $100,000 or more.

[2] *Id.*

[3] The invitation also contained a special disclaimer required by South Carolina law for Adjutant General candidates:

> This invitation was not intended for National Guard members or registered lobbyists. Accordingly, if you are a Guard member or lobbyist, please disregard this invitation. A candidate for Adjutant General may not solicit contributions from guard members or registered lobbyists. However, Guard members may voluntarily contribute to an Adjutant General candidate. This invitation was not mailed or distributed at government expense. Paid for by Stan Spears for Adjutant General.

The invitation also contained the disclaimer mandated by State law, "[a]uthorized and paid for by Spears for Adjutant General." *Id. See* South Carolina State Ethics Commission ("SCSEC") Advisory Opinion (AO) 2002-012.

[4] Under South Carolina law, the maximum amount per election varies according to the size of the relevant electorate. State and local candidates are required to include a notice of the applicable contribution limits. Furthermore, candidates are allowed to receive contributions for each election in which they have competition (candidates are considered to have competition *per se* in the general election), and therefore can receive as much as three times the maximum per election contribution (*i.e.*, primary, run-off, and general elections). As a result of the

lobbyists please disregard. PAID FOR BY SPEARS FOR ADJUTANT GENERAL. PLEASE RETURN IN THE ENCLOSED ENVELOPE.

Both complaints rely solely on the legal theory that merely listing McCain's name as either a guest or speaker at the event converts the solicitation by the non-Federal sponsor into a solicitation by him. McCain attended and spoke at both events; however, he did not solicit any contributions or funds of any kind during his remarks. The invitations for both events (which were reviewed by McCain's counsel) contained solicitations of funds by the sponsors which were consistent with applicable State law.

On February 21, 2007 and April 10, 2007, the Commission found reason to believe that Senator McCain violated 2 U.S.C. § 441i(e) in MURs 5712 and 5799.[5] Then, in its brief dated August 14, 2007, the Commission's Office of General Counsel ("OGC") notified Respondent of OGC's intent to recommend that the Commission find probable cause to believe a violation occurred. Respondent requested a probable cause hearing, which was held on October 20, 2007 (hereinafter the "2007 Probable Cause Hearing"). No vote on the matter was taken before the Commission ceased to have sufficient members to constitute a quorum at the end of 2007. The Commission was subsequently reconstituted with four new commissioners in July 2008, and a second probable cause hearing was held on March 18, 2009 (hereinafter "2009 Probable Cause Hearing").[6] After considering OGC's recommendation, Respondent's reply, as well as the arguments made during the probable cause hearings, we voted to reject the recommendation to find probable cause. Then, we also supported a motion to dismiss the matter as a matter of prosecutorial discretion, which passed with four affirmative votes.[7] Thereafter, the Commission voted to close the file.

## II. DISCUSSION

### A. McCain-Feingold Does Not Prevent Federal Candidates From Appearing, Speaking, or Endorsing Non-Federal Candidates at Events Where Nonfederal Funds Are Raised or Appearing on Invitations to Such Events

Prior to our appointment, the Commission found reason to believe that McCain had solicited non-Federal funds in violation of McCain-Feingold. In support of that finding, the

---

need to provide notice to contributors of the potentially varying amounts, standard practice is to state the maximum amount allowable. Since General Spears was running statewide ($3,500 per election), but did not have a primary opponent (i.e., there was only a general election), the applicable limit was $3,500 for the cycle. See SCSEC AO 1993-082, citing S.C. Code Ann. § 8-13-1314(A) (1976). See also S.C. Code Ann. § 8-13-1300(10) (definition of election cycle) and S.C. Code Ann. § 8-13-1320 S.C. Code Ann. (1976) (time limits for attributions to primary and run-off).

[5] MURs 5712 and 5799, Certification dated Feb. 21, 2007. Cf. MUR 5712 (Senator John McCain), Statement of Reasons of Commissioner Hans A. von Spakovsky (explaining why Senator McCain did not violate the law).

[6] Due to the ongoing presidential election and subsequent holiday season, the second probable cause hearing could not be scheduled in the Fall of 2008.

[7] MURs 5712 and 5799, Certification dated Mar. 18, 2009.

Commission stated that "[i]f a Federal officeholder or candidate approves, authorizes, or agrees or consents to be named or featured in a solicitation, then the entire solicitation must be limited to Federally permissible funds."[8] In other words, the law was read to mean that the mere reference to McCain on an invitation to a State candidate fundraiser constituted a solicitation by McCain himself for soft money, even where the invitation made clear that McCain was not soliciting funds. We disagree with this reading of the law.

Under McCain-Feingold, Federal candidates and officeholders may not solicit, receive, direct, transfer, or spend funds in connection with Federal or non-Federal elections, unless the funds comply with the Federal contribution limits and source prohibitions.[9] However, nowhere do the statute or Commission regulations state that merely listing a covered person, such as McCain, on an invitation to a fundraiser at which soft money is raised amounts to a solicitation of soft money by that person. On the contrary, the law itself, and comments from its congressional sponsors, make clear that simply because a Federal officeholder or candidate is listed as a special guest, guest speaker, or the like on a solicitation by a State candidate for soft money does not mean that the Federal candidate or officeholder solicited soft money. McCain, through counsel, succinctly summarized this statutory distinction:

> [T]here's a difference between a Federal officeholder appearing at an event to give a party speech and a Federal officeholder appearing at an event to solicit soft money and saying we need all your corporate and labor money because we're way behind and we'll find a way to use it in this Federal election. One would, I think be a problem under BCRA and one, I think, would not be.[10]

Thus, McCain-Feingold drew lines between that which is prohibited and permitted. McCain's assertion that McCain-Feingold drew lines between what is prohibited and permitted has been echoed by other Congressional sponsors of the law:

> Whatever direction the Commission takes, **BCRA reflects, in very clear and specific terms, the choices enacted by Congress** to reform our Federal campaign

---

[8] MURs 5712 and 5799 (Senator John McCain), Factual and Legal Analysis at 5.

[9] *See* 2 U.S.C. §§ 441i(e)(1)(A), (B); 11 C.F.R. §§ 300.61, 300.62. At all times relevant to this matter, a Federal candidate or officeholder could solicit only up to $2,100 per election, per candidate, and could not solicit funds from corporations or labor organizations. Also at all times relevant to this matter, Commission regulations defined "solicit" to mean "to ask, request, or recommend, explicitly or implicitly, that another person make a contribution, donation, transfer of funds, or otherwise provide anything of value." 11 C.F.R. § 300.2(m). The Commission adopted this definition of "solicit" after the initial regulation defining the term was invalidated by the United States Court of Appeals for the District of Columbia Circuit in *Shays v. FEC*, 414 F.3d 76 (D.C. Cir. 2005), *reh'g en banc denied* (Oct. 21, 2005). In *Shays v. FEC*, 528 F.3d 914 (D.C. Cir. 2008) ("*Shays III*"), the court ordered the Commission to promulgate revised regulations addressing, *inter alia*, Federal candidate solicitations at State and local party events. Without prejudging the impending rulemaking, we note that the Commission's revised regulations may bring some much-needed clarity to this issue.

[10] 2009 Probable Cause Hearing Transcript at 26 (Statement of Trevor Potter, attorney appearing on behalf of John McCain and his campaign committee). This transcript was not read by the participants for errors and corrections; therefore obvious typographical errors have been corrected where the meaning was obvious, such as "counsel" for "council," without the use of brackets. In order to maintain clarity, brackets are only used for true insertions. "*Sic*" is used if there is any doubt as to the correction.

finance laws. While we do not express an opinion about the actions the Commission may or may not take, we expect the Commission, an independent agency, to exercise its authority consistent with the law and the Constitutional rights of the citizenry to fully participate in the political process by way of political organizations. And while the Commission may choose to implement new restrictions on the programs and activities of these groups, such restrictions should be applied fairly and consistently, and **the agency should not proceed on the basis of some misperceived mandates from the Congress, which some have read into the McCain-Feingold legislation.**[11]

Notwithstanding the lack of a direct solicitation by McCain that might trigger the application of the statute, and the inclusion of language that made clear he was not soliciting funds, some of our colleagues supported finding probable cause in these matters. Our sense is that such a position was ultimately based upon a desire to give life to unspecified legislative intent (the "spirit" of the law) to fill in supposed "gaps" in the statute.[12] In other words, some believe that McCain-Feingold was intended to prohibit conduct not explicitly barred by the statute itself. Specifically, some seem to support a mere reference standard: by being listed on invitations to soft money fundraisers, and being held out as a draw, McCain himself somehow solicited soft money and, thus, violated McCain-Feingold.

This regulatory view mirrors that pushed by some outside the agency (who have joined lawsuit after lawsuit, filed court brief after court brief, submitted comment after comment, and issued press release after press release), who argue that the amorphous "spirit" of the law must be honored, regardless of the statutory language.[13] For example, in comments filed with the Commission, the Campaign Legal Center stated that:

· The use of the name of a Federal candidate or officeholder in a written fundraising solicitation, with the authorization of that Federal candidate or

---

[11] Letter to the Federal Election Commission from Members of Congress to the Federal Election Commission (Feb. 10, 2004) (signed by Representative Nancy Pelosi, Steny H. Hoyer, and 56 other U.S. Representatives) (emphasis added). See also Letter to the Federal Election Commission from Members of Congress to the Federal Election Commission (Feb. 12, 2004) (signed by Senator Harry Reid, Assistant Democratic Leader, and 5 other U.S. Senators, echoing the same sentiment).

[12] Silence in an area where Congress is aware of the status quo is generally interpreted as continuing the prior practice. See *Cottage Savings Ass'n v. Commissioner of Internal Revenue*, 499 U.S. 554, 562 (1991) (when Congress revises a statute, its decision to leave certain sections unchanged indicates acceptance of the preexisting construction and application of the unchanged terms). If the prior practice was retained, as Senator McCain's counsel represented, then there is no interstice to fill. 2009 Probable Cause Hearing Transcript at 52. *Cf.* 2009 Probable Cause Hearing Transcript at 47 (Commissioner Weintraub asked, "[Y]ou [Mr. Potter] said the statute expressly permits this [speaking at State party and State candidate events] and what the statute expressly permits is speaking at State party events. The statute is silent on State candidate events and one can draw whatever conclusions one draws from silence."). See also MUR 5024R (Council for Responsible Government, Inc.), General Counsel's Report #2 at 8 (discussing the Commission's supposed authority to "fill the gaps.").

[13] These sorts of arguments have been rejected by the courts, most recently in *FEC v. Emily's List*, when the D.C. Circuit unanimously held that the Commission's regulations were beyond the reach of the statute itself. *FEC v. EMILY's List v. FEC*, No. 08-5422, 2009 WL 2972412 (D.C. Cir. Sept. 18, 2009).

officeholder,[14] constitutes a "solicitation" by the candidate subject to the limits of 2 U.S.C. §441i(e)(1) regardless of whether or not the Federal candidate or officeholder actually signs the letter.[15]

Common Cause and Democracy 21 made the same point:

> [I]t constitutes a solicitation by a Federal officeholder to allow his name to be used in connection with an invitation for, or in publicity for, a State candidate fundraiser, including as part of "host committee," where the invitation or publicity asks for donations to the candidate. Given this, a Federal officeholder's name can be used only if the invitation or publicity is expressly limited to seeking federally permissible funds.[16]

But none of these arguments in support of a mere reference standard are based upon the statute itself, and the Commission cannot act in a manner beyond the statute.[17] In fact, McCain (through counsel) rejected this gloss on the "spirit" of McCain-Feingold, and explained that this "wasn't the line [Congress] drew,"[18] Instead, the line Congress "drew was you can't solicit the money, but you can go to the events...."[19] "[McCain] was merely a speaker, a role he is previously expressly permitted to fill in BCRA."[20] As McCain's counsel explained:

> I was counsel to Straight Talk America PAC at the time and I told its executive director that this language in the invitations was appropriate to ensure that it was clear that Senator McCain's role was only that of a speaker and that the solicitation for funds was not being made by him.[21]

---

[14] We note that McCain also argued in the current matters that he did not authorize the use of his name. However, the representative of his leadership PAC clearly authorized it, and his counsel reviewed the solicitations and made edits. Whether his leadership PAC or lawyer are his "agents" under McCain-Feingold is not an issue we need to resolve to reach our conclusion.

[15] AO 2003-03 (Cantor), Comments of Campaign Legal Center at 3.

[16] AO 2003-03 (Cantor), Comments of Common Cause and Democracy 21 at 2.

[17] *FEC v. EMILY's List v. FEC*, No. 08-5422, 2009 WL 2972412 (D.C. Cir. Sept. 18, 2009) (holding that three challenged regulatory provisions exceeded the agency's statutory authority). Nor was that decision the first time the Commission has acted beyond its powers. *See FEC v. Christian Action Network, Inc., et al.*, 110 F.3d 1049, 1050 (4th Cir. 1997) (holding that the agency's adoption of an overly broad definition of express advocacy lacked the substantial justification required to avoid imposition of fees and costs because "the position taken by the FEC in this litigation was foreclosed by clear, well-established Supreme Court case law, and it is apparent from the Commission's selective quotation from and citation to those authorities that the agency was so aware"); *Maine Right to Life, Inc., et al. v. FEC*, 114 F.3d 1309 (1st. Cir. 1997) (invalidating voter guide and voter record regulations because they reached conduct beyond the agency's jurisdiction); *FEC v. Machinists Non-Partisan Political League*, 655 F.2d 380, 386 (D.C. Cir. 1981) (rejecting the agency's "unprecedented assertion of subject matter jurisdiction" over candidate draft committees).

[18] 2009 Probable Cause Hearing Transcript at 49-50.

[19] *Id. See also* 2009 Probable Cause Hearing Transcript at 6 ("[McCain] was merely a speaker, a role he is ... expressly permitted to fill in BCRA.") (emphasis added).

McCain's counsel went on to assert that:

> Senator McCain, the covered official covered by the statute here, did not solicit any impermissible funds in connection with either State event. The invitation stated the solicitations were being made only by the State committees and that he was not soliciting non-Federal funds.[22]

McCain's counsel also explained the practical and political realities of why Congress did not intend for a mere reference standard:

> [T]hat's the hard line that Congress was drawing when it wrote BCRA, because it could have said – I don't think politically it would have been feasible, but it could have said... Federal officeholders may have nothing to do with State parties and State candidate events.
>
> \*   \*   \*
>
> You do have Federal officials who frequently are asked to speak at State, local events and for non-Federal candidates... therefore, it's logical to have them on the invitation and say you're coming to hear so and so. What I think the line ought to be is to make it clear that they are not soliciting.... I think there's a difference between encouraging people to attend the event and sure, the bigger the name you have, the more likely people will go out of curiosity, interest, support for that person, whatever. But I do think there's a fair line distinction to draw between that and whether that person is soliciting specific contributions.[23]

---

[21] *Id.* at 7.

[22] *Id.* at 7-8. McCain's co-counsel echoed the point:

> First, both [invitations] did not include a message from Senator McCain and did not contain his signature. Both simply referred to him as special guest. It was clear in both instances that the solicitations were being made by the benefiting organizations and in communications that were paid for by these organizations. This presents a stark reality. It is a long stretch to say these amounted to solicitations by Senator McCain under any common sense reading.

*Id.* at 18-19.

[23] *Id.* at 52, 60. McCain's co-counsel echoed the point:

> I would only add that the perspective that I've always had is that although Congress did impose that ban on soliciting soft money, it also was fully aware of the complications of trying to overdo it and so you see things built into the statute like the special allowances for helping the party committees raise money. Candidates can actually freely appear and even make speeches at those kinds of events, even though they are soft money events, and the Commission early on in [the] Cantor [advisory opinion] made the same sort of construction of the law with regard to appearing at candidate-related events. It's okay, you can appear, you can speak. There's always been a need to build in some flexibility there.

*Id.* at 23.

McCain's counsel also suggested a hypothetical which illustrated the absurdity of a mere reference standard:

> [I]f President Obama was featured on an invitation by the Illinois Democratic Party to a large dinner to raise unlimited funds, as permitted in Illinois, from corporate and labor sources and there were two invitations and one of them had President Obama's picture at the top of it and it said, in honor of our president, you are invited to the annual fundraising dinner for the State party, and the other invitation had President Obama's picture at the top and it said, in honor of our president, you are invited to the annual fundraising dinner for the State party, two identical invitations, but one of them the DNC, as an agent of the president, had agreed to have his picture featured and the other they hadn't asked and had just run it, under the standard that is being advocated here, one of those would be an illegal solicitation by a Federal officeholder and one of them wouldn't because one of them would have been run with consent and one without. I would argue that **neither of those is in fact a solicitation of non-Federal funds** if all they're saying is that we're featuring Obama because he's from us and famous and it will encourage you to come to the dinner, but Obama is not himself soliciting that money.[24]

And as for the "spirit" of the law, McCain's counsel asserted that any interpretation of McCain-Feingold that does not allow Federal candidates and officeholders to appear on the invitations and promotional materials for events, even if such materials contain a solicitation from the event sponsor, goes beyond the underlying purpose of the law:

> The purpose of the soft money ban was to ensure that Federal officials were not – covered officials were not raising funds that were going to be used directly or indirectly in Federal elections. If you go back and look at the history, you had soft money starting out as something used by party committees for State party purposes and then over time there developed a number of ways in which that money was being – was benefitting directly Federal campaigns, was being spent by State parties in conjunction with and in coordination with Federal elections and once that became a use of the money, It made a lot of sense for covered officials, Federal officeholders and candidates to raise those funds to assist the State parties because they recognize that the spending would be to their benefit. And so you then developed a pretty direct situation in which officeholders [were] raising large sums of money that they were not allowed to raise under Federal law. For Federal purposes the money was being routed through State entities, but then turned around and used again to benefit, sometimes directly, sometimes the whole ticket, the Federal candidates. And so the goal was to remove the temptation for Federal officeholders to raise money which would be used one way or another for their benefit.[25]

---

[24] *Id.* at 27-28 (emphasis added).

[25] *Id.* at 21-22. That McCain-Feingold does not reach all conduct has been echoed by the law's other sponsor, Senator Feingold. *See* MUR 6113 (Kirby Hollingsworth, *et al.*), Statement of Reasons of Vice Chairman Matthew

In other words, the link between the legitimate government interest in preventing corruption or the appearance thereof[26] is far too attenuated in situations like the current ones, where the State or local candidate is raising money for his own race, and not for the benefit of the Federal candidate. To again quote the Respondent:

> [T]here's a difference between a Federal officeholder appearing at an event to give a party speech and a Federal officeholder appearing at an event to solicit soft money and saying we need all your corporate and labor money because we're way behind and we'll find a way to use it in this Federal election. One would, I think be a problem under BCRA and one, I think, would not be."[27]

To go forward in the current matters would have required us to ignore the distinction drawn by Congress regarding what is and what is not a solicitation of soft money (a distinction that McCain's counsel explained was politically necessary). Moreover, any effort to resolve this matter by attempting to channel the "spirit" of McCain-Feingold in the abstract would be inappropriate,[28] and as we already stated a number of times, we will not use the enforcement process to implement novel legal theories never passed by Congress.[29]

---

Petersen and Commissioners Caroline Hunter and Donald McGahn at 6-7 (quoting Senator Feingold explaining that Congress intentionally limited the reach of 2 U.S.C. § 441i(f) (the so-called PASO provision) so as not to prevent non-federal candidates from spending non-federal money to run advertisements that mention that they have been endorsed by a Federal candidate or say that they identify with a position of a named Federal candidate).

[26] *See Citizens United v. FEC*, No. 08-205, slip op. at 43 (S. Ct. Jan. 21, 2010) ("When *Buckley* identified a sufficiently important governmental interest in preventing corruption or the appearance of corruption, that interest was limited to *quid pro quo* corruption."); *FEC v. Davis*, 128 S. Ct. 2759, 2773 (2008) ("Preventing corruption or the appearance of corruption are the only legitimate and compelling government interests thus far identified for restricting campaign finances." (internal citations omitted)).

[27] 2009 Probable Cause Hearing Transcript at 26. This difference was also emphasized by the D.C. Circuit Court of Appeals in *Shays III*, 528 F.3d 914. That court held that attending, speaking, or being a featured guest at State party fundraising events is not a solicitation. *Id.* at 933-34 ("The difference in terminology [between 'solicit' and 'attend, speak, or be a featured guest'] matters, for Congress' choice of different verbs to characterize the two situations is a choice which we properly take as evidence of an intentional differentiation.") (internal quotations and citations omitted). Presumably, being a "featured guest" at a State-party "soft money" event means that the guest will be "featured" in invitations before the event.

[28] As Justice Scalia has noted,

> Citizens arrange their affairs not on the basis of their legislators' unexpressed intent, but on the basis of the law as it is written and promulgated. . . . To be governed by legislated text rather than legislators' intention is what it means to be "a Government of laws, not of men."

*Zuni Public Sch. Dist. No. 89 v. Dep't of Ed.*, 550 U.S. 81, 119 (2007) (Scalia, J., dissenting).

[29] *See* MUR 5835 (Quest Global Research a/k/a DCCC), Statement of Reasons of Vice Chairman Matthew Petersen and Commissioners Caroline Hunter and Donald McGahn; MUR 5541 (The November Fund), Statement of Reasons of Vice Chairman Matthew Petersen and Commissioners Caroline Hunter and Donald McGahn. *See also* MURs 5878 (Pederson 2006), 5642 (George Soros), 5572 (Special Operations Fund), 5937 (Romney for President, Inc.), Reports of the Audit Division of Missouri Democratic State Committee, *Agenda Document 08-36* (Dec. 4, 2008), and Friends of Weiner, *Agenda Document 09-26* (May 14, 2009). Nor will we ignore judicial decisions that impact the work of the Commission. *See Davis*, 128 S. Ct. 2759; *WRTL*, 551 U.S. 449. *See also FEC v. Kalogianis*, 2007 WL 4247795 (M.D. Fla. 2007); *FEC v. Friends of Jane Harman*, 59 F. Supp.2d 1046 (C.D. Cal. 1999); *FEC v. AFL-CIO*, 628 F.2d 97 (D.C. Cir.), *cert. denied*, 449 U.S. 982 (1980).

B. **Past Commission Action Precludes Enforcement**

Notwithstanding the plain language of the law and clear instructions from its congressional sponsors, the Commission has not provided consistent and clear guidance about the law's application to State and local candidate fundraising events.[30] In a number of prior matters, the Commission has confronted the issue of whether a Federal officeholder or candidate solicited soft money. Although these matters, when taken as a whole, do not provide clear guidance on the issue,[31] what is clear is that McCain's interpretation of the application of these past Commission rulings was reasonable, and ought not be second-guessed in an after-the-fact enforcement proceeding. To do otherwise would create even more confusion in an area that already cries out for simplification and clarity, and would amount to selective enforcement of subjective views of what some believe the law ought to be.[32]

For example, MUR 5711 (Dianne Feinstein, *et al.*) focused on the website of California gubernatorial candidate Phil Angelides. The home page featured several Federal officeholders, including Senators Boxer and Feinstein and Speaker Pelosi, and contained a "contribute" link, together with the following open-ended request for funds: "Keep the campaign strong by giving what you can."[33] The webpage did not contain any sort of language that made clear the listed Federal officials were not soliciting soft money. On the contrary, the webpage expressly asked for soft money, stating:

---

[30] *See, e.g.,* AOs 2003-03 (Cantor), 2003-36 (Republican Governors Association ("RGA")), 2003-37 (Americans for a Better Country ("ABC")), 2007-11 (California State Party Committees); MUR 5711 (Dianne Feinstein, *et al.*).

[31] *See* AOs 2003-36 (RGA); 2003-03 (Cantor). *See also* AO 2003-37 (ABC) (In that opinion, the Commission, citing to both the Cantor and RGA Advisory Opinions, concluded that (1) a candidate's consent or agreement to be mentioned in an invitation as an honored guest, featured speaker or host, where that invitation is a solicitation, constitutes a solicitation by the candidate; and (2) if a candidate agrees or consents to be named in a fundraising solicitation as an honored guest, featured speaker or host, or if the invitation constitutes a solicitation for any other reason, then the solicitation must contain a clear and conspicuous statement that the entire solicitation is limited to funds that comply with the amount limits and source prohibitions of the Act. However, AO 2003-37 was superseded in part by 11 C.F.R. § 106.6 on Nov. 23, 2004. Thereafter, the Commission resolved MUR 5711 (Dianne Feinstein, *et al.*).

[32] This has not stopped some of our colleagues, however, from chastising us for not enforcing their subjective view of what the law ought to be (a view that has been rejected in court). *See* MUR 5541 (November Fund), Statement of Reasons of Commissioners Ellen Weintraub and Cynthia Bauerly at 6 (describing our vote to take no further action as a "refusal to enforce the law"); *but see EMILY's List*, 2009 WL 2972412 (striking down the legal theory and regulation upon which the reason to believe finding in MUR 5541 was based).

[33] *See* MUR 5711 (Dianne Feinstein, *et al.*), Complaint, Exhibits A&B (The homepage featured prominently the non-Federal candidate's "Campaign Co-Chairs," Senators Feinstein and Boxer and Speaker Pelosi. The homepage also had a streaming photo banner across the top, and at least one of the streaming photos featured Senator Boxer and Speaker Pelosi. Immediately below the streaming photo banner were five navigation buttons labeled, respectively, "Join… Contribute… Volunteer… Contact Us… [and] Community Pages." Below that was a space for the featured campaign issue of the day, and below that, on the left-hand margin, were four individual pictures of the Campaign Co-Chairs (Feinstein, Boxer, and Pelosi, and a non-Federal officeholder) labeled with their names and their respective offices. To the right was a link to a featured campaign commercial, and three links, including a link to the aforementioned "Contribute" link (accompanied by an open-ended request for funds: "Keep the campaign strong by giving what you can."). Upon clicking the "Contribute" button, another page opened, where the viewer could enter contributor and credit card information. The suggested amounts listed on the contribution webpage ranged from $25 to $22,300, well-above the Federal limits.).

>Angelides 2006 is a committee formed to support Phil Angelides's campaign for Governor of California in 2006. Under California and Federal law, Angelides 2006 may accept contributions of up to $22,300 per election for the primary and general elections from individuals, businesses, corporations, unions, PACs and small contributor committees. Contributions from foreign nationals are prohibited, unless an individual is lawfully admitted for permanent residence in the United States.[34]

Notwithstanding the open-ended request for funds, the Commission decided that the language of the website did not constitute a solicitation by a federal candidate of soft money.[35]

We cannot see a meaningful difference between MUR 5711 and the present matter. If anything, McCain presents an easier case; the invitations included language that made clear McCain was not asking for soft money. We agree with McCain's counsel's reading of that MUR, and agree that it precludes enforcement in the present case:

>[W]hat the Commission did there was look at it and say we don't really believe that the Federal candidates were soliciting non-Federal funds just because their names and images appeared on a page with a contribute button, even though contribute is a request, is a solicitation, is a request to give, and in California you can give unlimited amounts. Because they [the Commission] looked at it and said we don't think the Federal candidates are the ones who are actually asking for this [non-Federal contributions] and I think that is analogous to where Senator McCain is on these invitations.[36]

Thus, in light of the Commission's decision in MUR 5711, further action against McCain is not justified.

Moreover, McCain cited a series of advisory opinions which counsel against further enforcement. For example, AO 2003-03 (Cantor) concerned the appearance of Federal candidates and officeholders in publicity preceding an event at which funds would be raised for State candidates. Specifically, the requestors noted that:

>[T]hey would like Representative Cantor to: (1) attend campaign events, including fundraisers, (2) solicit financial support, and (3) do so orally or in

---

[34] Id., Exhibit B.

[35] MUR 5711, Certification dated Feb. 21, 2007. See MUR 5711 (Dianne Feinstein, et al.), Statement of Reasons of Chairman Robert D. Lenhard, Vice Chairman David M. Mason and Commissioners Hans A. von Spakovsky and Steven T. Walther (explaining why the Commission voted 4-0 to find no reason to believe that Senator Boxer, Senator Feinstein, and Representative Pelosi violated the Act (Commissioner Weintraub was recused.)). MUR 5711 arose from the same election cycle as these matters (2006), and was considered at the same executive session as MUR 5712 (involving the California fundraiser).

[36] 2009 Probable Cause Hearing Transcript at 55. Co-counsel for McCain echoed the sentiment: "[I]f that [MUR 5711] wasn't a solicitation, it's kind of hard to get a sense that this should be treated as solicitation by Senator McCain under these circumstances." Id. at 54.

> writing. Congressman Cantor would like to participate in their campaigns in this manner. Requestors ask for guidance from the Commission about the degree to which Representative Cantor, as a Federal officeholder and candidate, may engage in State and local election activities.

In response to the specific question asking whether the Congressman's attendance at the event may be publicized and whether he may participate in the event as a featured guest, the Commission responded:

> Section 441i(e)(1) and section 300.62 do not apply to publicity for an event where that publicity does not constitute a solicitation or direction of non-Federal funds by a covered person, nor to a Federal candidate or officeholder merely because he or she is a featured guest at a non-Federal fundraiser.
>
> In the case of publicity, the analysis is two-fold: First, whether the publicity for the event constitutes a solicitation for donations in amounts exceeding the Act's limitations or from sources prohibited from contributing under the Act; and second, whether the covered person approved, authorized, or agreed or consented to be featured or named in, the publicity. If the covered person has approved, authorized, or agreed or consented to the use of his or her name or likeness in publicity, and that publicity contains a solicitation for donations, there must be an express statement in that publicity to limit the solicitation to funds that comply with the amount limitations and source prohibitions of the Act.[37]

AO 2003-03 appears to us to absolve McCain. Here, the materials in question included a solicitation by a State candidate, listed McCain, and were apparently reviewed and approved by McCain (or his representative).[38] Under such circumstances, in order to come within the safe harbor of AO 2003-03, "an express statement ... limit[ing] the solicitation to funds that comply with the amount limitations and source prohibitions of the Act" is required.[39] McCain included such a statement, and thus is protected by AO 2003-03.

The Commission revisited the issue of covered persons' participation as featured guests in AO 2003-36 (RGA). In that AO, the requestor asked a series of questions, including: "May a covered individual participate [as a featured guest at an RGA fundraising event] by having his name appear on written solicitations for an RGA fundraising event as the featured guest or speaker?" After restating the two-step analysis from AO 2003-03, the Commission answered:

---

[37] AO 2003-03 (Response to Question 3.c) (citations omitted).

[38] The Executive Director of McCain's leadership PAC and legal counsel reviewed and approved the invitations, including the disclaimers.

[39] See AO 2003-03 (Cantor), Concurrence of Vice Chairman Bradley Smith and Commissioners David Mason and Michael Toner at 2 (explaining that although the Commission "provided safe harbor disclaimer language for covered persons who intend to solicit only federally permissible funds," "[s]olicitors are not required to use that language") (emphasis added). We agree.

> A Federal candidate may not solicit funds in excess of the amount limitation or in violation of the source prohibitions of the Act. If the covered individual approves, authorizes, or agrees or consents to be named or featured in a solicitation, the solicitation must contain a clear and conspicuous express statement that it is limited to funds that comply with the amount limits and source prohibitions of the Act.[40]

However, in answering that question, the Commission included a footnote that appears to suggest that a disclaimer may not sufficiently inoculate a covered person who approves his or her appearance in a solicitation explicitly seeking funds beyond the limits and prohibitions of the Act. In that footnote, which claims to clarify purported confusion arising from AO 2003-03, the Commission explained that such a statement is inadequate where, as here, the publicity or other written solicitation explicitly asks for funds in excess of Federal limits or from prohibited sources:

> Although Advisory Opinion 2003-03 [Cantor] might be read to mean that a disclaimer is required in publicity or other written solicitations that explicitly ask for donations "in amounts exceeding the Act's limitations and from sources prohibited from contributing under the Act," that was not the Commission's meaning. The Commission wishes to make clear that the covered individual may not approve, authorize, agree, or consent to appear in publicity that would constitute a solicitation by the covered person of funds that are in excess of the limits or prohibitions of the Act, regardless of the appearance of such a disclaimer.[41]

Having "clarified" (or, perhaps, changed) the meaning of AO 2003-03 (Cantor) in a footnote in a subsequent opinion, the Commission appears to have reverted back to the "original" understanding of AO 2003-03 in answering the RGA's second question, which asked: "With respect to the RGA Conference Account, may a covered individual sign or appear on written solicitations, such as signing invitation letters, or appear as a featured guest or speaker at a fundraising event, where the donations solicited exceed the Act's amount limits or are from prohibited sources but the solicitation does not include a notice that the covered individual is not raising funds outside the amount limits and source prohibitions of the Act?"[42] In response to Question 2, the Commission, using language that again suggested a disclaimer would negate any potential violation, stated:

> No, the covered individual may not so participate under those circumstances. The requirements described above in response to question 1.a, 1.b, and 1.c are applicable to the situations described in question 2, including the need for the notice that the covered individual is asking for funds only up to the applicable

---

[40] AO 2003-26 (Response to Question 1.b).

[41] AO 2003-36 at n.9.

[42] *Id.* at 7.

limits of the Act, and is not asking for funds outside the limitations or prohibitions of the Act.[43]

Thus, notwithstanding the guidance of AO 2003-03 (Cantor), AO 2003-36 (RGA) may have resulted in confusion regarding the effect of a disclaimer in a solicitation.[44]

Advisory opinions are not typically viewed as affirmative statements of new law.[45] Rather, they set forth the opinion of the Commission regarding the application of the law to a specific transaction or activity, and are designed to protect requestors and those similarly situated.[46] Respondent argues that, because he relied AO 2003-03 (Cantor), the Act guarantees that he cannot be subject to sanction.[47] Respondent is correct, but deciding whether the activity at issue here fits precisely within the contours of past Commission guidance has been made unnecessarily difficult by the murkiness of that past advice.[48]

---

[43] *Id.*

[44] Both AOs 2003-03 and 2003-36 contain additional ambiguity, in that they do not state explicitly whether it is *the solicitation by the Federal candidate or officeholder, specifically,* that must be limited by such a disclaimer, or whether *the entire publicity* is subject to the Act's amount limitations and source prohibitions and the disclaimer requirement.

[45] And as a matter of law, they cannot be. 2 U.S.C. § 437f(b) ("[a]ny rule of law which is not stated in this Act or in chapter 95 or chapter 96 of title 26 may be initially proposed by the Commission only as a rule or regulation").

[46] *See* 2 U.S.C. § 437f(a). Advisory opinions are subject to judicial review. *Unity '08 v. FEC*, No. 08-5526, 2010 WL 695482 (D.C. Cir. Mar. 2, 2010).

[47] 2 U.S.C. § 437f(c) provides that:

(1) Any advisory opinion rendered by the Commission under subsection (a) of this section may be relied upon by—

(A) any person involved in the specific transaction or activity with respect to which such advisory opinion is rendered; and

(B) any person involved in any specific transaction or activity which is indistinguishable in all its material aspects from the transaction or activity with respect to which such advisory opinion is rendered.

(2) Notwithstanding any other provision of law, any person who relies upon any provision or finding of an advisory opinion in accordance with the provisions of paragraph (1) and who acts in good faith in accordance with the provisions and findings of such advisory opinion shall not, as a result of any such act, be subject to any sanction provided by this Act or by chapter 95 or 96 of title 26.

*But see* MUR 5642 (Soros), where the Commission voted to accept OGC's recommendation to find probable cause that Soros violated the Act for failing to report the cost of a mailing list as an independent expenditure even though the Commission had considered and rejected the notion that a mailing list was an independent expenditure in an advisory opinion materially indistinguishable from the facts in MUR 5642.

[48] The Respondent's acknowledgment of "the Commission's confusing advisory opinions on this subject," 2009 Probable Cause Hearing Transcript at 9 (Statement of Trevor Potter), demonstrates that rules which may appear straightforward and "well understood" in theory may become "confusing" in practical application. *Compare Shays v. FEC*, 508 F. Supp. 2d 10 (2007) (No. 06-CV-1247 (CKK), Memorandum of Points and Authorities of U.S. Senators John McCain and Russell Feingold as *Amici Curiae* Opposing Defendant's Motion for Summary Judgment at 16-17 (The Commission's well-understood disclaimer requirements applicable to Federal candidate and

McCain's position that his activity was permissible is further supported by the Commission's failure, in AO 2003-03, to answer the following question in the negative: "whether the use of a covered person's name in a position not specifically related to fundraising, such as 'honorary chairperson,' on a solicitation not signed by the covered person, is prohibited under the Act."[49] In addition to illustrating that the Commission lacking four affirmative votes on certain legal questions is nothing new,[50] such inaction by the Commission renders the conduct at issue permissible. As explained by McCain (through counsel):

> The Commission could not agree whether the covered person's name could appear on campaign letterhead as honorary chair when that letterhead is used for a solicitation without the campaign also remembering to include the Federal disclaimer. From this the **regulated community could and did reasonably conclude that at least half the Commission believed that agreeing to appear on the letterhead as an honorary chair, or even the less concrete special guest, did not constitute a solicitation by the covered official.**[51]

At the very least, the lack of four affirmative votes prohibiting covered persons from appearing on campaign letterhead lends more confusion to this area of the law, rendering it inappropriate to

---

officeholder attendance at State candidate and non-party political organization soft money have for years "provided detailed guidance" for the regulated community "without having caused any known abuse or confusion" – while maintaining the integrity of the BCRA soft money ban,) *with* 2009 Probable Cause Hearing Transcript at 9 (discussing the Commission's "confusing advisory opinions"). *See also* Candidate Solicitation at State, District and Local Party Fundraising Events, 67 Fed. Reg. 9013 (Notice of Proposed Rulemaking) (Feb. 24, 2005), Comments of Sen. McCain, Sen. Feingold, Rep. Shays and Rep. Meehan at 6 (Mar. 28, 2005).

[49] AO 2003-03 (Cantor), Amended Certification dated Apr. 24, 2003 (the Commission, by a vote of 3-3 in both instances, failed to approve alternative draft advisory opinions).

[50] In fact, AO 2003-03 took a total of eleven votes to ultimately resolve the matter, and split three times before the Commission could pass a final opinion. Even then, disagreement remained on at least one issue, and half the Commission wrote separately to limit the reach of what they had supported. Likewise, the initial vote on AO 2003-36 (RGA) also resulted in a split vote.

[51] MURs 5712 and 5799, Respondent's Reply Brief at 12 (emphasis added). This view of a split vote is common among practitioners. For instance, in MUR 5835 (DCCC), while discussing the historical development of the Commission's disclaimer rules, Counsel to the DCCC, a well-respected campaign finance attorney who regularly practices in front of the Commission, explained that, prior to McCain-Feingold, the disclaimer rules applied only to express advocacy communications and only to communications that solicited money, and "there was a dispute with the Commission" over whether the statute could apply to phone calls at all. MUR 5835 (DCCC), Probable Cause Transcript at 24-25. And, as Counsel went on to describe, the Commission undertook a rulemaking on this question, and the Commission deadlocked on the rulemaking, after which, "the working assumption among the regulated community" was that the Act's disclaimer provisions did not apply to phone calls of any kind. *Id.* In other words, the so-called "regulated community" perceived the lack of four affirmative votes in the disclaimer rulemaking as meaning that the status quo continued, and thus, disclaimers were not required on political phone calls. *See also* MUR 5835 Statement of Reasons of Vice Chairman Matthew Petersen and Commissioners Caroline Hunter and Donald McGahn at 6 (concurring with that perception, and agreeing that a lack of four affirmative votes to adopt a General Counsel recommendation constitutes a decision of the Commission on that issue). *See generally* BNA Money & Politics Report, Increasing Prevalence of Split FEC Votes On Key Issues Could Shape Next Campaigns (Apr. 9, 2009) (quoting former FEC Commissioner Bradley Smith, explaining that "under FEC procedures, a 3-3 vote is a 'definitive resolution' of an enforcement case because it means 'a violation has not been found'").

find probable cause to believe that the appearance of McCain's name on the solicitations violated the law.

As detailed above, there is uncertainty about the law's application to the types of events at issue in these matters. This confusion warrants the exercise of the Commission's judgment, because such uncertainty over what is and what is not prohibited, regarding even the most basic of grassroots activities, has had very real consequences that affect real people.[52] As any experienced election law practitioner will confirm, candidates will forego otherwise permissible conduct to avoid such thorny legal issues altogether.[53] And as anyone who has attempted to run for office in the post-McCain-Feingold world knows, the ability to work with other candidates and with State and local parties now requires a phalanx of legal experts to parse through whether or how someone can be a "guest speaker" or "special guest" at a political event, with an eye toward guessing what the Commission may or may not do in the future.

That the Commission ought to exercise some judgment in this matter was best summed up by co-counsel for McCain:

> So you got really a string of five different matters that show even up until this point there doesn't seem to be a majority for saying what happened in our situation should be deemed a solicitation. So even if you disregard all the important disclaimer language that Mr. Potter crafted, there's still no solid legal basis for claiming a violation for simply referring to Senator McCain as the

---

[52] Although at first blush this matter does not appear to raise constitutional issues, the ability of candidates to work with other candidates and party committees can potentially impact the association rights of all involved. *See Cal. Democratic Party v. Jones*, 530 U.S. 567 (2000) (recognizing the First Amendment rights of political parties). To the extent that McCain's conduct in this matter could run afoul of the associational freedoms guaranteed by the First Amendment, we would avoid such constitutional issues. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) ("where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress") (citing *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 500 (1979) ("In a number of cases the Court has heeded the essence of Mr. Chief Justice Marshall's admonition in *Murray v. The Charming Betsy*, 2 L.Ed. 208 (1804), by holding that an Act of Congress ought not to be construed to violate the Constitution if any other possible construction remains available.")). *See also Dept. of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 346 (2000) (Scalia, J., concurring, in part) (noting that "[where statutory intent is unclear], it is our practice to construe the text in such fashion as to avoid serious constitutional doubt"). *See also AFL-CIO v. FEC*, 333 F.3d 168, 175 (D.C. Cir. 2003); *Chamber of Commerce of the United States v. FEC*, 69 F.3d 600, 605 (D.C. Cir. 1995) for application of the principle in *DeBartolo* to FEC regulations and decision making.

[53] As former Vice Chairman Smith and Commissioners Mason and Toner pointedly noted in the context of a prior Commission action on the same question at issue in this matter:

> This Commission cannot set standards – exposing respondents to potential criminal sanctions – based upon a listener's perception, intuition or inference that a covered person's statements amount in some way to a solicitation. Liability cannot rest upon the "varied understanding" of members of an audience. "In these conditions it blankets with uncertainty whatever may be said. It compels the speaker to hedge and trim."

AO 2003-03 (Cantor), Concurrence of Vice Chairman Bradley Smith and Commissioners David Mason and Michael Toner at 1 (quoting *Buckley v. Valeo*, 424 U.S. 1, 43 (1976)).

"special guest" for the events in question. Given this legal reality, an enforcement action cannot be justified. Now on top of that, Mr. Potter, on behalf of Straight Talk, tried to make it expressly clear that the invitations were not to be deemed solicitations by Senator McCain, period. The wording used actually goes beyond the protected disclaimer wherein the FEC had suggested in the Cantor and RGA situations. In circumstances like this where the prior precedent at best is muddled and those involved in the actions at issue were trying to cure any potential concerns through learned counsel, the FEC consistently has shown good judgment about declining to pursue enforcement action. This is the perfect case for doing that.[54]

Therefore, we voted to reject a finding of probable cause, and also supported dismissing this matter as an exercise of our prosecutorial discretion.[55]

---

[54] 2009 Probable Cause Hearing Transcript at 17-18.

[55] *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion. This recognition of the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement. The reasons for this general unsuitability are many. First, an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all. The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities. Finally, we recognize that an agency's refusal to institute proceedings shares to some extent the characteristics of the decision of a prosecutor in the Executive Branch not to indict-a decision which has long been regarded as the special province of the Executive Branch, inasmuch as it is the Executive who is charged by the Constitution to 'take Care that the Laws be faithfully executed.'") (internal citations omitted)). *See also United States v. Batchelder*, 442 U.S. 114, 123-124 (1979); *United States v. Nixon*, 418 U.S. 683, 693 (1974); *Vaca v. Sipes*, 386 U.S. 171, 182 (1967); *Confiscation Cases*, 7 Wall. 454 (1869).

IV. **CONCLUSION**

For the reasons stated above, there is no probable cause to believe that Senator McCain violated the Act and/or Commission regulations. Merely because Senator McCain was referenced on materials that solicited soft money did not constitute a solicitation of non-Federal contributions in violation of 2 U.S.C. § 441i(e) and 11 C.F.R. § 300.61. Therefore, we rejected the recommendations to find probable cause in these matters and voted to close the file.

_____  3/5/10
MATTHEW S. PETERSEN          Date
Chairman

Caroline C. Hunter
by _____  3/5/10
CAROLINE C. HUNTER           Date
Commissioner

_____  3/5/10
DONALD F. McGAHN II          Date
Commissioner