IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:11-CR-161-1 |
| | ) | |
| JOHNNY REID EDWARDS | ) | |

**GOVERNMENT'S MOTION TO EXCLUDE TESTIMONY
OF SCOTT THOMAS AND ROBERT LENHARD**

The United States of America, through the undersigned attorneys, respectfully moves this Court to exclude from trial the testimony of two witnesses whom defendant John Edwards has noticed as experts, Scott Thomas and Robert Lenhard. For the reasons discussed below, the proffered testimony of Messrs. Thomas and Lenhard consists of legal conclusions that will not aid the trier of fact, and/or is otherwise irrelevant, and neither witness should be permitted to testify at trial.

**I.  Background**

On November 18, 2011, in accordance with the Scheduling Order entered by this Court, defendant John Edwards provided the Government with a summary of the qualifications, opinions, and bases for opinions of three witnesses whom he intends to offer at trial as experts. The notice Edwards provided to the Government is attached to this Motion as Exhibit A. Two of the witnesses, Scott Thomas and Robert Lenhard, are former Commissioners of the Federal Election Commission whom Edwards has tendered as experts "in federal election law and federal campaign finance law." (Ex. A at 2, 4).

The summaries Edwards provided of the two men's testimony are identical. (Ex. A at 2-4 (Thomas), 4-6 (Lenhard)).[1]

**II. Applicable Law**

It is a fundamental precept that expert testimony on the meaning and applicability of relevant law is inadmissible. This is because each trial court already has its own legal expert: the judge. *See, e.g.*, *United States v. Wilson*, 133 F.3d 251, 265 (4th Cir. 1997); *Adalman v. Baker, Watts, & Co.*, 807 F.2d 359, 366-68 (4th Cir. 1986) ("expert" testimony of lawyer about meaning and applicability of securities laws inadmissible as "usurp[ing] the province of the judge"), *abrogated on other grounds by Pinter v. Dahl*, 486 U.S. 622, 650 (1988)[2]; *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99-100 (1st Cir. 1997) (collecting cases); *In re: Initial Public Offering Securities Litigation*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("[E]very circuit has explicitly held that experts may not invade the court's province by testifying on issues of law.") (collecting cases).

An expert who offers legal conclusions usurps not only the judge's duty to set forth the law but also the jury's duty to apply this law to the evidence. On many

---

[1] The third witness, James T. Walsh, is a private investigator and former FBI agent. We address Mr. Walsh in part III-F below.

[2] *Wilson*, a criminal case, applied the same rule previously articulated in *Adalman* (a civil case). *See Wilson*, 133 F.3d at 265 (citing *Adalman*).

occasions, the Fourth Circuit and other circuit courts have affirmed a trial court's decision to exclude the testimony of purported "experts" espousing legal conclusions or conclusions about how the law should apply to particular facts. *See, e.g.*, *United States v. Barile*, 286 F.3d 749, 761 (4th Cir. 2002) (testimony by former director of Food and Drug Administration's Office of Device Evaluation that defendant's submissions to FDA did not contain "materially misleading statements" properly excluded); *Wilson*, 133 F.3d at 265 (testimony of two former state Assistant Attorneys General about scope of Clean Water Act properly excluded); *Adalman*, 807 F.2d at 368 ("From beginning to end, it is obvious that Appellants proffered [witness] as an expert witness to testify in substantial part to the meaning and applicability of the securities laws to the transactions here, giving his expert opinion on the governing law. This flies squarely in the face of the precedent – and the logic of that precedent – set out in [*Marx & Co., Inc. v. Diner's Club, Inc.*, 550 F.2d 505 (2d Cir. 1977)]."); *Estate of Sowell v. United States*, 198 F.3d 169, 171-72 (5th Cir. 1999) (testimony by law school dean about what actions would be reasonable for hypothetical estate executor to take, when faced with same facts as in case at bar, properly excluded); *United States v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) (testimony by experts on tax and accounting laws that such laws were confusing and that defendant was reasonable in his belief that he could net out gambling wins and losses properly excluded); *Snap-Drape, Inc. v. Commissioner of Internal Revenue*, 98 F.3d 194, 198 (5th Cir. 1996) (testimony by two certified public accountants about whether certain dividends

are deductible under the Internal Revenue Code in calculating "adjusted current earnings" for purposes of the corporate alternative minimum tax properly excluded); *Farmland Indus. v. Frazier-Parrot Commodities, Inc.*, 871 F.2d 1402, 1409 (8th Cir. 1989) (testimony by defense expert on whether requirements of commodities regulations had been met properly excluded).

In addition, although opinion testimony embracing an ultimate issue of ***fact*** may be admissible under Federal Rule of Evidence 704(a), opinion testimony merely stating a ***legal*** conclusion is not. This is because even testimony embracing an ultimate issue under Rule 704(a) is required to be "otherwise admissible" in order to fall within the rule. Fed. R. Evid. 704(a). *See Barile*, 286 F.3d at 759 ("[Rule 704(a)], however, does not lower the bars so as to admit all opinions. As a condition to admissibility under Rule 704(a), testimony on ultimate issues must be otherwise admissible under the Rules of Evidence. Therefore, although opinion testimony that embraces an ultimate issue cannot be excluded under Rule 704(a), it may be excludable on other grounds.") (citations omitted). According to Federal Rule of Evidence 702, a touchstone prerequisite for admissibility of expert testimony generally is that it "will assist the trier of fact to understand the evidence or determine a fact in issue . . . ." But expert opinion testimony that simply states legal conclusions is generally not helpful to the jury and is properly excludable. *See Barile*, 286 F.3d at 759-60 ("[u]nder Rule 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes

-4-

Case 1:11-cr-00161-CCE   Document 106   Filed 11/28/11   Page 4 of 17

time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day.") (quoting advisory committee note to Fed. R. Evid. 704).[3] This is true whether the factfinder is a jury or the judge. *See Stobie Creek Investments, LLC v. United States*, 81 Fed. Cl. 358, 360-61 (Fed. Cl. 2008) ("Expert testimony that testifies about what the law is or directs the finder of fact how to apply law to facts does not 'assist the trier of fact to understand the evidence or to determine a fact in issue' within the contemplation of Fed. R. Evid. 702. Expert testimony that amounts to an opinion of law is especially disfavored. . . . This holds just as true when the finder of fact

---

[3] In dicta in a footnote, the *Barile* court noted that in some circumstances, opinion testimony that arguably states a legal conclusion has been held admissible, and included as an example a case that "involves a specialized industry such as insurance," citing *Peckham v. Continental Casualty Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990). *Barile*, 286 F.3d at 760 n.7. *Peckham*, however, only stands for the unremarkable proposition that opinion testimony is not objectionable simply because it embraces an ultimate issue in the trial. Indeed, that was the only objection made to the testimony in that case. *See Peckham*, 895 F.2d at 837 ("Below, plaintiffs did not challenge either the generic propriety of expert testimony or the qualification of CNA's witnesses. Their sole objection was on the ground that the matter of causation was 'the ultimate issue' for jury resolution and thus unfit for expert testimony."). As a result, the *Peckham* court did not have occasion to consider whether the testimony there stated improper legal conclusions, and the Government respectfully submits that the Fourth Circuit's reading of *Peckham* in its dicta in *Barile* is overly broad. Furthermore, since *Peckham* the First Circuit has made plain its view that "It is black-letter law that '[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.' At least seven circuit courts have held that the Federal Rules of Evidence prohibit such testimony, and we now join them as to the general rule." *Nieves-Villanueva*, 133 F.3d at 99 (citations omitted).

is the court, if not more so; the court is well equipped to instruct itself on the law.") (internal quotation and citation omitted).

**III.    Discussion**

Bearing these principles in mind, the proffered testimony of Messrs. Thomas and Lenhard is plainly inadmissible and should be excluded. At the outset, Edwards makes no bones about the fact that both men are being offered purely as ***legal*** experts. (Ex. A at 2, 4 (tendering them as experts in "federal election law and federal campaign finance law.")). Unsurprisingly, nearly all of the proffered testimony consists of legal conclusions and is excludable for that reason alone. As discussed below, however, much of it suffers from other problems that justify its exclusion.

**A.    Testimony concerning the law governing campaign expenditures**

Edwards has proffered testimony of Messrs. Thomas and Lenhard "as to the type of expenditures that a campaign may permissibly make" and that, in the witnesses' opinion, "the payment of the living, medical and other expenses of a candidate's mistress is not a campaign-related expense and could not be lawfully paid by the campaign or reimbursed by the campaign." (Ex. A at 2, 4-5). This testimony plainly consists of legal conclusions, but also has no place in a case in which expenditures ***of the campaign*** are not in issue. Testimony about that subject, in addition to consisting of improper legal conclusions, is irrelevant and likely to confuse the jury.

-6-

### B. Testimony about the scope of application of federal election laws to payments by third parties

Edwards also proffers testimony that "federal election laws do not regulate all expenditures by third parties that are intended, as least in part, to support a particular candidate," and testimony of examples "of a number of third party expenditures that can be made at the request of or in coordination with a candidate that are not prohibited or regulated by the federal election laws." (Ex. A at 2, 5). Testimony that more plainly consists of legal instruction properly reserved for the Court is difficult to imagine. The scope of application of the federal election laws, and more precisely and relevantly, the instructions to the jury about how to assess whether the gifts and payments alleged in the Indictment fall within their purview, will be among the subjects covered in this Court's charge to the jury. Testimony during trial from "experts" on this subject (from either side) would undoubtedly "usurp the province of the judge" and should be excluded. *Adalman*, 807 F.2d at 368.

### C. Opinions on whether the payments alleged in the Indictment are contributions under federal election law

Edwards proffers the following opinions of Messrs. Thomas and Lenhard: (1) "it was reasonable in 2007 and 2008 for a federal candidate to believe that the payments described in the Indictment (and more fully by Andrew Young in his various public statements) would not be considered a contribution that would be subject to limits or reporting" (Ex. A at 2-3, 5); (2) "it was reasonable in 2007 and 2008 for a federal

candidate to believe that the payments described in the Indictment (and more fully by Andrew Young in his various public statements) would not be third-party payments restricted under §113.1(g) nor be considered a contribution that would be subject to limits or reporting." (Ex. A at 3, 5); and (3) "if [the proffered witness] had been asked by a federal candidate in 2007 or 2008 whether the payments described in the Indictment would fall within the limits for contributions imposed by the federal election laws, . . . he would have given the opinion that they did not fall within the scope of those laws." (Ex. A at 3, 5-6).

These statements are precisely the sort of legal conclusions that "would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day," and should be disallowed. *Barile*, 286 F.3d at 759-60. They are of no use in assisting the jury in resolving the fact questions it will have to resolve in this case (*e.g.*, whether Edwards knew about the payments, whether the payments were made for the purpose of influencing an election for federal office, whether the payments were made not irrespective of Edwards' candidacy). According to the Fourth Circuit, "The best way to determine whether opinion testimony contains legal conclusions is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *Barile*, 286 F.3d at 760 (internal quotation marks and citations omitted). Like the phrase "materially misleading" in *Barile*, the terms "contribution" and "expenditure" plainly have such distinct legal

-8-

meaning in the area of campaign finance.[4] Accordingly, testimony about the scope of such terms should be excluded from trial.

Furthermore, the first two opinions are unequivocally prohibited by Federal Rule of Evidence 704(b): "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone." That the opinions are couched as hypotheticals as to the state of mind of an unnamed "federal candidate," and not Edwards himself, does not save them. During trial in *United States v. Boyd*, 55 F.3d 667 (D.C. Cir. 1995), a narcotics case, the Government posed to a police officer "expert" a series of hypothetical suppositions exactly mirroring the allegations in the indictment, in order to then elicit an opinion from the officer whether the "hypothetical" subject would have possessed the drugs with intent to distribute. The court reversed the conviction because of the district court's admission of such testimony, and did so in language equally applicable here:

---

[4] *Cf. United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) (noting *Barile* test, listing examples of terms that other courts have found to have specialized legal meaning ("extortion," "deadly force," "fiduciary," "unreasonably dangerous"), but concluding in case at bar that doctor's testimony that treatment of certain patients was "outside the course of legitimate medical practice, "inappropriate," or "with no legitimate reason" did not use specialized legal terms requiring its exclusion).

> It was a flagrant breach of the Rules of Evidence for the Government to elicit the opinion of an expert on the ultimate issue of fact that was for the jury alone to decide. Rule 704(b) is absolutely clear in its proscription: "No expert witness . . . may state an opinion . . . as to whether the defendant did or did not have the mental state . . . constituting an element of the crime charged. . . . Such ultimate issues are matters for the trier of fact alone." And it is no answer that the Government indulged the subterfuge of a "hypothetical" question to avoid the Rule. Here, the Rule was violated because the expert was allowed to address a hypothetical that was a carbon copy of the matter before the jury, thus effectively giving a forbidden opinion on the case at hand.

*Boyd*, 55 F.3d at 669. The "hypotheticals" postulated here on their face mirror the allegations in the Indictment, and despite Edwards himself not being named, the intended inference from the opinions is plain: that Edwards reasonably believed the payments at issue were not subject to federal campaign finance limits. For the same reasons articulated in *Boyd*, the opinions of Messrs. Thomas and Lenhard, premised on the exact allegations in the Indictment, about what it was "reasonable" for a "federal candidate to believe" should not be permitted.

Finally, the third opinion, the one that Mr. Thomas or Mr. Lenhard "would have given" if he had been asked, in addition to being a legal conclusion, is utterly irrelevant to the charges here. What Mr. Thomas or Mr. Lenhard would have said in 2007 and 2008 simply has no bearing whatsoever on what Edwards thought or knew at the time. For both reasons, the testimony should be excluded.

**D. Testimony about the legislative history of 11 C.F.R. § 113.1(g) and the significance of the Moran MUR**

Edwards proposes testimony from Messrs. Thomas and Lenhard about "the history of [11 C.F.R. § 113.1(g)] and the policy behind it," and that "the *Moran* MUR offers the most comprehensive statement by the Commission on the factors to be considered" in determining whether payments are subject to the regulation. (Ex. A at 3, 5). Again, these statements bear entirely on issues of law and are not proper expert testimony in a jury trial. In the first place, testimony from retained experts about legislative history is of little to no use, even to the Court, much less a jury. In *Covalt v. Carey Canada Inc.*, 860 F.2d 1434, 1438-39 (7th Cir. 1988), the court disregarded affidavits from a lobbyist and a Member of Congress about a statute's legislative history, stating:

> Legislative history generated in the course of litigation has even less utility, for it may be designed to mislead, to put an advocate's slant on things. . . . The Covalts have not drawn to our attention any case in which a federal court relied on affidavits written for purposes of litigation as a source of reliable information about the meaning of a statute. California courts have not only admitted affidavits but also allowed legislators to testify about the meaning of statutes. They have been compellingly criticized, and we shall not import this isolated practice into federal court.

(citations omitted). If a court, whose job it is to construe statutes and regulations, should not consider such affidavits or testimony created for purposes of litigation, a trial jury

-11-

surely should not. The testimony from Messrs. Thomas and Lenhard about their views of the legislative history of 11 C.F.R. § 113.1(g) should be excluded.

Similarly, testimony that the *Moran* opinion "offers the most comprehensive statement" by the FEC on determining whether a payment falls within the ambit of 11 C.F.R. § 113.1(g), as well as the proffered application of that opinion "to various hypothetical questions" (Ex. A at 3, 5) similarly consists entirely of legal conclusions that are the exclusive province of this Court, and are of no help to a trial jury. Such testimony should be disallowed.

### E. Opinions that the election laws are complex

Edwards also proffers that Messrs. Thomas and Lenhard will testify that (1) "the federal election laws are complex and not easily understood in their application," and (2) "there was no precedent to conclude with certainty in 2007 and 2008, that the payments described in the Indictment were contributions subject to the limits and reporting requirements of the federal election laws nor could anyone have stated with certainty what the law required with regard to this type of third-party expenditure." (Ex. A at 3-4, 6).

As to the first opinion, the Fourth Circuit has squarely held that defendants are not entitled to present expert testimony about the complexity of the law in order to substantiate a defense based on their state of mind. In *Fowler v. United States*, 932 F.2d 306 (4th Cir. 1991), the defendant was charged with conversion and unauthorized

-12-

conveyance of classified documents in violation of Title 18, United States Code, Section 641. Fowler relied in part on a defense of lack of specific intent to break the law, and proffered two expert witnesses who "would have testified that the regulations were confusing, vague, and uncertain, that Fowler's interpretation of them was 'at least arguably correct,' and there was room for potential confusion concerning the documents that Fowler converted. . . . The defense proffered this testimony to show that Fowler lacked specific intent to violate the law." *Fowler*, 932 F.2d at 315. The district court excluded the witnesses' testimony, and the Fourth Circuit affirmed that decision:

> From all the evidence, including Fowler's actions, statements, and transactions with his coconspirators, the jury had to determine whether he was confused or culpable. From this evidence the jury could decide whether he acted with specific intent to violate the law. This inquiry is a factual issue that juries regularly decide, and they need no expert witnesses to speculate about a defendant's state of mind.

*Fowler*, 932 F.2d at 315. This rationale is equally applicable to Edwards' proffered testimony about the supposed complexity of federal election law generally,[5] and such testimony should be excluded.[6]

---

[5] It is also worth noting that the area that Edwards' witnesses will emphasize is "foremost" in uncertainty is "particularly" the area of third-party expenditures for communications. (Ex. A at 3, 6). There are no such third-party expenditures for communications at issue in this case, nor is any alleged complexity in that area of federal campaign finance law relevant to the charges at issue here.

[6] *See also Scholl*, 166 F.3d at 973 (expert testimony about confusing state of tax and accounting law properly excluded because "[i]t is well settled that the judge

-13-

The second opinion is no more than an attempt by Edwards to submit for the jury's consideration an argument that this Court already rejected in denying Edwards' motions to dismiss: that the law did not provide adequate notice of what was proscribed. The Court should reject this attempt as well.

F. **Testimony as to which the summary provided is unclear**

Edwards' expert notice also includes the following proffer as to both Mr. Thomas and Mr. Lenhard:

> [Witness] will testify concerning the legal structure of presidential campaigns under the federal election laws, as well as the existence and purposes of various other entities including Political Action Committees, 501(c)(3) organizations, 501(c)(4) organizations, and 527 organizations. He will further testify concerning the legal distinction between the candidate and the campaign established under the federal election laws, describe the separate existence of the campaign, including its obligations after the candidate has withdrawn, and the audit process for a campaign.

(Ex A. at 2, 4). Although this summary lists topics that the witnesses are projected to discuss, it lacks specificity because it does not provide any detail about what the witnesses are going to say, or what expert opinions (if any) they are going to render in those topic areas. Without more specificity, the Government cannot assess whether the

---

instructs the jury in the law. Experts 'interpret and analyze factual evidence. They do not testify about the law because the judge's special legal knowledge is presumed to be sufficient, and it is the judge's duty to inform the jury about the law that is relevant to their deliberations.'") (citations omitted).

-14-

proffered testimony is relevant, impermissibly states legal conclusions, or is otherwise objectionable.

With respect to Mr. Walsh, although the notice does not indicate in what area Edwards offers him as an expert, counsel has since indicated that he is to be offered as an expert in forensic accounting. The notice provides some detail about Mr. Walsh's expected testimony as a summary witness for various financial records, but provides no information about any expert opinions Mr. Walsh will offer, or the reasons or bases for them. (Ex. A at 7). Edwards has indicated in his notice that part of the reason for this is that the defense has yet to receive certain information they have subpoenaed, and that he intends to "supplement this summary as Mr. Walsh gathers additional information." (Ex. A at 6-7). But as agreed by the parties and ordered by this Court, November 18, 2011, was the deadline for notice of defense experts, and today is the deadline for the Government to file any motions concerning defense experts. Accordingly, the Government respectfully requests permission to reserve its right to later object on any basis, including timeliness of notice, to any testimony of Mr. Walsh offered under Federal Rules of Evidence 702, 703, or 705, if and when the defense provides the Government with more complete notice.

## IV. Conclusion

As succinctly stated by the Seventh Circuit, "The meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts. It

-15-

is a question of law, to be resolved by the court." *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994) (Easterbrook, J.). For that reason and the reasons stated above, the Government respectfully requests that the Court exclude the testimony of Messrs. Thomas and Lenhard, and permit the Government to reserve its right to later object on any basis, including timeliness of notice, to any expert testimony offered by Mr. Walsh.

Dated: November 28, 2011

Respectfully submitted,

| | |
|---|---|
| JOHN STUART BRUCE<br>Attorney for the United States<br>Acting under authority<br>conferred by 28 U.S.C. § 515 | JACK SMITH<br>Chief, Public Integrity Section<br>Criminal Division<br>U.S. Department of Justice |
| By: /s/ Robert J. Higdon, Jr.<br>   Robert J. Higdon, Jr.<br>   Brian S. Meyers<br>   Special Attorneys<br>   U.S. Attorney's Office<br>   310 New Bern Ave., Suite 800<br>   Raleigh, NC 27601-1461<br>   Tel: (919) 856-4103<br>   Fax: (919) 856-4887<br>   bobby.higdon@usdoj.gov<br>   State Bar No. 17229 | By: /s/ David V. Harbach, II<br>   David V. Harbach, II<br>   Jeffrey E. Tsai<br>   Trial Attorneys<br>   Public Integrity Section<br>   Criminal Division<br>   U.S. Department of Justice<br>   1400 New York Ave., N.W., Ste. 12100<br>   Washington, DC 20005<br>   Tel: (202) 514-1412<br>   Fax: (202) 514-3003<br>   david.harbach@usdoj.gov |

# CERTIFICATE OF SERVICE

This is to certify that on November 28, 2011, I filed the foregoing document on the Court's CM/ECF system, which will transmit a copy to the following counsel of record in this case:

James P. Cooney III
Womble Carlyle Sandridge & Rice, PLLC
One Wells Fargo Center
301 South College Street, Suite 3500
Charlotte, North Carolina 28202-6037

Abbe David Lowell
Chadbourne & Parke LLP
1200 New Hampshire Avenue, N.W.
Washington, DC 20036

/s/ David V. Harbach, II
Trial Attorney
Public Integrity Section
Criminal Division
U.S. Department of Justice
1400 New York Ave., N.W., Ste. 12100
Washington, DC 20005
Tel: (202) 514-1412
Fax: (202) 514-3003
david.harbach@usdoj.gov