UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | CRIMINAL CASE NO. 1:11-CR-161-1 |
| JOHNNY REID EDWARDS | ) | |
| | ) | |
| | ) | |

## JOHN EDWARDS' MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR JURY SELECTION

Pursuant to Federal Rule of Criminal Procedure Rule 24 and the Court's November 21, 2011 Scheduling Order (Dkt. 103), Mr. Edwards moves for the following jury selection process in this case.

## INTRODUCTION

As has been previously set forth in Mr. Edwards' sealed motion of September 6, 2011 (Dkt. 35), which is adopted by reference and incorporated into this memorandum, the pre-trial publicity in this case has been overwhelming. In a case involving such a great deal of pre-trial publicity, emotional charges and evidence, and controversial defendants and witnesses, a greater care in selecting a jury is required. As Justice Sotomayor, an experienced trial judge in her own right, recently summarized the Supreme Court's case law: "Under our relevant precedents, the more intense the public's antipathy toward a defendant, the more careful a court must be to prevent that sentiment from tainting the jury." Skilling v. United States, 130 S. Ct. 2896, 2942 (2010) (Sotomayor, J., concurring and dissenting in part); id. at 2948 ("[A]s the tide of public

enmity rises, so too does the danger that the prejudices of the community will infiltrate the jury"); see also United States v. Blitch, 622 F.3d 658, 656 (7th Cir. 2010) ("The appropriate procedure when potential juror bias presents itself 'is a function of the probability of bias; the greater the probability, the more searching the inquiry needed to make reasonably sure that an unbiased jury is impaneled'"). Pretrial publicity poses particular problems of bias that must be addressed in voir dire. See, e.g., United States v. Bobbitt, 2000 WL 102925, at *4 (4th Cir., Jan. 31, 2000) (upholding use of questionnaire and the trial court's asking "the entire venire a series of questions regarding pretrial publicity"); ABC, Inc. v. Stewart, 360 F.3d 90, 94 (2d Cir. 2004) (recognizing "the problems presented in empanelling an unbiased jury" in case subjected to "high level of media attention"); United States v. Bieganowski, 313 F.3d 264, 273 (5th Cir. 2002) (finding "adequacy of voir dire frequently arise[s] in situations where the trial is surrounded by significant publicity"). Thus, to ensure an efficient jury selection process that amply protects the defendant's rights, Mr. Edwards seeks these additional measures. (The government has been consulted on this motion and its position on each request is indicated).

## SELECTION PROCEDURE

### I. Fresh Venire

After the hearing last week, the parties understand that the Court will attempt to find all of the venire from individuals who have been called for the first time in this session and who have not sat on another jury during this session.

2

## II.   Excused Absences Granted Only By The Court

Mr. Edwards requests that only the Court (with the exceptions below) grant excused absences for potential jurors. In longer cases, many potential jurors try to find ways to avoid service. Sometimes, a potential juror will assert a conflict or hardship that could be resolved short of foregoing service. Mr. Edwards, like all defendants, would like to and has the right to be tried before a jury that is representative of the entire community. To have the best chance to achieve this goal, no juror should be excused by the clerk or jury commissioner without that potential juror's reasons for seeking such an excuse being provided to the Court, the government and defense counsel. To accomplish this goal, the written questionnaire can ask people if they have hardships and to explain what those might be. (Of course, the clerk should have the normal discretion to excuse potential for reasons that are obvious, such as not a registered voter, wrong district, serious illness, physical impairment (e.g., hearing), inability to get around or mistake in jury eligibility). .

## III.   Pre-Voir Dire Written Questionnaire

In this case, as the Court has already indicated, the use of a pre-voir dire written questionnaire is an ideal method to address sensitive (e.g. publicity, politics, opinions about the defendant or public officials) and other issues in the case. See, e.g., Skilling, 130 S. Ct. at 2909 (affirming adequacy of voir dire that included a "77-question, 14-page" questionnaire that was only a slight modification of what the defendant proposed); In re South Carolina Press Ass'n., 946 F.2d 1037, 1041 (4th Cir. 1991) (noting use of an "18 page questionnaire containing 66 sections"); Stewart, 360 F.3d at 94 (endorsing

detailed voir dire process in case surrounded by extensive pre-trial publicity). The use of such questionnaires is a "common practice" in the Fourth Circuit. United States v. Rolle, 204 F.3d 133, 135 (4th Cir. 2000). To select a fair and impartial jury in this case, potential jurors will have to answer more questions than usual.

Pursuant to the Court's request, drafts of prposed questionnaires are being sent directly to chambers.

### IV. Individual/Small Group Follow Up Voir Dire

After the members of the venire have completed the questionnaire and the parties can review the answers and agree or disagree to recommend strikes for cause to the Court, the Court should conduct individual follow-up voir dire for any issues raised by answers to the written questions and then a final more general voir dire for those remaining. In addition, potential jurors should answer questions in a manner to avoid embarrassment or blurting out responses that could taint the rest of the jury pool. See In re Application of New York Times Co., 708 F. Supp. 603, 606 (S.D.N.Y. 1989) ("[T]he law compels an individual voir dire of the jury to avoid exposing untainted jurors to publicity of which they were not previously aware").

A procedure to do this and also save time is the one in which every potential juror first fills out a written questionnaire—followed by more limited in-court questioning regarding areas identified as concerns in the questionnaire. See Skilling, 130 S. Ct. at 2910 (affirming use of questionnaire followed by general questions to the venire then individualized examination); Rolle, 204 F.3d at 135-36 (following use of questionnaire with individualized voir dire); Stewart, 360 F.3d at 94 (endorsing process in which

4

"[p]rospective jurors would first be screened based on their responses to a lengthy questionnaire," followed by private, individual questioning of remaining venire members). General voir dire would then be able to address some general questions applicable to the entire venire (e.g., events that occur between the questionnaire and the start of trial, agreement with basic legal principles governing a criminal trial).

In addition, this process would allow counsel the opportunity to have some participation in the voir dire process and ask additional questions as necessary. See Fed. R. Crim. P. 24(a) ("The court may examine prospective jurors or may permit the attorneys for the parties to do so").

> The "federal" practice of almost exclusive voir dire examination by the court does not take into account the fact that it is the parties, rather than the court, who have a full grasp of the nuances and the strength and weaknesses of the case. "Peremptory challenges are worthless if trial counsel is not afforded an opportunity to gain the necessary information upon which to base such strikes." . . . Experience indicates that in the majority of situations questioning by counsel would be more likely to fulfill this need than exclusive examination in general terms by the trial court.

United States v. Ible, 630 F.2d 389, 395 (5th Cir. 1980) (internal citations omitted); see also United States v. Ledee, 549 F.2d 990, 993 (5th Cir. 1977) ("[V]oir dire examination in both civil and criminal cases has little meaning if it is not conducted by counsel for the parties").

**V.    Alternate Jurors**

The Court indicated that it would select four alternate jurors. In addition, Mr. Edwards requests that the Court consider not informing alternates that they are alternates as a way to maximize full attention by every potential juror.

## VI. Additional and Alternating Peremptory Strikes

In a case with high publicity and the potential for strong emotions and the added factor of politics, additional peremptory challenges also are a tool that courts approve to ensure a fair and impartial jury. United States v. Barnett, 644 F.3d 192, 198 (4th Cir. 2011) (to counter concerns of prejudice, potential jurors were given a 129-question written questionnaire and each side was given 20 peremptory strikes). With all of those factors present in this case, Mr. Edwards requests twenty peremptory challenges for the defense and twelve for the government.

There are various procedures courts use for peremptory strikes from requiring simultaneous strikes (which has the tendency to create duplication and waste the strikes provided) to some form of alternating strikes (depending on the numbers, the defense can strike two to the government striking one). See United States v. Blouin, 666 F.2d 796, 796–797 & n.1 (2d Cir. 1981) (discussing two different approaches to alternative striking); see also Gafford v. Star Fish & Oyster Co., 475 F.2d 767, 768 (5th Cir. 1973) (endorsing alternative challenge system as "the better practice"). Mr. Edwards requests the alternating strike method.

## CONCLUSION

The proposed jury selection procedure sought by the Defendant attempt to balance the desire to empanel a fair and impartial jury in a high profile case with the need to conserve judicial resources. The Defendant respectfully requests that each of these procedures be granted and adopted by the Court.

6

Dated: December 22, 2011.

| | |
|---|---|
| /s/ James P. Cooney III | /s/ Abbe David Lowell |
| James P. Cooney III, N.C. Bar No. 12140 | Abbe David Lowell, *pro hac vice* |
| jcooney@wcsr.com | ADLowell@Chadbourne.com |
| Womble Carlyle Sandridge & Rice, PLLC | Christopher D. Man, *pro hac vice* |
| One Wells Fargo Center | CMan@Chadbourne.com |
| Suite 3500, 301 South College Street | chadbourne & parke llp |
| Charlotte, NC 28202-6037 | 1200 New Hampshire Ave., NW |
| (704) 331-4980 (phone) | Washington, DC 20036 |
| (704) 338-7838 (fax) | (202) 2974-5600 (phone) |
| | (202) 974-5602 (fax) |

7

# **CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2011, I electronically filed the foregoing **Memorandum of Law in Support of Motion for Jury Selection** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Brian Scott Meyers
U.S. Attorney's Office – EDNC
Terry Sanford Federal Building
310 New Bern Avenue, Suite 800
Raleigh, NC 27601-1461
Telephone: (919) 856-4530
Fax: (919) 856-4487
Email: brian.s.meyers@usdoj.gov

David V. Harbach
U.S. Department of Justice
Public Integrity Section
1400 New York Avenue, NW, Suite 1800
Washington, DC 20005
Telephone: (202) 262-7597
Fax: (202) 514-3003
Email: david.harbach@usdoj.gov

Jeffrey E. Tsai
U.S. Department of Justice
Public Integrity Section
1400 New York Avenue, N.W., Suite 1800
Washington, DC 20005
Telephone: (202) 307-0933
Fax: (202) 514-3003
Email: jeffrey.tsai@usdoj.gov

Robert J. Higdon
U.S. Attorney's Office – EDNC
Terry Sanford Federal Building
310 New Bern Avenue, Suite 800
Raleigh, NC 27601-1461
Telephone: (919) 856-4530
Fax: (919) 856-4487
Email: bobby.higdon@usdoj.gov

/s/ James P. Cooney III
James P. Cooney III (NCSB # 12140)
Womble Carlyle Sandridge & Rice, PLLC
One Wells Fargo Center
Suite 3500, 301 South College Street
Charlotte, NC 28202
Telephone: (704) 331-4980
Email: jcooney@wcsr.com
*Attorney for Defendant*