IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:11-CR-161-1 |
| | ) | |
| JOHNNY REID EDWARDS | ) | |

**GOVERNMENT'S MEMORANDUM REGARDING**
**POTENTIAL CONFLICTS OF INTEREST**

The United States of America, through the undersigned attorneys, was planning to file a motion today to bring to the Court's attention potential and possible actual conflicts of interest posed by the participation of Alan Duncan, Esq., and Allison Van Laningham, Esq., as counsel for defendant John Edwards[1] at trial, and to request that the Court conduct a hearing to inquire into these potential conflicts. This afternoon, the Court *sua sponte* notified the parties of its intention to schedule a hearing on these issues. The Government respectfully files this Memorandum to apprise the Court of its view of the issues implicated by the participation at trial of Mr. Duncan and Ms. Van Laningham.

As the Court is aware, Mr. Duncan and Ms. Van Laningham previously represented a potential Government witness at this trial. Accordingly, the Government respectfully requests that at the hearing, the Court investigate whether or not potential or actual conflicts exist in this case and take appropriate remedial action.

---

[1] On March 5, 2012, Mr. Duncan and Ms. Van Laningham entered their notices of appearance in this case.

## I. Background

### A. The Pending Indictment

As this Court well knows, the core conduct underlying each of the offenses charged in the Indictment is John Edwards' knowing and willful acceptance and receipt of over $900,000 in illegal contributions from two wealthy donors, Rachel "Bunny" Mellon and Fred Baron, during his campaign for President of the United States in 2007 and 2008.

### B. Anticipated Testimony of Rielle Hunter

As has been discussed at length with the Court, among the contested issues at trial will be Edwards' knowledge of Baron's and Mellon's payments, and his knowledge that acceptance of those payments violated federal law. One of the witnesses whose testimony is relevant to the issue of Edwards' knowledge of the acceptance and receipt of funds is Rielle Hunter, the woman with whom Edwards conducted a lengthy extramarital affair prior to and during his presidential campaign. The Government expects that if called as a witness, Ms. Hunter would testify that she was, of course, a participant in the ongoing affair, which spanned the duration of Edwards' official campaign for President. She acknowledges cash spent and benefits conferred (to include medical care, living expenses, furniture, clothing, vacations, luxury travel and accommodations, and cash payments) as the result of Edwards' and others' efforts to support and conceal her, the affair and the pregnancy from the media.

Throughout this period, Hunter stayed in close contact with Edwards, often speaking with him many times per day. We expect Hunter to testify that she made Edwards aware of her living situation, welcomed his periodic visits, alerted him to her financial needs, and complained when she did not receive – in her estimation – adequate support from the funds provided by Mellon and Baron. Based on Hunter's pretrial statements, we anticipate that she will provide testimony suggesting that Edwards was aware of the funds being provided, participated in planning the scheme designed to conceal the affair and resultant pregnancy from the media and the public, and that he was aware of and condoned the role that many of the participants played in the conspiracy charged in the Indictment.

## C. Additional Facts Relevant to Possible Conflicts

The following additional facts relevant to potential conflicts further inform the Court's inquiry:

### 1. Counsel's Prior Representation of Rielle Hunter

While the Government has not definitively determined which witnesses will be called to testify at the trial of this matter, it is very possible that Rielle Hunter will be among them. During the investigation of this case, Ms. Hunter executed an immunity agreement with the United States and provided testimonial, documentary and physical evidence. In connection with the criminal investigation, Ms. Hunter is represented by Michael Critchley, Sr., Esq.

3

During the course of this investigation, Ms. Hunter brought suit in North Carolina state court seeking, among other things, the return of certain items of allegedly personal property that she claimed were in the possession of Mr. Young and his wife, Cheri. In that action, which was instituted on January 28, 2010, Ms. Hunter was represented by Mr. Duncan and Ms. Van Laningham, among others. That matter was resolved by Consent Judgment and Permanent Injunction filed in the Superior Court of Orange County, North Carolina, on February 24, 2012. By notice filed March 5, 2012 – a mere six business days after the conclusion of the two-year lawsuit against the Youngs – Ms. Hunter's attorneys made an appearance in this matter as members of Edwards' defense team.

### 2. Withdrawal of Mr. Cooney and Ms. Rauscher

On March 8, 2012, James P. Cooney III, Esq., and Claire Rauscher, Esq., both of Womble Carlyle Sandridge & Rice PLLC, filed motions to withdraw from this case as Edwards' counsel.

## II. Applicable Law

A defendant has a right under the Sixth Amendment to conflict-free legal representation. *Mickens v. Taylor*, 240 F.3d 348, 355 (4th Cir. 2001) (en banc). While the Sixth Amendment encompasses a defendant's right to be represented by the attorney of his choice, the essential aim of the Sixth Amendment's right to counsel is to ensure an effective advocate for all criminal defendants. *Wheat v. United States*, 486 U.S. 153, 159 (1988). Thus, "[a] District Court must recognize a presumption in favor of [a

defendant's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Wheat*, 486 U.S. at 164. A defendant's right to the lawyer of his choice is not absolute, and the Court is not required to accept a defendant's valid waiver of his lawyer's conflict of interest. *See United States v. Urutyan*, 564 F.3d 679, 688 (4th Cir. 2009) ("The paramount concern is the judiciary's 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'") (quoting *Wheat*, 486 U.S. at 160); *United States v. Basham*, 561 F.3d 302, 323 (4th Cir. 2009) (same); *United States v. Williams*, 81 F.3d 1321, 1324 (4th Cir. 1996).

When a district court has been informed of the possibility of a defense counsel's conflict of interest, it has a threshold obligation to conduct an inquiry. *Mickens*, 240 F.3d at 358 ("[T]rial courts have an obligation to inquire into potential conflicts of interest when they know or reasonably should know of a particular conflict."); *United States v. Tatum*, 943 F.2d 370, 379 (4th Cir. 1991); *United States v. Akinseye*, 802 F.2d 740, 744 (4th Cir. 1986); *see also Basham*, 561 F.3d at 323 ("'[A] district court has an obligation to foresee problems over representation that might arise at trial and head them off beforehand.'") (quoting *United States v. Howard*, 115 F.3d 1151, 1155 (4th Cir. 1997)).

If the Court determines that defense counsel has an actual or potential conflict, the Court must determine whether the conflict is so severe as to disqualify the

5

attorney, or is a lesser conflict that can be waived by the defendant at a hearing. To be valid, any such waiver must be knowing, intelligent, and voluntary. *United States v. Brown*, 202 F.3d 691, 697 (4th Cir. 2000); *Akinseye*, 802 F.2d at 744-45. In order to ensure that a defendant's waiver is proper, the Court, the Government, and the attorney in question should "provide the defendant with as much relevant information as possible about the conflict before the court accepts a waiver of the conflict of interest." *Brown*, 202 F.3d at 697-98. At such a hearing, the Court should: (1) advise the defendant of the dangers arising from the particular conflict; (2) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (3) inquire whether the defendant wishes to seek advice from independent counsel, who could be appointed free of charge, if the defendant could not afford to hire an attorney for this purpose. *See Akinseye*, 802 F.2d at 745; *United States v. Curcio*, 680 F.2d 881, 881-91 (2d Cir.1982).

The Court has considerable latitude to determine whether an attorney should be disqualified even where the Court finds that any conflict of interest is a potential, rather than actual, conflict. *See generally Wheat*, 486 U.S. at 162-63, (explaining that because "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict . . . the district court must be allowed substantial latitude in refusing waivers of conflicts not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses"). As

6

the Fourth Circuit has put it, the court must have "'significantly broad discretion to rule without fear that it is setting itself up for reversal on appeal' if it disqualifies counsel.'" *Basham*, 561 F.3d at 323 (quoting *Williams*, 81 F.3d at 1324).

In addition to the substantial body of Federal case law, the North Carolina Rules of Professional Conduct also can inform the Court's judgment about the presence of potential conflicts, because conduct of lawyers appearing before this Court is governed by those Rules. *See* Local Civil Rule 83.10e (incorporated by reference in Local Criminal Rule 57.1). Pursuant to North Carolina General Statute § 84-28, the North Carolina Rules of Professional Conduct ("RPC") apply to any "member of the North Carolina State Bar or any attorney admitted for limited practice."[3]

RPC 1.7 states, in part, that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest" and "[a] concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) the representation of one or more clients may be materially limited by the lawyer's responsibilities to another client, a former client, or a third person . . . ." RPC 1.7(a). However, the lawyer may represent the current client, if "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to

---

[3] According to RPC 1.10(a), "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9." Because Mr. Duncan and Ms. Van Laningham both are employed by the same firm, any conflict, waiver thereof, or determination made by this Court concerning the representation of Edwards by either Mr. Duncan or Ms. Van Laningham should likewise apply to the other and to members of their firm.

7

each affected client . . . [and] each affected client gives informed consent, confirmed in writing." RPC 1.7(b).

Subsection (c) of Rule 1.9 provides that "[a] lawyer who has formerly represented a client in a matter . . . shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client except . . . when the information has become generally known." RPC 1.9(c). "A former client is not required to reveal the information learned by the lawyer to establish a substantial risk that the lawyer has information to use in the subsequent matter." RPC 1.9, cmt. 3. Instead, "[a] conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." *Id.*

In order to waive a conflict, "each affected client [must] give[]informed consent, confirmed in writing." RPC 1.7(b)(4); *see* RPC 1.9(a). "Informed consent" contemplates that "[t]he lawyer must make reasonable efforts to ensure that the client or other person possesses information reasonably adequate to make an informed decision. Ordinarily, this will require communication that includes a disclosure of the facts and circumstances giving rise to the situation, any explanation reasonably necessary to inform the client or other person of the material advantages and disadvantages of the proposed course of conduct and a discussion of the client's or other person's options and alternatives." RPC 1.0, cmt. 6; *see* RPC 1.0(f).

## III. Discussion

Counsel's prior representation of Ms. Hunter in a lawsuit brought against two key witnesses in the investigation and ensuing prosecution of Edwards presents distinct possibilities of potential conflicts that, in the Government's view, necessitate this Court's inquiry at a hearing and, at a minimum, proper advisement of the defendant so that any proffered waiver can be proper.

The participation of Mr. Duncan and Ms. Van Laningham as part of Mr. Edwards' defense team obviously includes the prospect of either one of those attorneys examining Ms. Hunter in the event she testifies for either side at trial. Although it is always difficult to predict the exact pressures or precise fact issues that may arise at trial in the context of a given witness, Mr. Duncan's and Ms. Van Laningham's attorney-client relationship with Ms. Hunter certainly presents a real possibility that cross-examination of Ms. Hunter may not be as thorough as otherwise might be the case were an independent non-conflicted counsel conducting the examination. Even on direct examination, Ms. Hunter's privacy interests – over which she instituted a lawsuit, and that necessitated pages and pages of protective protocols in the state court, and that Mr. Duncan and Ms. Van Laningham were retained to protect – could present acute difficulties.

The Fourth Circuit has upheld a district court's disqualification of an attorney who earlier represented a key witness in the Government's case notwithstanding the defendant's express waiver, in part because of the threat the prior representation

9

posed to effective and fair cross-examination of the witness. *See Williams*, 81 F.3d at 1324. As it noted in *Williams*, the Court of Appeals has also gone so far as to reverse as an abuse of discretion a district court's refusal, because of the defendant's waiver, to disqualify an attorney in a similar situation. *See Hoffman v. Leeke*, 903 F.2d 280, 288 (4th Cir. 1990) (disqualification of counsel necessary where counsel had previously represented a person who would be an important witness in prosecution case, where counsel had arranged for witness' testimony).

Mr. Duncan's and Ms. Van Laningham's prior relationship with Ms. Hunter presents a classic conflicts problem because (a) counsel actually represented her for a period of years in a matter closely factually related to the instant case, (b) that representation inevitably resulted in Ms. Hunter sharing detailed and privileged information, (c) the subject matter of the related civil law suit involved "deeply personal and private" information, (d) discovery in the civil suit required Ms. Hunter to provide sworn testimony, at which she was presented and defended by Mr. Duncan and Ms. Van Laningham, and, therefore, (e) they could, in theory, themselves be sworn or unsworn witnesses concerning the subjects covered in said testimony.

In addition, Edwards moved for, and this Court granted, a protective order requiring that parties to this case give notice to Ms. Hunter of any intention to use certain materials obtained from the state court litigation at trial, so that she can have an opportunity to apply to this Court for any desired protections concerning such use. (Dkt. Nos. 162, 170). This presents the real possibility that Edwards may want to use materials

at trial (or may not want to object to the Government's use of materials) that Ms. Hunter does not want disclosed or used because they would violate her privacy rights, and the resulting problem is obvious. To whom would Mr. Duncan's and Ms. Van Laningham's allegiance lie? Their new client or the one they represented as recently as two weeks ago in a lawsuit seeking to enforce those very privacy rights?

Finally, the fact of counsel's representation of Ms. Hunter in a case embracing subjects that will be relevant to this case makes for the possibility that their names will come up during testimony by Ms. Hunter and/or Mr. and Mrs. Young. In particular, if Ms. Hunter testifies at the trial of this matter, the Government may very well elicit testimony that Mr. Duncan and Ms. Van Laningham represented her when she sued Andrew and Cheri Young, key witnesses against Mr. Edwards, and promptly upon resolution of that case ceased representing Ms. Hunter and switched to Mr. Edwards. Accordingly, if the Court finds the conflicts waivable, the Government requests that the Court also advise Edwards of the possibility that his current lawyers could be the subject of testimony by witnesses against him, concerning the lawyers' activities and conduct prior to representing him.[2]

---

[2] As this Court has recognized, Mr. Lowell's prior contacts with Ms. Hunter also present the possibility of his name coming up during her testimony. The Court has already found there to be no conflict associated with this issue, and opined that the issue could be dealt with "in an appropriate way so that that won't cause us any problems." (Transcript of October 26, 2011, Hearing at 13). To the extent that the Court's view was informed by the possibility of other counsel for Mr. Edwards examining Ms. Hunter, the problem could now resurface since with the departure of Mr. Cooney and Ms. Rauscher, no attorney would remain on Edwards' team who could examine her.

## IV. Conclusion

For these reasons, the Government respectfully requests that at the hearing, the Court inquire into the potential conflicts of interest that may exist involving Edwards' representation at trial by Mr. Duncan and Ms. Van Laningham, and take any appropriate remedial action.

Dated: March 9, 2012

Respectfully submitted,

| | |
|---|---|
| JOHN STUART BRUCE<br>Attorney for the United States<br>Acting under authority<br>conferred by 28 U.S.C. § 515 | JACK SMITH<br>Chief, Public Integrity Section<br>Criminal Division<br>U.S. Department of Justice |
| By: /s/ Robert J. Higdon, Jr.<br>  Robert J. Higdon, Jr.<br>  Brian S. Meyers<br>  Special Attorneys<br>  U.S. Attorney's Office<br>  310 New Bern Ave., Suite 800<br>  Raleigh, NC 27601-1461<br>  Tel: (919) 856-4103<br>  Fax: (919) 856-4887<br>  bobby.higdon@usdoj.gov<br>  State Bar No. 17229 | By: /s/ David V. Harbach, II<br>  David V. Harbach, II<br>  Jeffrey E. Tsai<br>  Trial Attorneys<br>  Public Integrity Section<br>  Criminal Division<br>  U.S. Department of Justice<br>  1400 New York Ave., N.W., Ste. 12100<br>  Washington, DC 20005<br>  Tel: (202) 514-1412<br>  david.harbach@usdoj.gov |

# CERTIFICATE OF SERVICE

This is to certify that on March 9, 2012, I filed the foregoing document on the Court's CM/ECF system, which will transmit a copy to the following counsel of record in this case:

Mr. Abbe David Lowell
Chadbourne & Parke, LLP
1200 New Hampshire Avenue, N.W.
Washington, D.C. 20036

Mr. James P. Cooney, III
Womble Carlyle Sandridge & Rice, PLLC
One Wells Fargo Center
301 South College Stree, Suite 3500
Charlotte, North Carolina 28202-6037

Mr. Alan W. Duncan
Smith Moore Leatherwood, LLP
300 North Green Street
Suite 1400
Greensboro, North Carolina 27401

Ms. Allison O. Van Laningham
Smith Moore Leatherwood, LLP
300 North Green Street
Suite 1400
Greensboro, North Carolina  27401

    /s/ David V. Harbach, II
Trial Attorney
Public Integrity Section
Criminal Division
U.S. Department of Justice
1400 New York Ave., N.W., Ste. 12100
Washington, DC 20005
Tel: (202) 514-1412
david.harbach@usdoj.gov

13