IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 1:11CR161-1 |
| JOHNNY REID EDWARDS, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

This matter is before the Court on the government's Motion in Limine to Preclude Reference to Any Contempt Proceedings in State Court. (Doc. 192.) The government seeks to prohibit the defense from introducing evidence at trial or cross-examining Andrew Young or Cheri Young about three matters: (1) a state court ruling that held them in civil contempt of court for violating a temporary restraining order; (2) any judicial statements about their credibility made during the state court hearings; and (3) a state court ruling that found probable cause to hold them in criminal contempt of court for violating a protective order. The Court concludes the Motion should be granted as to the judicial statements and otherwise denied.

**I.     BACKGROUND**

On January 28, 2010, Rielle Hunter sued Andrew and Cheri Young in Orange County Superior Court for, among other things, conversion of certain property, including a videotape and various photographs. She moved concomitantly for a temporary restraining order prohibiting dissemination of the property in question. Also on January 28, 2010, Superior Court Judge

Abraham Penn Jones entered the requested temporary restraining order, ordered that the Youngs turn over the property to Ms. Hunter's counsel, and directed the sheriff to execute the order.

That same day, a deputy sheriff was dispatched to the Youngs' home to collect the property. When the deputy served Mr. Young with the order, Mr. Young did not turn over any of the property, even though he had some of it at his home. Nor did the Youngs turn over any responsive materials within the next seven days.

On February 5, 2010, after notice and a hearing, the state court held the Youngs in civil contempt for violating the temporary restraining order. In a consent order, the state court found that the Youngs had "refus[ed] to turn over the items referenced in the [temporary restraining order], and [had] not deliver[ed] items in their possession or under their control during the subsequent seven days." (Doc. 192-1 at 4.) The state court also provided that the Youngs could purge themselves of contempt by, among other things, turning over the property to the Clerk of Court of Orange County. (*Id.* at 6–7.)

Over the next five weeks, the Youngs submitted several affidavits and testified at two hearings concerning, among other things, the location of the property, whether it had all been turned over to the court, and their efforts to locate it. During these hearings, Judge Jones expressed numerous doubts about the credibility of the Youngs. Eventually, on March 12, 2010, Judge Jones found that the Youngs had purged themselves of contempt while at the same time he plainly expressed concerns about discrepancies in their affidavits.

On November 4, 2010, Senior Resident Superior Court Judge Carl Fox entered a protective order concerning materials produced in discovery in the state court lawsuit. The protective order, among other things, prohibited dissemination of the materials at issue and required that the parties notify one another if either received a subpoena.

On February 17, 2011, the government served the Youngs' counsel with a federal grand jury subpoena seeking, among other things, various items produced in the civil suit. The Youngs eventually complied with the subpoena and produced responsive materials to the government, but they did not provide the notice to Ms. Hunter required under the protective order.

On July 20, 2011, Ms. Hunter filed a motion alleging that the Youngs had violated the protective order by providing the civil suit documents to the government without notifying her of the subpoena. On September 12, 2011, Superior Court Judge Michael Morgan found probable cause to believe that the Youngs were in criminal contempt for failing to comply with the protective order's notice requirement. The contempt charge remains pending.

The dispute of the moment is fairly narrow. The government does not contend that the defense should not be able to cross-examine the Youngs about whether they made any untruthful statements in state court proceedings or about whether they failed to comply with court orders. Mr. Edwards does not contend that he is entitled to offer extrinsic evidence of the contempt matters or of Judge Jones' statements. The question is the scope of the cross-examination.

## II. DISCUSSION

The proponent bears the burden of showing that evidence is admissible. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987). In proposing to cross-examine the Youngs about the contempt proceedings in state court, Mr. Edwards bears the burden of showing the admissibility of the evidence. He asserts the evidence is admissible under Federal Rule of Evidence 608(b) because it speaks to the character of the Youngs for truthfulness.

### A. Legal Standard

The Confrontation Clause of the Sixth Amendment entitles a defendant to cross-examine government witnesses on matters bearing on truthfulness. *Crawford v. Washington*, 541 U.S. 36,

59–61 (2004); *United States v. Turner*, 198 F.3d 425, 429 (4th Cir. 1999). A defendant has the right "to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis v. Alaska*, 415 U.S. 308, 318 (1974); *accord Turner*, 198 F.3d at 429. Nevertheless, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *accord United States v. Smith*, 441 F.3d 254, 266 (4th Cir. 2006).

Courts determine the admissibility of witness character evidence in their discretion guided by Federal Rule of Evidence 608. Fed. R. Evid. 608; *see United States v. Piche*, 981 F.2d 706, 714 (4th Cir. 1992) ("[Rule 608(b)] was specifically worded to emphasize the discretionary power of the trial judge to admit or exclude evidence under it."). Rule 608(b) provides, in relevant part, that:

> [e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness.

Fed. R. Evid. 608(b); *accord United States v. D'Anjou*, 16 F.3d 604, 609 (4th Cir. 1994). Because "[a] witness' credibility may not be impeached by extrinsic evidence of specific instances of conduct[,] . . . [a] cross-examiner may inquire into specific incidents of conduct, but does so at the peril of not being able to rebut the witness' denials." *United States v. Bynum*, 3 F.3d 769, 772 (4th Cir. 1993). The purpose of Rule 608(b) "is to prohibit things from getting too far afield—to prevent the proverbial trial within a trial." *Id.*

"Rule 608 authorizes inquiry only into instances of misconduct that are clearly probative of truthfulness or untruthfulness, such as perjury, fraud, swindling, forgery, bribery, and

4

embezzlement." *United States v. Leake*, 642 F.2d 715, 718 (4th Cir. 1981) (internal quotation marks omitted). Courts generally have found that the mere fact of disobedience of a court order does not necessarily bear on a witness' character for truthfulness, *e.g.*, *United States v. Montrose*, 15 F. App'x 89, 90 (4th Cir. 2001); *United States v. Brown*, 606 F. Supp. 2d 306, 315–16 (E.D.N.Y. 2009); *United States v. Morrow*, No. 04-355 (CKK), 2005 U.S. Dist. LEXIS 41035, at *9–12 (D.D.C. June 2, 2005); *United States v. Colella*, No. 88-538, 1989 U.S. Dist. LEXIS 9160, at *9–10 (E.D. Pa. Aug. 1, 1989), *unless* the witness had promised, under oath, to obey the order. *United States v. Martinez*, No. 06 CR 591 (RPP), 2007 U.S. Dist. LEXIS 73041, at *2 (S.D.N.Y. Oct. 1, 2007); *see Brown*, 606 F. Supp. 2d at 316; *Morrow*, 2005 U.S. Dist. LEXIS 41035, at *13.

However, courts allow cross-examination about specific instances of conduct that are not necessarily probative of truthfulness, viewed in isolation, if the evidence viewed in context is probative of a witness' character for truthfulness. *See, e.g.*, *United States v. Whitehead*, 618 F.2d 523, 529 (4th Cir. 1980) (permitting cross-examination of the defendant about the suspension of his law license, as well as the facts underlying the suspension order showing misrepresentation and deceit); 28 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6118 (3d ed. 1993) ("The courts also have concluded that evidence of specific instances is probative of truthfulness or untruthfulness where the conduct consisted of acts that, viewed in isolation, do not necessarily impugn veracity but in context did so."). Courts also permit cross-examination about prior bad conduct that establishes a pattern of behavior that may be probative of truthfulness. *E.g.*, *Leake*, 642 F.2d at 719 (holding that a witness' indictment for obtaining money under false pretenses, an arrest warrant for defrauding an innkeeper, and default

judgments seeking repayments of loans established "a pattern of fraudulent activity that, if revealed, would have placed [his] credibility in question").

Under Rule 608(b), "the proper factors to be employed in measuring the scope of cross-examination [are] the importance of the testimony to the government's case, the relevance of the conduct to the witness's truthfulness, and the danger of prejudice, confusion, or delay." *Leake*, 642 F.2d at 719. The more important the witness is to the government's case, the more important it is to allow thorough cross-examination. *See id.* However, even if evidence is relevant and admissible, the court retains the discretion to limit cross-examination if it would be unduly confusing or cause delay. *See* Fed. R. Evid. 608 Advisory Committee's Note (clarifying that "the overriding protection of Rule 403" serves as a safeguard against abuse of Rule 608).

In this case, Mr. Young will be a key witness against Mr. Edwards. His credibility will be at issue, and evidence about his character for truthfulness is highly relevant.[1] Thus, the Rule 608(b) issue is narrowed to whether questions about these matters are relevant to Mr. Young's character for truthfulness and, if they are, whether there is an undue danger of unfair prejudice, confusion, or delay if the cross-examination is allowed.

### B.     Underlying Conduct

As noted above, the government does not seek to prohibit cross-examination about the Youngs' underlying conduct that led up to the two contempt findings and to the judicial statements about their credibility. To the contrary, at the hearing on this Motion, the government conceded that Rule 608(b) does not preclude questions about whether Mr. Young lied under oath in the state court proceedings because such questions have obvious relevance to his character for truthfulness. The government also has not objected to questions about other underlying facts,

---

[1] To the extent that Ms. Young also testifies against Mr. Edwards, the following rulings also apply to the defense's cross-examination of her.

such as whether the Youngs were sued for conversion of property in state court, were served with a temporary restraining order, were aware of that order's directive to turn over the property in question to the deputy sheriff, and, nonetheless, willfully violated that order for an extended period of time. Even if the government had objected to questions about these matters, cross-examination is permissible under Rule 608(b). This evidence, especially taken together and with other impeachment evidence not set forth here that tends to show bias and a financial motive, provides context and establishes a pattern of behavior probative to his character for truthfulness. *See Leake*, 642 F.2d at 719; *Whitehead*, 618 F.2d at 529. Moreover, these actions give rise to an inference that someone who would disregard a court order in these particular ways would also not take the oath or affirmation to tell the truth seriously.

Rule 608(b) thus permits, in the Court's discretion, cross-examination about the underlying facts leading up to the contempt findings and judicial statements at issue. While there is clear potential for delay and waste of time if questioning about these facts is unduly extended,[2] that can be handled by limiting the cross-examination rather than by prohibiting it.

### C. Judicial Findings and Statements

The analysis is somewhat different for the fact of the civil contempt finding, the fact of the probable cause finding, and the fact of the judge's statements.[3]

---

[2] The state court proceedings were complicated: it took almost two pages of typescript *supra* to summarize the bare bones. Even if the defense only asks a few basic questions about the conduct and does not ask for context, Mr. Young may well have explanations for his conduct on redirect.

[3] It is not clear that Rule 608(b) even applies to the analysis of whether cross-examination is allowed concerning the judicial findings and statements. *See United States v. Dawson*, 434 F.3d 956, 958 (7th Cir. 2006). Those findings and statements are not "specific instances of a witness's conduct," which is what Rule 608(b) addresses. Rather they are acts or statements by a third party about specific instances of a witness' conduct. Nonetheless, that is how courts have typically analyzed the issue. *United States v. Mejia*, 597 F.3d 1329, 1338–39 (D.C. Cir. 2010); *see Leake*, 642 F.2d at 718–19 (analyzing prohibition on cross-examination concerning whether defendant had been indicted for a crime under Rule 608(b)). The Court will therefore use the

7

### 1. Contempt Findings

The government accurately points out that the "mere" fact that a person has been found in contempt typically does not say much about the person's character for truthfulness. *E.g.*, *Brown*, 606 F. Supp. 2d at 315–16; *Colella*, 1989 U.S. Dist. LEXIS 9160, at *9–10; *see Montrose*, 15 F. App'x at 90; *Morrow*, 2005 U.S. Dist. LEXIS 41035, at *9–12. Yet the particular underlying facts leading to these specific contempt findings are relevant to truthfulness, as discussed *supra*, and if Mr. Young should deny any of those facts, it seems entirely appropriate to test his testimony by inquiring about findings made by the state court on the very facts at issue. On the other hand, if Mr. Young admits the facts, then one or two questions about the findings by the courts is relevant to show the serious nature of the acts and causes no unfair prejudice to the government.

The Court will deny the Motion to the extent it seeks to preclude the defense from cross-examining Mr. Young about the fact of the civil contempt finding or the fact of the finding of probable cause. *See Leake*, 642 F.2d at 719. Because of Mr. Young's central role in this prosecution and because the contempt findings in context tend to support the defense theory that he is testifying out of bias and to obtain financial benefit, those findings are an appropriate subject for limited cross-examination.

The Court is sensitive to the possibility of spending too much time on facts which are only relevant because they bear on truthfulness and otherwise have nothing to do with the charged offenses. Counsel would be well-advised to ask questions about these things in specific and efficient fashion, without repetition or undue detail. The Court will entertain Rule 403 objections at any appropriate time and may act *sua sponte* if things go too far afield.

---

Rule 608(b) framework, but finds that the analysis under Federal Rule of Evidence 403 would be substantially the same and that the result would be the same.

## 2. Judicial Statements

As to the facts of the judicial statements, the case law in this area is highly fact-specific. *Compare Mejia*, 597 F.3d at 1338–39 (noting that the district court permitted the cross-examination of a government witness about another court's finding that he was "not entirely truthful" in an unrelated case); *Dawson*, 434 F.3d at 958 (stating that "there is nothing to suggest that the [cross-examination] could not have extended to asking the witness whether a judge . . . had ever found him not to be a credible witness"); *United States v. Terry*, 702 F.2d 299, 316 (2d Cir. 1983) (holding that the prosecutor properly cross-examined the defense expert under Rule 608(b) about another judge's finding that the expert had "guessed under oath"); *and Walker v. Firestone Tire & Rubber Co.*, 412 F.2d 60, 63–64 (2d Cir. 1969) (holding that the trial court erred in prohibiting cross-examination of a witness about another court's finding that he "intentionally gave false testimony"); *with United States v. Cruz*, 894 F.2d 41, 43 (2d Cir. 1990) (affirming the district court's refusal to permit cross-examination of a government witness concerning an earlier judicial finding that he lacked credibility because the subject matter of the former testimony was unrelated to any issues in the current case).

While these cases suggest that cross-examination may be appropriate as to findings made by a court or jury concerning perjury or credibility, it does not appear that Judge Jones' statements can be called "findings."[4] Unlike the findings of contempt and probable cause, which are contained in written rulings, Judge Jones' statements were made in open court during colloquy with counsel and were not "findings" in the sense that word is usually used. Many are

---

[4] The defense in their brief quoted several statements Judge Jones made about the Youngs' credibility at various hearings. The government attached an excerpt from a transcript containing some of those statements (Doc. 192-2 at 5), but neither side provided all the transcripts. Thus, the Court has not been able to evaluate their context.

somewhat ambiguous,[5] and all of the statements would require a good bit of context in order to be fairly presented.

All in all, while it is clear from the number and nature of his comments that Judge Jones did not believe the Youngs were completely truthful in their affidavits, it would nonetheless be difficult to provide the jury with a straightforward account of what Judge Jones actually "found." And, of course, opinion testimony on credibility is generally not admissible. *See* Fed. R. Evid. 608(a); *United States v. Caro*, 597 F.3d 608, 633–34 (4th Cir. 2010). This is the kind of dispute that could lead to a significant amount of time being spent on exactly what the Youngs said in their affidavits and whether it was those particular things the judge was referencing when he expressed his concerns.

The Court is not persuaded that cross-examination about Judge Jones' statements is appropriate under the circumstances. While possibly relevant, it is questionable how helpful these particular statements would be to the jury's credibility evaluation; they are more like opinions rather than findings, and the possibility for delay and confusion is high.

Mr. Edwards also contends that the evidence is admissible to impeach the Youngs by demonstrating their bias against him. Although courts recognize impeachment-by-bias as an independent means of introducing evidence, *e.g.*, *United States v. Abel*, 469 U.S. 45, 49–52 (1984); *United States v. Greenwood*, 796 F.2d 49, 54 (4th Cir. 1986), the Court is not persuaded

---

[5] In the Opposition to the Motion in Limine, the defense reports that Judge Jones said that certain aspects of the Youngs' affidavits were "troubling," that "perhaps things were withheld" in earlier affidavits, and that there were "discrepancies" in the affidavits. (Doc. 204 at 4, 5, 6; *accord* Doc. 192-2 at 5.) The defense reports that at a March 9, 2010 hearing, Judge Jones said that "[the Youngs] didn't tell me the truth before in this court about some other things." (Doc. 204 at 5.) This one statement is more explicit, but, as noted in footnote 4, the Court does not know what "other things" Judge Jones was referencing.

that Judge Jones' statements are directly relevant to bias. Even if they were, Rule 403 concerns would outweigh that limited probative value.

Should anything in Mr. Young's direct testimony change the circumstances, *cf. Brown*, 606 F. Supp. 2d at 317 (allowing cross-examination of conviction for criminal contempt to overcome unfair inference that defendant was "pristine"), the defense can bring that to the Court's attention at the appropriate time.

It is **ORDERED** that the government's Motion in Limine to Preclude Reference to Any Contempt Proceedings in State Court (Doc. 192) is **GRANTED** in part to the extent it seeks to preclude Mr. Edwards from offering extrinsic evidence about state court decisions holding Andrew and Cheri Young in civil contempt and finding probable cause that they are in criminal contempt, and about statements made by the presiding state court judge concerning credibility.

It is **FURTHER ORDERED** that the Motion in Limine is **DENIED** to the extent it seeks to preclude Mr. Edwards from cross-examining Andrew Young and Cheri Young about state court decisions holding them in civil contempt and finding probable cause that they are in criminal contempt, without prejudice to Rule 403 objections should they become appropriate, and **GRANTED** to the extent it seeks to preclude Mr. Edwards from cross-examining Andrew Young and Cheri Young about statements made by the presiding state court judge concerning credibility.

This the 3rd day of April, 2012.

_____
UNITED STATES DISTRICT JUDGE