IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:11-CR-161 |
| | ) | |
| JOHNNY REID EDWARDS | ) | |

## JOHN EDWARDS' TRIAL BRIEF

Pursuant to the Court's March 2, 2012 Scheduling Order, Mr. Edwards submits this Trial Brief:

## INTRODUCTION

In various pre-trial motions, the parties have briefed numerous substantive and evidentiary issues that are likely to arise at trial, but Mr. Edwards will outline a series of legal, procedural, and evidentiary issues that remain outstanding and that he respectfully requests the Court to keep in mind while evaluating the government's evidence and whether the government can sustain its burden of proof.

Overall, Mr. Edwards will contend at trial that the monies paid by Fred Baron and Rachel Mellon to Andrew Young were not contributions within the meaning of the Federal Election Campaign Act ("FECA"). Specifically, Mr. Edwards will argue the monies were not direct contributions to the John Edwards for President Campaign, the monies were not coordinated expenditures made for a campaign-related purpose, and the monies do not fall within the personal use expense regulation. The evidence will demonstrate the expenses involved were not to satisfy debts that Mr. Edwards was legally

obligated to pay irrespective of the campaign; that Mr. Baron and Ms. Mellon would have given the money regardless of the campaign; and that Mr. Baron and Ms. Mellon made the payments knowing that the monies would not be used for campaign purposes.

The evidence will reveal that the government's case requires the jury to accept a novel interpretation of the FECA, one that has never been the basis of criminal or even civil liability in the statute's history. The government itself has admitted as much in open court: "[the case] deals with the application of the federal campaign finance laws and how they are to be applied <u>going forward</u> . . . ." <u>Hunter v. Young</u>, 9/13/2011 Tr. at 5–6 (emphasis added).[1] Furthermore, Mr. Edwards contends that no matter what set of facts the government seeks to prove, he could not have viewed his actions as unlawful under FECA and thus he did not have the required specific intent to knowingly violate the law.

## I. OUTSTANDING MOTIONS TO DISMISS

### A. Motion To Dismiss The FECA Counts

On October 27, 2011 the Court denied Mr. Edwards' motion to dismiss for failure to state a crime without prejudice. In considering this motion, the Court stated that

---

[1] The government admitted this in open court during the state civil proceedings in <u>Hunter v. Young</u>. This statement constitutes an admission by a party-opponent and is admissible under Rule 801(d)(2). <u>See also</u> <u>United States v. Yildiz</u>, 355 F.3d 80, 82 (2d Cir. 2004) ("[t]his Court has recognized that the government's attorneys can bind the government with their in-court statements"); <u>United States v. Warren</u>, 42 F.3d 647,655 (D.C. Cir. 1994).

Mr. Edwards raised "a number of issues which are quite thorny" that are better addressed "during the trial when the factual record is more developed." (10/27/2011 Tr. at 4.)

At trial, Mr. Edwards will contend the monies at issue were not spent "for the purpose of influencing an election," nor were they "unambiguously related to the campaign." (See Dkt. 30 at 14-31 (describing this standard); see also 10/27/11 Tr. at 4 ("I have some concerns about [the government's] arguments on subjective intent of the donor, [and] their interpretation of the phrase 'for the purpose of influencing an election'").) The payments made by Ms. Mellon and Mr. Baron therefore neither constitute contributions nor expenditures under the Act, and the government's mere allegation that the funds were coordinated by Mr. Edwards through Andrew Young is insufficient to transform personal payments into campaign-related contributions or expenditures. (Dkt. 30 at 32-34.) Likewise, there is no doubt that the payments by Ms. Mellon and Mr. Baron covered Ms. Hunter's personal expenses (and, much more so, the Youngs' personal expenses, such as construction of their dream home)—not Mr. Edwards' expenses. As such, these cannot constitute "personal use" expenses of Mr. Edwards that would have existed irrespective of the campaign, and the Indictment fails to allege otherwise. Moreover, because "personal use" expenses are those expenses that a candidate is legally obligated to pay regardless of the campaign, and because Mr. Edwards was not legally obligated to support Ms. Hunter in any way prior to the birth of their child in February of 2008 (after he withdrew from the presidential race), the monies could not fall within the personal use rule. (Dkt. 30 at 34-39.)

### B. Motion To Dismiss Conspiracy Count

The Court also left open Mr. Edwards' motion to dismiss Count 1 of the Indictment, which alleges that Mr. Edwards participated in a conspiracy. (10/27/11 Tr. at 9.) Mr. Edwards will contend that Count 1 of the Indictment is fatally flawed because it does not allege that all coconspirators joined in the same conspiracy. Count 1 also fails to allege that Mr. Edwards had the same criminal objective as his two unindicted coconspirators. Specifically, while the Indictment alleges that Mr. Edwards conspired to commit the crime of <u>accepting</u> illegal campaign contributions, it alleges that Ms. Mellon and Mr. Baron made illegal campaign contributions. (Indict. ¶¶22–24, 30–31.) Because the alleged coconspirators did not share the same object of the conspiracy to commit the same crime, Count 1 of the Indictment is defective as a matter of law.

### C. Motion To Dismiss Aiding And Abetting Claims

The Court also gave credence to Mr. Edwards' argument that he could not have aided and abetted the giving of illegal campaign contributions, stating "I kind of was with the defense on this one." (10/27/11 Tr. at 10.) Counts 2-5 of the Indictment allege that Mr. Edwards "knowingly and willfully accepted and received contributions . . . in excess of the limits of the Election Act" from Ms. Mellon and Mr. Baron. (Indict. at ¶¶35, 37, 39, 41.) Because it is only a crime for a candidate to accept illegal contributions, and because the Indictment plainly does not allege that Mr. Edwards assisted another candidate in accepting the contributions, the government's charge that Mr. Edwards aided and abetted a crime by accepting the monies must fail. In evaluating this argument, the

Court stated "[i]t's hard to understand how you aid and abet yourself, and the indictment doesn't allege that anyone else accepted or received contributions . . . [the Court] will leave for another day what happens at the close of the evidence or in jury instructions." (10/27/11 Tr. at 11.)

D. **Motion To Dismiss Claims Based On Post-Campaign Gifts**

With respect to whether the monies involved were made after the campaign ended, the Court expressed some skepticism about the government's case, saying "it's a little hard for me to understand how a contribution received after the campaign was over could possibly be made for the purposes of influencing an election." (10/27/11 Tr. at 4.) Ultimately, the Court ruled the matter would best be resolved at trial, saying "those are things to be dealt with down the road with actual evidence, not the bare facts set forth or alleged in the indictment." (Id.) The Court's instinct was correct: a campaign contribution is not accepted until it is deposited and, for the purposes of criminal liability, acceptance marks the crime. United States v. Chestnut, 533 F.2d 40, 48 (2d Cir. 1972); United States v. Hankin, 607 F.2d 611, 619–20 (3rd Cir. 1979) (Garth, J., dissenting). Thus, any monies deposited after the campaign ended on January 30, 2008 may not form the basis of criminal liability.

E. **Motion To Dismiss False Statement Charge**

Count 6 of the Indictment alleges that Mr. Edwards "caused the John Edwards for President Committee to create and submit periodic campaign finance reports to the FEC which purported to disclose all contributions of more than $200 in an election cycle,

5

when, in truth and in fact, as EDWARDS well knew, those reports failed to disclose hundreds of thousands of dollars in contributions from [Mellon] and [Baron], and did aid and abet said offense." (Indict. at ¶43.) In making this charge, the government falls victim to several faulty assumptions. First, the government assumes that Mr. Edwards knew about the monies; the evidence will prove otherwise. Second, even assuming that Mr. Edwards did know about the monies, the government assumes that the monies could somehow be reported as expenditures in the disclosures that Mr. Edwards' campaign provided to the FEC. But the evidence will show there is <u>no</u> way to report such monies because the monies were never received by the campaign and because personal use expenses are not reportable campaign-related events. Specifically, the evidence will show that only qualified campaign expenses are reported and that there is no purpose code on any FEC filing form that would allow the monies to be reported. Accordingly, Count 6 of the Indictment is based on faulty assumptions of law and fact, and it should be dismissed.

## II. <u>SCOPE OF EXPERT TESTIMONY</u>

In denying the government's motion in limine on December 16, 2011, the Court cautioned that "the government should be prepared for the possibility that I will let some of this testimony in," although the Court could not delineate the scope of what would be permitted in a pre-trial context. (12/16/11 at 83.) The Court stated the scope of what would be permitted "will just have to be dealt with if and when the Defendant decides to offer that [expert] testimony." (12/16/2011 Tr. at 82-83.) As set forth in more detail in

his Response (Dkt. 112) to the government's motion in limine, Mr. Edwards will offer the testimony of Mr. Thomas and Mr. Lenhard for several limited purposes that comply with Federal Rules of Evidence and the case law of this Circuit. Specifically, the experts will offer background information about the structure and application of FECA, and offer their learned understandings of certain terms contained within that Act. They will testify about how the Act's provisions have been applied to circumstances of alleged contributions and expenditures analogous to the ones charged in this case. They will respond to hypothetical questions that relate to the application of these terms. Finally, they will corroborate Mr. Edwards' defense of good faith compliance with the law by opining on what a reasonable person in Mr. Edwards' position might have known about the prevailing interpretation of campaign finance laws, including FECA, in 2007 and 2008. This testimony will be especially important in this case, not only because the government must prove knowing and willful violations of the federal election laws, but because the government's theory of prosecution is unprecedented.

### III. JURY INSTRUCTIONS

The Court has discussed with the parties a set of preliminary and final instructions and has indicated that there will be the normal charging conference once the trial has begun. (See 12/16/2011 Tr. at 85.) Mr. Edwards has provided comments on both sets of possible sets of instructions. With respect to the preliminary instructions, in whichever set of instructions the Court ultimately decides to use, Mr. Edwards requests the Court quote as closely as possible the actual statutes [2 U.S.C. § 431(8)(A)(i) (defining

7

"contribution" as including, *inter alia*, "any gift . . . or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office"); 2 U.S.C. § 431(9)(A)(i) (defining "expenditure" as including, *inter alia*, "any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made by any person for the purpose of influencing any election for Federal office"); 2 U.S.C. §437g(d)(1)(A) ("knowingly and willfully")] and the case law clarifying that FECA can "regulate only those actions that are 'unambiguously related to the campaign of a particular … candidate.'" North Carolina Right to Life, Inc. v. Leake, 525 F.3d 274, 281 (4th Cir. 2008) (quoting Buckley v. Valeo, 424 U.S. 1, 80 (1976)); see also Orloski v. FEC, 795 F.2d 156, 162 (D.C. Cir. 1986) ("contribution" is determined under an objective test, rather then the subjective intent of the donor).

## IV. VENUE

On October 27, 2011 the Court addressed venue, stating "the question of where these crimes occurred, if they did occur, if what occurred was a crime, all those things to be determined later . . . it may be we'll have to have the jury answer those questions. . . ." (10/27/2011 Tr. at 10.) Counts 1-5 of the Indictment are based on monies that came from Ms. Mellon and Mr. Baron. The Indictment states that Mr. Baron's monies were used for hotel and/or house rentals in California and Florida and for flights between California and Colorado. (Indict. at ¶29.) The only alleged contribution by Mr. Baron having any connection with the state of North Carolina is a flight to Florida from Raleigh, North Carolina. (Id.) But Raleigh is in the Eastern, and not Middle, District of North Carolina.

8

Accordingly, Mr. Edwards contends that venue is not appropriate in this District as to any of the alleged contributions made by Mr. Baron in Counts 4 and 5 and those allegations must also be dismissed from Count I of the Indictment.  See United States v. Jefferson, No. 09-5130, 2012 U.S. App. LEXIS 6160, at *90–91, *98 (4th Cir. March 26, 2012) (noting that the essential conduct constituting the offense must take place in the venue in which the court sits and holding that mere "devisal and participation in a scheme" does not constitute such conduct).

V.     **MOTIONS IN LIMINE**

The parties already have made several agreements as to certain types of evidence that will be excluded from the jury's consideration.  The parties have advised the Court of the subjects of these agreements.[2]

In addition, Mr. Edwards filed a motion in limine to seek a pre-trial evidentiary hearing on the admissibility of alleged co-conspirator statements.  Instead, the Court heard argument on that motion and determined that particular statements will be evaluated when they are offered.  With respect to co-conspirator statements, Mr. Edwards contends the government cannot prove, by a preponderance of the evidence, that he and others engaged in "knowing and willful participation" in an agreement they knew to be in violation of the law.  See United States v. Meredith, 824 F.2d 1418, 1428 (4th Cir. 1987).

---

[2]    Mr. Edwards also has sought a Rea/Parrott/Scrushy Type Inquiry (Dkts. 188, 202), but the Court has declined to rule on this issue before trial (Dkt. 194 at 3).

With respect to the other bases the government raises for admissibility -- not for the truth, state of mind, joint venture -- Mr. Edwards remains concerned that the government not be able to gain admissibility of out of court statements that a jury will hear for the truth through a means less rigorous than the protections against attributed "admissions."

On April 3, 2012 the Court ruled on the government's motion in limine, which sought to preclude reference to any contempt proceedings in <u>Hunter v. Young</u>, and Mr. Edwards will seek admission only of that covered in the Order.[3] (Dkt. 212.)

---

[3] The Court also left open the possibility that Mr. Edwards may reference the state court's statements to cross-examine Mr. and Mrs. Young "[s]hould anything in [their] direct testimony" open this door. (<u>Dkt. 212</u> at 11.) Should the statements made by Mr. and Mrs. Young during their direct testimony prompt Mr. Edwards to seek admission of Judge Jones' statements, Mr. Edwards will bring this to the Court's attention at the appropriate time.

This the 11th day of April, 2012.

Respectfully submitted,

/s/ Abbe David Lowell, *pro hac vice*
adlowell@chadbourne.com
Christopher D. Man
cman@chadbourne.com
Michael Pusateri
mpusateri@chadbourne.com


CHADBOURNE & PARKE LLP
1200 New Hampshire Ave., NW
Washington, DC 20036
Telephone: 202-974-5600
Facsimile: 202-974-5602

/s/ Alan W. Duncan
N.C. State Bar No. 8736
alan.duncan@smithmoorelaw.com

/s/ Allison O. Van Laningham
N.C. State Bar No. 23430
allison.vanlaningham@smithmoorelaw.com


SMITH MOORE LEATHERWOOD LLP
Post Office Box 21927
Greensboro, NC 27420
Telephone: (336) 378-5200
Facsimile: (336) 378-5400

*Attorneys for Defendant Johnny Reid Edwards*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

> David V. Harbach, II (david.harbach@usdoj.gov)
> Jeffrey E. Tsai (jeffrey.tsai@usdoj.gov)
> Robert J. Higdon, Jr. (bobby.higdon@usdoj.gov)
> Brian Scott Meyers (brian.s.meyers@usdoj.gov)
> *United States Department of Justice*

This the 11th day of April, 2012.

>    /s/ Allison O. Van Laningham
>    N.C. State Bar No. 23430
>    Attorney for Defendant Johnny Reid Edwards
>    SMITH MOORE LEATHERWOOD LLP
>    Post Office Box 21927
>    Greensboro, NC  27420
>    Telephone: (336) 378-5200
>    Facsimile: (336) 378-5400
>    E-mail:  allison.vanlaningham@smithmoorelaw.com