IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:11-CR-161 |
| | ) | |
| JOHNNY REID EDWARDS | ) | |

**JOHN EDWARDS' OBJECTIONS TO THE COURT'S
PROPOSED JURY INSTRUCTIONS AND JURY FORM**

**INTRODUCTION**

Mr. Edwards recognizes that the defense and the government submitted proposed jury instructions well in advance of the charge conference, along with briefing in support of those instructions, and that the Court has worked hard to draft the charges to the jury. However, this case presents novel issues, and the defense is concerned that the current instructions create concerns about the application of the law to the evidence and to the charges in the indictment. Furthermore, as the Court knows, the Fourth Circuit has particularly strict requirements with respect to the preservation of objections to jury instructions. See, e.g., United States v. Nicolaou, 180 F.3d 565 (4th Cir. 1999). In light of these requirements, and to preserve his objections for the record, Mr. Edwards respectfully submits these objections to the Court's proposed final jury instructions circulated on 16 May 2012.

Mr. Edwards respectfully asks that this Court give his proposed jury instructions (Dkt. 279) in place of these instructions, and he incorporates by reference the objections

to the government's proposed instructions (Dkt. 282), to the extent the Court has adopted language from those instructions.

## OBJECTIONS TO INSTRUCTIONS

### REASONABLE DOUBT

Mr. Edwards requests that his Proposed Jury Instruction No. 1 (Dkt. 279 at 4) be given, in place of the reasonable doubt instruction at page 3. Mr. Edwards also renews his objections to the language of the instruction raised in objecting to a similar instruction proposed by the government. (Dkt. 282 at 3-6 (including the objection that the Due Process Clause requires defining reasonable doubt).)

The current instruction appropriately tells the jury what "reasonable doubt" is not by telling the jury that it is not "beyond all possible doubt," but does not tell the jury what "reasonable doubt" is at a minimum. Mr. Edwards requests that the charge include the following language:

> To warrant the conviction of the defendant, the evidence of guilt must be so conclusive as to exclude every possible hypothesis of his innocence, and if the jury has a reasonable doubt concerning the establishment of any essential element of the offense, they must acquit the accused, and if the evidence is just as consistent with his innocence as with his guilt, the defendant cannot be convicted.

See United States v. Carrier, 344 F.2d 42, 46 (4th Cir. 1965).

### CHARGES

### COUNT 2, 3, 4 & 5

Mr. Edwards requests the Court give his Proposed Jury Instruction Nos. 18-29. (Dkt. 279 at 24-44.) They provide as a separate element: "Third, that Mr. Edwards acted

2

knowingly and willfully." The current instructions do not make clear what Mr. Edwards had to know or what he willfully did. It is unclear whether that refers to element one, becoming a candidate; element two, accepting and receiving a contribution; or both. It also does not clarify what he had to do knowingly and willfully. For example, it is unclear from this instruction whether he merely accepted and received a contribution knowingly and willfully that happened to exceed $25,000, or whether he willfully accepted and received the contribution while knowing that it exceeded $25,000. Mr. Edwards also requests that the other elements of the offense include the "knowingly and willfully" language.

In clarifying the first element, the Court appropriately explains that a candidate for federal office includes a person seeking their party's nomination for the presidency. The government, however, suggested at trial that some of the money was intended to help Mr. Edwards secure the nomination for Vice President or to be nominated as Attorney General. Mr. Edwards requested in his Proposed Instruction No. 24 that the payments made to help a person obtain either of those specific positions is not covered by FECA, and renews that request. In addition, there was evidence that some of the money was not deposited until <u>after</u> Mr. Edwards ended his campaign. Such payments could not have been for the purpose of influencing the election of Mr. Edwards. Mr. Edwards requests his Proposed Jury Instruction No. 23 on this issue. He further requests that the second element include the phrase "beyond a reasonable doubt."

Mr. Edwards requests Proposed Jury Instruction Nos. 18-23 with respect to the definition of contribution.[1] Mr. Edwards renews his objections to the government's Proposed Jury Instruction No. 24, which was substantially adopted. (Dkt. 282 at 15-24.)

Mr. Edwards' proposal identifies for the jury the relevant intent. The current instructions, however, focus on the subjective intent of Ms. Mellon and Mr. Baron.[2] The test is an objective one. Shays v. FEC, 414 F.3d 76, 99 (D.C. Cir. 2005) (noting adoption of an "objective, bright-line test … for 'contribution' in Orloski [v. FEC, 795 F.2d 156, 163 (D.C. Cir. 1986)]").

The current instruction also makes Mr. Edwards' intent irrelevant to which Mr. Edwards objects. If the jury concludes that Ms. Mellon or Mr. Baron intended the payments to influence the election, the jury could find that they were campaign contributions – even if Mr. Edwards did not know or believe that was their intent. The instructions state that the government must "prove that Mr. Edwards accepted and received the contribution," but do not require that Mr. Edwards "knowingly and willfully" accepted what <u>he knew</u> to be campaign contributions. Consequently, the jury could

---

[1] The word "contribution" does not sound particularly complicated – although it is – which may deceive the jury into believing Mr. Edwards would have applied whatever common sense interpretation of the word the jury would ascribe to it.

[2] For example, "evidence about the intent, motivation, and goals of Ms. Mellon" or "Mr. Baron," "whether this money was given by Ms. Mellon [Mr. Baron] for the purpose of influencing the election, "prove that Ms. Mellon [Mr. Baron] had a real purpose or an intended purpose."

4

convict Mr. Edwards if it finds that he "knowingly and willfully" accepted payments -- even for a completely lawful purpose -- so long as the jury concluded the payments actually were campaign contributions based on the <u>donor's intent</u>. This does not comport with the objective test or due process.[3]

Mr. Edwards also objects to the mixed motive instruction (Pages 8, 16-17) for the subjective intent issues identified above and others. Mr. Edwards requests his Proposed Jury Instruction Nos. 18-20 instead. (Dkt. 279 at 24-29.) FECA presupposes that there is a singular purpose, while this instruction says there may be many. The statute says it is only a crime if made "for <u>the</u> purpose…." The Fourth Circuit interprets the phrase "for the purpose of influencing any election" to mean unambiguously related to the campaign of a particular candidate. <u>N.C. Right to Life, Inc. v. Leake</u>, 525 F.3d 274, 281 (4th Cir. 2008). Mr. Edwards requests the jury be instructed in accordance with <u>Leake</u>.

With respect to the terms "accept" and "receive," Mr. Edwards requests his Proposed Jury Instruction No. 22, explaining that a campaign contribution is not received until it is deposited. <u>United States v. Chestnut</u>, 533 F.2d 40, 48 (2d Cir. 1976). Left to its own devices, the jury could determine that the "ordinary" meaning is that a candidate receives a contribution when it is given to him or another, rather than when it is deposited. That would open the door to Mr. Edwards being convicted for receiving

---

[3] The instruction also omits the "knowingly and willfully" language in describing the second element.

payments that were not deposited until <u>after</u> he ended his candidacy, and those payments could not influence the election.

The instructions on Pages 9-10 omit the "knowingly and willfully" language regarding acceptance and receipt. Mr. Edwards also objects to the use of the term "money," rather than "campaign contribution." This tells the jury it can convict Mr. Edwards if he accepts money, without doing so "knowingly or willfully" and without knowing the "money" is a campaign contribution.

The instruction also omits "knowingly" from the phrase "Mr. Edwards willfully caused another person to accept or receive money, gift, or payment on his behalf." It also says "money," rather than "campaign contribution." Moreover, there is no language limiting the "money" to payments made for the purpose of influencing the election. Consequently, the jury could convict Mr. Edwards under this instruction if it believes Mr. Edwards asked Mr. Young to solicit funds from Mr. Baron and Ms. Mellon for purposes that were not related to the election.

Mr. Edwards objects to the instruction regarding agency (e.g., Page 10). There is no explanation as to what Mr. Edwards had to know his agent was doing. Consequently, if the jury concludes that Mr. Edwards knew and wanted Mr. Young to solicit campaign contributions from Ms. Mellon, this instruction suggests that is sufficient to make Mr. Edwards liable for Mr. Young's conduct -- even if Mr. Edwards only knew or wanted Mr. Young to solicit <u>lawful</u> contributions up to the $2,300 level and Mr. Young <u>unlawfully</u>

asked for more. Mr. Edwards requests the agency instruction in his Proposed Jury Instruction Nos. 16-17. (Dkt. 279 at 21-23.)

Mr. Edwards objects to the exclusion of his proposed instruction on "good faith," Proposed Instruction No. 15. See United States v. Crumbliss, 58 Fed. App'x 577, 582 (4th Cir. 2003); United States v. Henry, 136 F.3d 12, 17 n.3 (1st Cir. 1998). Such an instruction is warranted in this case, especially in light of the state of the applicable law during the time period in question.

Mr. Edwards objects to willful blindness instructions. (Pages 11-12.) The Fourth Circuit has emphasized such an instruction "is only proper in rare circumstances," United States v. Ruhe, 191 F.3d 376, 385 (4th Cir. 1999), and "should be given sparingly," United States v. Nicholson, 176 Fed. App'x 386, 393 (4th Cir. 2006). See also United States v. Lightly, 616 F.3d 321, 378 (4th Cir. 2010) (finding error in giving the instruction without a "legitimate basis"). Mr. Edwards has found no case involving alleged violations of FECA in which the jury was instructed on conscious avoidance.[4]

Such an instruction is warranted only when "the evidence supports an inference of deliberate ignorance." Ruhe, 191 F.3d at 384. Evidence must exist from which "the jury could reasonably infer" the defendant sought to remain "deliberately ignorant of the

---

[4] The one FECA case in which the jury was instructed on willful blindness was reversed on other grounds. Therefore, there was no appellate review of the willful blindness charge. United States v. Curran, No. 92-558, 1993 U.S. Dist. LEXIS 7756 (E.D. Pa. Apr. 28, 1993) rev'd on other grounds, 20 F.3d 560 (3d Cir. 1994).

7

illegal nature" of what transpired. Nicholson, 176 Fed. App'x at 394. "This requires more than mere negligence in not obtaining knowledge." United States v. Diaz-Calderon, 216 Fed. App'x 331, 342 (4th Cir. 2007) (Michael, J., concurring and dissenting in part). "[M]ere suspicion … is insufficient to establish knowledge." United States v. Hussein, 1993 WL 33816, at * 2 (7th Cir. 1993).

No evidentiary predicate for giving the instruction exists. There has been no evidence at trial warranting such an ostrich instruction because there has been no evidence that Mr. Edwards was aware of a "high probability" that what was occurring violated the federal election laws and that he consciously chose to remain ignorant of the applicability of the election laws. There is no evidence whatsoever to suggest that he was trying to avoid knowing what was occurring because he believed it would be illegal. In the filter of using such an instruction "sparingly" is the evidence of his actions being directed to Mrs. Edwards and not wanting to cause any more confrontations with her. The only evidence of any conversations about the facts and law that matter – whether soliciting funds could violate the law – is not that he avoided it but that he actually consulted with people about it. A jury might be able to conclude he made that up, but even then, he is not "avoiding" the issue, he would have been lying about it.

The government's contentions to the contrary rest on speculation. Speculation is insufficient to warrant a conviction that requires factual findings be made beyond a reasonable doubt. See, e.g., United States v. Hickman, 626 F.3d 756, 769 (4th Cir. 2010) ("Unbridled speculation is an impermissible basis for conviction beyond a reasonable

doubt."); United States v. Morillo, 158 F.3d 18, 22 (1st Cir. 1998) (convictions must be reversed when theories of guilt or innocence are "equal or nearly equal").

Furthermore, the jury is unlikely to appreciate the distinction between using conscious avoidance to find knowledge but not willfulness. Mr. Edwards requests the following additional language: "'Willfulness' requires the government to prove beyond a reasonable doubt not only that Mr. Edwards knew the conduct was unlawful, but also that he purposefully intended to commit an act that would violate the election laws." See United States v. Ferrarani, 219 F.3d 145, 156 (2d Cir. 2000) (finding such clarifying language helpful).

With respect to the conspiracy count, it is "well established … that a conscious avoidance theory may not be used to support a finding that the defendant intended to join or participate in the conspiracy." United States v. Tropeano, 252 F.3d 653, 660 (2d Cir. 2001); see United States v. Hale, 1992 WL 163600, at *4 (4th Cir. 1992) ("[C]onscious avoidance may not be used to establish knowing participation in the conspiracy."). Mr. Edwards requests the jury be instructed on this issue.

Even if a willful blindness instruction was warranted on the record – and it is not – confusion could occur because there is clearly "avoidance" about some things (e.g., affair related facts), but not necessarily about the law or campaign rules. Accordingly, Mr. Edwards requests the following additional language:

> The government argues that Mr. Edwards deliberately closed his eyes to what would otherwise by obvious to him based on the testimony of [Person A] that [X, Y & Z occurred]. Remember, the issue is not whether he was avoiding facts or circumstances concerning how to deal with Mrs. Edwards

9

or the non-campaign aspects of his extra-marital affair. The government must prove beyond reasonable doubt that he was avoiding knowledge of how his conduct would violate the law. In addition, even then, you must find beyond a reasonable doubt that the defendant acted with a conscious purpose to avoid learning the truth and not because he was merely negligent, foolish, or mistaken then the element that the defendant acted "knowingly" may be satisfied.

Mr. Edwards requests that "knowingly and willfully" be added before "accepted or received," and change "willfully caused" to "knowingly and willfully caused."

It is not the law that "the <u>only thing</u> that has to happen in 2008 is the acceptance or receipt of a contribution," (Page 14). All of the other elements must be present. For example, in 2008, Mr. Edwards must "knowingly and willfully" receive the campaign contribution and venue must exist in this district.

In Count 3, the jury is instructed that it must find the contribution was "accepted or received while Mr. Edwards was a candidate for the presidency, not afterwards." This language should be included in all of the counts, as it is for Count 5 as well. (Page 14.)

Count 4 expands on the prior instructions by giving a new definition of contribution to which Mr. Edwards objects. The instruction repeats the prior definition of contribution (challenged above), but then states, "[t]he definition of contribution is, however, broader than that." (Page 16.) It emphasizes the term's breadth, but does not balance that breadth by showing the limitations on that breadth, such as Mr. Edwards' Proposed Jury Instruction Nos. 18-20 would. Mr. Edwards requests his Proposed Instructions be given. Mr. Edwards also requests an explanation of the First Amendment limitations on that breadth.

10

The instruction uses the term "agent" in the context of coordinated expenditures (Page 17-18), but describes agency in its generic sense earlier in the instructions. In the context of coordinated expenditures, the term "agent" is defined differently, as a term of art. The definitions are different, but they are the same on Page 18. Mr. Edwards request omission of the "agent" language, or a definition of the term as it is used in the election laws. <u>See</u> Fed. Election Comm'n, <u>Coordinated Communications and Independent Expenditures Brochure</u> 2 (updated February 2011) available at http://www.fec.gov/pages/brochures/ie_brochure.pdf ("To be an 'agent' of a candidate, candidate's committee or political party committee for the purposes of determining whether a communication is coordinated, a person must have actual authorization, either express or implied, from a specific principal to engage in specific activities, and then engage in those activities on behalf of that specific principal.").

The remainder of the instruction addressing the meaning of "for the purpose of influencing the election," the mixed motive issues, and conscious avoidance are addressed above.

The last paragraph on Page 18 does not comport with FECA. Under campaign law, it is unlawful to convert campaign contributions to "personal use." <u>See</u> 2 U.S.C. § 439a(b)(1). Campaign funds are converted to "personal use" if they are "used to fulfill any commitment, obligation, or expense of a person that would exist irrespective of the candidate's election campaign or individual's duties as a holder of Federal office," such as the payment of a home mortgage, utilities, and vacations. 2 U.S.C. § 439a(b)(2). What

11

qualifies as a "personal expense" is a defined term. Mr. Edwards requests that it be defined in that manner for the jury. FEC Regulation 11 C.F.R. § 113.2(6) treats payment by a third party to a candidate for a "personal use . . . unless the payment would have been made irrespective of the candidacy" as a "contribution" subject to contribution limits and reporting. "Personal use," in turn, is defined in 11 C.F.R. § 113.1(g) as "any use of funds in a campaign account . . . to fulfill a commitment, obligation or expense of any person that would exist irrespective of the candidate's campaign. . . ." Mr. Edwards requests that this double "irrespective" test be explained to the jury.

The instructions could allow conviction if the payments were a coordinated expenditure, even if they were personal in nature and not related to the campaign. Mr. Edwards objects to this instruction. Both coordinated expenditures and campaign expenditures must be paid "for the purpose of influencing the election." The type of payments are the same; the only difference is who pays for them. A payment that is for the purpose of influencing the election can be paid by the campaign because it would not involve a conversion to personal use, and it could qualify as a campaign expenditure. A payment that is not for the purpose of influencing an election cannot be paid by the campaign, as that would violate the conversion statute, but a third-party could make such payments of personal expenses because they are not subject to the election laws.

Telling the jury it can convict if it finds a third-party's expenditure was for "personal expenses" essentially writes "for the purpose of influencing the election" out of

12

the statute and therefore expands the scope of liability. On this issue, Mr. Edwards requests the jury be instructed in accordance with his Proposed Instruction No. 20.

Count 5 raises the same issues in describing "the broader definition of contributions when expenditures are at issue." The definition of contribution is static. It includes direct contributions, coordinated expenditures and the personal use expense exception. A suggestion that the term contribution takes on a new and broader definition with respect to an "expenditure" does not comport with FECA. (The term "expenditure" is used to describe spending by a campaign, but "coordinated expenditures" is used to describe regulated payments by third-parties. Uncoordinated "expenditures" by third parties are not regulated, as they are protected by the First Amendment.) Mr. Edwards requests the jury be instructed with respect to "expenditures" and "contributions" as set out in his Proposed Instruction No. 20.

On Page 21, Mr. Edwards requests the phrase "knowingly and willfully" instead of only "willfully."

Mr. Edwards objects to the description of "Mr. Baron's expenditures" on Pages 21-22. Mr. Edwards cannot be convicted because Mr. Baron or anyone else made "expenditures" to help him get elected. Criminal liability is personal, so the focus of the statute is on Mr. Edwards' intent. Mr. Edwards must "receive" the "contribution" and do so "knowingly and willfully." It is not sufficient that Mr. Baron has made an "expenditure," unless the expenditure is coordinated. The personal use expense rules do

13

not apply to an "expenditure" because expenditures must be for the purpose of influencing the election, something a personal expense is not.

## COUNT 6

Mr. Edwards objects to the discussion of agency in the context of coordinated expenditures, while defining that term generically rather than in accordance with the coordinated expenditure rules. (Page 23.)

With respect to Pages 23-24, "expenditure" is a defined term and the campaign always can make an expenditure. There is no "expenditure" that a campaign could not legally pay. The personal use expense regulations do not involve "expenditures" because a personal use expense cannot be an "expenditure"; they are "personal," rather than "for the purpose of influencing the election." By contrast, a third-party can pay as much of a candidate's personal expenses as the third-party likes unless the two "irrespective" tests are violated, while a campaign cannot pay those personal expenses because they are not campaign related (and, hence, cannot be "expenditures" either).

Moreover, Mr. Edwards is charged with receiving illegal <u>contributions</u> and failing to report them. A candidate cannot be held responsible for a third-party making an "expenditure," unless it is a "coordinated expenditure" and he receives that benefit "knowingly and willfully." Mr. Edwards also objects to the suggestion that "expenditures" must be reported, because there is no way for them to be reported on the FEC's forms.

14

The most important element of the Count 6 charge is absent, that Mr. Edwards' concealment of the payments from the campaign "caused" -- the word used in Paragraph 43 of the Indictment -- the campaign to file the false statement. The current instruction could allow a conviction if he concealed the information from his campaign, and the campaign filed a false report. In effect, it negates the defense, which was firmly established by his staff, that his staff would not have reported the payments if it had known about them because it did not think the payments were contributions. Indeed, even now that the campaign is aware of the payments, it still has not reported them for that reason and the FEC has no problem with that.

Mr. Edwards objects to the discussion of materiality. The instruction explains that a statement is false if a contribution of more than $200 is not reported, but that the government does not have to prove the contributions were $25,000 or more. (Page 25.) Whether the failure to report an amount less than $25,000 is material is an issue for the jury to decide. (See Mr. Edwards' Proposed Instruction No. 31.)

## COUNT 1: CONSPIRACY

Page 31 explains that there are two alleged objects of the conspiracy (accepting illegal contributions and failing to report them) and the jury must be unanimous as to one of them. The issue is slightly more complicated than that, as two issues pertain to the Mellon payments and two pertain to the Baron payments. The instructions as drafted would allow a conviction if 6 jurors believed Mr. Edwards conspired to accept illegal contributions from Ms. Mellon, but not Mr. Baron, and the remaining 6 believed he

15

conspired to accept illegal contributions from Mr. Baron, but not Ms. Mellon. Mr. Edwards requests the addition of the underlined language to this charge:

> The Indictment charges a conspiracy to commit two separate crimes <u>with respect to the payments by Ms. Mellon and Mr. Baron</u>, as I mentioned: accepting or receiving contributions in excess of the limit allowed by federal campaign finance law, and causing the John Edwards for President Committee to file a false contribution report. It is not necessary for the government to prove a conspiracy to commit both of those crimes<u>, but you cannot convict unless you unanimously find that the conspiracy was to commit the same crime</u>. It would be sufficient if the government proves beyond a reasonable doubt, and you unanimously agree, a conspiracy to commit one of those crimes. <u>For example, it would not be sufficient if the jury as a whole agreed Mr. Edwards was involved in a conspiracy, but you could not agree whether that conspiracy was to accept illegal campaign contributions by Mr. Baron or Ms. Mellon. You must be unanimous in finding that the same object of the conspiracy was proven to convict.</u> I have previously instructed you fully on the elements of receiving excessive campaign contributions in connection with Counts 2-5 and on the elements of causing a false report to be filed in Count 6, and you will remember those instructions here.

## EVIDENCE

Mr. Edwards also objects to the paragraph on Page 39:

> Moreover, if any witness mentioned or offered an opinion about what the law is, you are not to follow that witness's opinion on the law if it is different from my instructions to you. Specifically, a witness's opinion testimony about whether payments were or were not contributions may be relevant to explain why the witness did or did not do something or for other limited purposes, but it is not relevant to your determination as to whether any of the payments at issue were or
> were not contributions.

The jury is not required to view the witness' testimony as to his or her understanding of the law so narrowly as to only explain the witness' actions. For example, the jury should be able to consider Ms. Haggard's testimony that neither she nor the FEC consider the

payments contributions relevant to whether Mr. Edwards could reasonably have held the same view, and whether he could "knowingly and willfully" violate a law that Ms. Haggard and the FEC did not think was broken. Mr. Edwards requests that this paragraph be omitted.

## CAUTIONS

In the unique and specific circumstances of this case, Mr. Edwards objects to the omission of specific definitions of campaign law terms from FECA. In this context, those words do not necessarily carry their ordinary meaning.

There has been evidence in this case of Mr. Edwards' conduct with respect to the affair and his family. In these circumstances, Mr. Edwards requests a cautionary instruction as he proposed in Proposed Instruction No. 3.

## MISCELLANEOUS

Mr. Edwards requests his Proposed Jury Instructions that are not addressed in these instructions. In particular, Proposed Jury Instruction No. 18 (First Amendment) and No. 21 (Uncertainty).

The defense has proffered its theory of the case, and the Court has taken under advisement whether it will instruct the jury on this point. Mr. Edwards respectfully requests that an appropriate defense theory of the case instruction be included in the charge. See United States v. Dornhofer, 859 F.2d 1195, 1199 (4th Cir. 1988).

## **OBJECTION TO VERDICT FORM – CONSPIRACY COUNT**

The Government brought to Mr. Edwards' attention its concern with respect to the verdict form for Count 1. After due consideration, Mr. Edwards respectfully requests that the Court use the verdict form below, which he has submitted to the Government. The form below will help ensure that the jurors unanimously agree upon an object of the conspiracy, special interrogatories are warranted. Mr. Edwards requests the Verdict Form read as follows with respect to Count 1:

COUNT 1: CONSPIRACY

\_\_\_ NOT GUILTY

\_\_\_ GUILTY

*Special interrogatory, to be answered only if you find Mr. Edwards Guilty of Count 1.* Which one or more of these do you find beyond a reasonable doubt was the object of the conspiracy (check all that you unanimously find apply):

1) Was the object of the conspiracy to accept campaign contributions in excess of $25,000 from Rachel Mellon in a calendar year.

\_\_\_ Yes    \_\_\_ No

2) Was the object of the conspiracy to accept campaign contributions in excess of $25,000 from Fred Baron in a calendar year.

\_\_\_ Yes    \_\_\_ No

3) Was the object of the conspiracy to falsify, conceal, cover up by trick, scheme and device, a material fact by causing the John Edwards for President Committee to file false reports with the Federal Election Commission by failing to report campaign contributions from Rachel Mellon.

\_\_\_ Yes    \_\_\_ No

4) Was the object of the conspiracy to falsify, conceal, cover up by trick, scheme and device, a material fact by causing the John Edwards for President Committee to file false reports with the Federal Election Commission by failing to report campaign contributions from Fred Baron.

\_\_\_ Yes    \_\_\_ No

This the 17th day of May, 2012.

Respectfully submitted,

/s/ Abbe David Lowell, *pro hac vice*
adlowell@chadbourne.com
Christopher D. Man
cman@chadbourne.com
Michael Pusateri
mpusateri@chadbourne.com

CHADBOURNE & PARKE LLP
1200 New Hampshire Ave., NW
Washington, DC 20036
Telephone: 202-974-5600
Facsimile: 202-974-5602

/s/ Alan W. Duncan
N.C. State Bar No. 8736
alan.duncan@smithmoorelaw.com

/s/ Allison O. Van Laningham
N.C. State Bar No. 23430
allison.vanlaningham@smithmoorelaw.com

SMITH MOORE LEATHERWOOD LLP
Post Office Box 21927
Greensboro, NC  27420
Telephone: (336) 378-5200
Facsimile: (336) 378-5400

*Attorneys for Defendant Johnny Reid Edwards*

# CERTIFICATE OF SERVICE

This is to certify that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

> David V. Harbach, II (david.harbach@usdoj.gov)
> Jeffrey E. Tsai (jeffrey.tsai@usdoj.gov)
> Robert J. Higdon, Jr. (bobby.higdon@usdoj.gov)
> Brian Scott Meyers (brian.s.meyers@usdoj.gov)
> *United States Department of Justice*

May 17, 2012.

>  /s/ Allison O. Van Laningham
> N.C. State Bar No. 23430
> Attorney for Defendant Johnny Reid Edwards
> SMITH MOORE LEATHERWOOD LLP
> Post Office Box 21927
> Greensboro, NC  27420
> Telephone: (336) 378-5200
> Facsimile: (336) 378-5400
> E-mail:  allison.vanlaningham@smithmoorelaw.com