IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11CR161-1 |
| | ) | |
| JOHNNY REID EDWARDS, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM IN SUPPORT OF MOTION
FOR LEAVE TO INTERVENE
AND FOR ACCESS TO JUDICIAL RECORDS

*People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.*

*Richmond Newspapers Inc. v. Virginia*, 448 U.S. 555 (1980) (Burger, C.J.). *See also, Craig v. Harney*, 331 U.S. 367, 374 (1947) ("A trial is a public event. What transpires in the court room is public property."). As Justice Oliver Wendell Holmes Jr. wrote while sitting on the Supreme Judicial Court of Massachusetts, "Every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." *Cowley v. Pulsifer*, 137 Mass. 392 (1884) (Holmes, J.)

At issue in this case is the right of the public and of the press to exercise their constitutionally protected interest to inspect judicial records and to know the identities of key participants in this criminal prosecution, namely the jurors empaneled to decide the defendant's fate .

I.  **BACKGROUND AND PROCEEDINGS TO DATE**

The defendant, Johnny Reid Edwards, has been charged with six criminal counts related to large sums of money expended for his benefit while he was a candidate for President of the

United States. Because this is a case of first impression involving a public figure whose meteoric professional and political careers catapulted him onto every front page and television screen in America, the eyes of the nation are on this case to see and evaluate how the jury rules. For many months – beginning long before formal criminal charges were even filed -- this case has garnered local, national and international attention.. The simple search "John Edwards trial" yields "About 36,500,000 results," according to Google. Putting aside the prurient interest inevitably generated by a presidential candidate's sex scandal, the complex and unprecedented legal issues that lie at the heart of this case reach to the very essence of our democratic society, i.e. the electoral process. The jury's decision about whether defendant's actions violated federal election law will have ramifications for the conduct, financing and reporting of political campaigns well into the future.

### A. This Trial Proceeded in Open Court.

As is appropriate under constitutional standards, this trial has proceeded entirely in open court. The venire was questioned and selected in open court. The jurors have sat for more than four weeks during open court proceedings. The jurors have not been sequestered but instead have come and gone from court in public view. Each juror's identity is known to a finite but certain group of people, be they family and friends or co-workers who are aware that their colleague's absence is due to jury service in this case. Neither the jurors themselves nor anyone who knows them is prohibited by law or court order from disclosing their identity, nor could the identities of these jurors be kept confidential consistent with the First Amendment.

### B. Local Rules Prohibit Disclosure of Juror Identities.

The local rules for this court provide that "The names, addresses, and telephone numbers of persons who have served as jurors may not be disclosed by the Clerk's Office without court permission." LCrR24.1(c).

## II. ARGUMENT

For the reasons explained below, when this trial ends the Court should release the names and addresses of the jurors, regardless of whether they render their verdict or the court determines that they are unable to reach a verdict. Keeping the jurors' identities under seal denies the people of North Carolina – and the United States -- their right to inform themselves about the proceedings in this important case, in violation of rights presumptively afforded to them by the First Amendment to the Constitution of the United States. A raft of cases from many jurisdictions has recognized both the constitutional necessity for and the societal benefits of fully public trials, including access to jurors' identities. As Chief Justice Burger wrote, "a trial courtroom is a place where representatives of the press and of the public are not only free to be, but where their presence serves to assure the integrity of what goes on." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 600, 100 S. Ct. 2814, 2840, 65 L. Ed. 2d 973 (1980).

### A. The Movants' Motion to Intervene Should be Allowed.

The First Amendment right of access is an affirmative, enforceable public right. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) ("Globe Newspaper I"). The standing of the press to enforce this right is well settled. *See, e.g., Globe Newspaper I*, 457 U.S. at 609 n.25; *In re Application of Dow Jones & Co.*, 842 F.2d 603, 606-08 (2d Cir. 1988); *United States v. Criden*, 675 F.2d 550, 552 n.2 (3d Cir. 1982); United States v. Brooklier, 685 F.2d 1162, 1168 (9th Cir.

1982). Therefore, this Court should grant the Movants' request that they be allowed to intervene in this case for the limited purpose of protecting the public's right of access.

### A. The Constitutional Presumptive Right of Access Applies to Juror Identities.

One of the foundational Supreme Court decisions on access to court proceedings and records established the so-called experience and logic test, which first determines whether a right of access traditionally has attached to a particular judicial proceeding and then analyzes whether access "plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Co. v. Superior Court of California for Riverside County*, 478 U.S. 1, 8, 106 S. Ct. 2735, 2740, 92 L. Ed. 2d 1 (1986) (Press-Enterprise II). Courts across the nation have held that the experience and logic test mandates disclosure of jurors' identities absent an extraordinary countervailing circumstance.[1]

#### 1. The Presumptive Right of Access to Jury Selection.

Our courts routinely have rejected the idea of anonymous juries, and the Supreme Court has held, "No right ranks higher than the right of the accused to a fair trial. But the primacy of the accused's right is difficult to separate from the right of everyone in the community to attend the *voir dire* which promotes fairness." *Press-Enterprise Co. v. Superior Court of California, Riverside County*, 464 U.S. 501, 508, 104 S. Ct. 819, 823, 78 L. Ed. 2d 629 (1984) (Press-Enterprise I). Tracing the history of open courts to the traditions of England, the Court wrote:

> [T]he entire trial proceeded "openly, that not only the xii [12 jurors], but the Judges, the parties and as many [others] as be present may heare." Id., at 79 (emphasis added).

---

[1] There are no safety concerns in this case as might exist, for instance, in the prosecution of an organized crime ring, which might justify certain protections of jurors. *See, e.g., United States v. Edwards*, 303 F.3d 606 (5th Cir. 2002).

4

> This open process gave assurance to those not attending trials that others were able to observe the proceedings and enhanced public confidence.

*Id.*

Despite the trial court's grant of after-the-fact access to a transcript of the *voir dire*, the Second Circuit held that contemporaneous access to jury selection in the prosecution of Martha Stewart was commanded by the First Amendment.

> No right is more sacred in our constitutional firmament than that of the accused to a fair trial. Our national experience instructs us that except in rare circumstances openness preserves, indeed, is essential to, the realization of that right and to public confidence in the administration of justice. The burden is heavy on those who seek to restrict access to the media, a vital means to open justice. Here, the government has failed to overcome the presumption of openness. *The mere fact of intense media coverage of a celebrity defendant, without further compelling justification, is simply not enough to justify closure.*

*ABC, Inc. v. Stewart*, 360 F.3d 90, 105-06 (2d Cir. 2004) (Emphasis supplied.)

### 2. The Presumptive Right of Access to Jury Identities.

As the First Circuit described, criminal trials in a democracy "should not, as a rule, be decided by anonymous persons," *In re Globe Newspaper Co.*, 920 F.2d 88, 91 (1st Cir. 1990). In addition to observing *voir dire*, knowing who actually is selected for jury service serves a variety of societal benefits.

> Knowledge of juror identities allows the public to verify the impartiality of key participants in the administration of justice, and thereby ensures fairness, the appearance of fairness and public confidence in that system. It is possible, for example, that suspicions might arise in a particular trial (or in a series of trials) that jurors were selected from only a narrow social group, or from persons with certain political affiliations, or from persons associated with organized crime groups. It would be more difficult to inquire into such matters, and those suspicions would seem in any event more real to the public, if names and addresses were kept secret. Furthermore, information about jurors, obtained from the jurors themselves or otherwise, serves to educate the public regarding the judicial system and can be important to public debate about its strengths, flaws and means to improve it. Although the district judge here assumed that the *Globe* sought access solely to inquire into the deliberative process, other avenues of

5

inquiry are conceivable. Juror bias or confusion might be uncovered, and jurors' understanding and response to judicial proceedings could be investigated. Public knowledge of juror identities could also deter intentional misrepresentation at voir dire.

*Id.* at 94. Similarly, a district court in Massachusetts found:

> It is important for the public to receive information about the operation of the administration of justice, including information about the actual people who do render justice in the truest sense of the word. Access to such information not only serves the cause of justice generally by providing an independent, non-governmental verification of the utter impartiality of the processes involved in selecting jurors and shielding them from improper influences, it also serves to enhance the operation of the jury system itself by educating the public as to their own duties and obligations should they be called for jury service. This Court thus concludes that, under the First Amendment, the public has a general right, at some reasonable time after a verdict is delivered, to the names and addresses of the jurors discharging this important public trust.

*United States v. Doherty*, 675 F. Supp. 719, 723 (D. Mass. 1987).

The Fourth Circuit has recognized that although there are inherent challenges in high profile cases, juror anonymity does not resolve them..

> We recognize the difficulties which may exist in highly publicized trials such as the case being tried here and the pressures upon jurors. But we think the risk of loss of confidence of the public in the judicial process is too great to permit a criminal defendant to be tried by a jury whose members may maintain anonymity. If the district court thinks that the attendant dangers of a highly publicized trial are too great, it may always sequester the jury; and change of venue is always possible as a method of obviating pressure or prejudice.

*In re Baltimore Sun Co.*, 841 F.2d 74, 76 (4th Cir. 1988).

Although some courts have imposed a restricted "holding period" before releasing jurors' names and addresses, the following cases are representative of the more than dozen cases nationwide that recognize a right of access to juror identities. *United States v. Blagojevich*, 612 F.3d 558, 565 (7th Cir. 2010); *United States v. Wecht*, 537 F.3d 222, 235 (3d Cir. 2008) ("The first question before us is whether the "experience and logic" test establishes the existence of a

presumptive First Amendment right of access to obtain the names of both trial jurors and prospective jurors prior to empanelment of the jury. We conclude that it does."); *United States v. Sampson,* 297 F. Supp. 2d 348 (D. Mass. 2003) (requiring release of juror names); *In re Bay City Times*, 143 F. Supp. 2d 979 (E.D. Mich. 2001) (requiring release of juror names and community of residence that were disclosed during *voir dire*); *United States v. Espy*, 31 F. Supp. 2d 1 (D.C. Cir. 1998) (permitting release of juror names); *Sullivan v. Nat'l Football League,* 839 F. Supp. 6 (D. Mass. 1993) (ordering access to juror identities); *In re Indianapolis Newspapers, Inc.,* 837 F. Supp. 956 (S.D. Ind. 1992) (ordering release of juror names while advising each juror of their right not to speak to the press); *United States v. Doherty,* 675 F. Supp. 719 (D. Mass. 1987), *aff'd in part, rev'd in part on other grounds*, 867 F. 2d. 47 (1st Cir. 1989) (recognizing First Amendment right to juror names and addresses after verdict); *Forum Commc'n Co. v. Paulson*, 752 N.W.2d 177 (S.D. 2008) (reversing trial court and holding that the names of jurors who were sworn and tried the case to verdict must be released); *Commonwealth v. Long*, 922 A.2d 892 (Pa. 2007) (finding First Amendment provides a qualified right of access to juror names but not addresses);*State ex rel. Beacon Journal Publ'g Co. v. Bond,* 781 N.E.2d 180, 192 (Ohio 2002) (right of access extends to juror names and addresses); *People v. Mitchell (In re Juror Names),* 592 N.W.2d 798 (Mich. App. 1999) ("privacy concerns alone, unaccompanied by safety concerns, are not sufficient" to deny access to juror identities, and ordering juror names and addresses released); *Des Moines Register & Tribune Co. v. Osmundson*, 248 N.W.2d 493 (Iowa 1976) (jury list a public record subject to statutory right of access in Iowa).

7

B.  **Access to Jurors' Identity is Mandated by Federal Law**

The Jury Selection and Service Act of 1968 (28 U.S.C. § 1861 *et seq.*) prescribes the manner in which federal jurors are to be selected and to serve. In addition to such things as describing the parameters of the jury pool ("a fair cross section of the community") and providing there shall be no discrimination in service, the Act requires each U.S. district court to "devise and place into operation a written plan" that addresses a number of issues. 28 U.S.C. § 1863. "Among other things," the law states, "such plan shall … fix the time when the names drawn from the qualified jury wheel shall be disclosed to parties and to the public." 28 U.S.C. § 1863(b)(7). Although the Act does contemplate there may be times when "the interests of justice" require a court to keep juror names confidential, a recent Seventh Circuit opinion held that such instances are exceptional. Interpreting the Act in the high profile prosecution of Illinois Governor Rod Blagojevich, the court wrote: "[A] judge must find some unusual risk to justify keeping jurors' names confidential; it is not enough to point to possibilities that are present in every criminal prosecution." United States v. Blagojevich, 612 F.3d 558, 565 (7th Cir. 2010).

C.  **There Is No Compelling And Overriding Interest That Justifies Juror Anonymity In This Case.**

Continued application of Local Rule 24.1(c) operates as a *de facto* blanket sealing order of presumptively public judicial records. Generally speaking, presumptively public judicial proceedings or records may be closed or sealed without violating First Amendment rights "only if (1) closure serves a compelling interest; (2) there is a 'substantial probability' that, in the absence of closure, that compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect that compelling interest. Moreover, the court may not base

8

its decision on conclusory assertions alone, but must make specific factual findings." *In re Washington Post Co.*, 807 F.2d 383, 392 (4th Cir. 1986).

In *In re Knight Publishing Company*, 743 F.2d 231 (4th Cir.1984), the Fourth Circuit articulated the procedures that must be undertaken before records are sealed or proceedings closed. Even more recently, in North Carolina's most noteworthy case dealing with the subject in a decade, the Fourth Circuit Court of Appeals revisited the question of sealing court records.

> In *Knight*, we explained that, while a district court "has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests," the "presumption" in such cases favors public access. Knight, 743 F.2d at 235; see also Stone, 855 F.2d at 182 ("The public's right of access to judicial records and documents may be abrogated only in unusual circumstances"). Accordingly, before a district court may seal any court documents, we held that it must (1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives. See Knight, 743 F.2d at 235- 36; see also Stone, 855 F.2d at 181. These procedures "must be followed when a district court seals judicial records or documents." Stone, 855 F.2d at 179-80, 182.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000). In *Ashcraft*, the Fourth Circuit found that the trial court failed miserably under the applicable standard. The Court noted that "despite the Morning Star's demonstrated interest in the case, no public notice of the parties' joint motion to seal the settlement agreement was given; no opportunity for interested parties to object was provided; there is no indication that the district court considered less drastic alternatives to sealing the agreement; and the court's sealing order did not identify any specific reasons or recite any factual findings justifying the court's decision to override the public's right of access to the settlement documents." *Id.* at 302-03. Accordingly, the Fourth Circuit found the sealing order void. *See also Virginia Dept. of State Police v. Washington Post*, 386 F.3d 567, 581 (4th Cir. 2004).

In this case, there is no compelling governmental interest in withholding the identities of individuals who served on the jury. Moreover, given that the case has proceeded in open court with jurors whose identities are at least partially known, perpetuating the secrecy of the jury is an affront to the First Amendment in service of a weak interest with no hope of success.

### III.  CONCLUSION

"Only the most compelling reasons justify non-disclosure." *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983). As the Fourth Circuit has found, even the most difficult cases involving matters of intense national significance can give way to a certain amount of public access and scrutiny. Because no compelling countervailing interest exists, Movants respectfully urge this court to honor their and the public's presumptive right of access by disclosing the jurors' names and addresses prior to releasing them from jury service at the end of this trial.

Respectfully submitted, this the 23d day of May, 2012.

/s/ Hugh Stevens
HUGH STEVENS
N.C. State Bar No. 4158
hugh@smvt.com
C. AMANDA MARTIN
N.C. State Bar No. 21186
amartin@smvt.com
MICHAEL J. TADYCH
N.C. State Bar No. 24556
mike@smvt.com
STEVENS MARTIN VAUGHN & TADYCH, PLLC
1101 Haynes Street, Suite 100
Raleigh, NC 27604
(919) 582-2300 (telephone)
(866) 593-7695 (facsimile)

10

Case 1:11-cr-00161-CCE   Document 296   Filed 05/23/12   Page 10 of 12

Jonathan E. Buchan, Jr.
N.C. State Bar No. 8205
**McGuire Woods, LLP**
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
Telephone: 704.343.2000
Facsimile: 704.343.2300
Email: jbuchan@mcguirewoods.com


*Counsel for Movants/ Intervenors*

CERTIFICATE OF SERVICE

     I hereby certify that on this 23d day of May, 2012, I electronically filed the foregoing Memorandum in Support of Motion for Leave to Intervene and for Access to Judicial Records with the Clerk of Court using the CM/ECF system, which will send notification of such filing as follows:

     David V. Harbach, II ( david.harbach@usdoj.gov )
     Jeffrey E. Tsai ( Jeffrey.tsai@usdoj.gov )
     Robert J. Higdon, Jr. ( bobby.higdon@usdoj.gov )
     Brian Scott Meyers ( brian.s.meyers@usdoj.gov )
     Allison Van Laningham (Allison.vanlaningham@smithmoorelaw.com )
     Alan Duncan (alan.duncan@smithmoorelaw.com )
     Abbe David Lowell (adlowell@chadbourne.com )
     Christopher D. Man (cman@chadbourne.com )
     Michael Pusateri (mpusateri@chadbourne.com )
     John H. Hasty (jhasty@gdhs.com )

This the 23d day of May, 2012.

                                         /s/ Hugh Stevens
                                         HUGH STEVENS

NC State Bar No. 4158
**STEVENS MARTIN VAUGHN & TADYCH, PLLC**
1101 Haynes Street, Suite 100
Raleigh, NC  27604
Phone: 919-582-2300
Facsimile:  866-593-7695
Email:  <hugh@smvt.com>